QUINN EMANUEL URQUHART & SULLIVAN, LLP
David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Robert Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Aaron Perahia (Bar No. 304554)
  aaronperahia@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Evan Pearson (*pro hac vice*)
  evanpearson@quinnemanuel.com
300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
Telephone:      (737) 667-6100
Facsimile:      (737) 667-6110

Hayden Little (*pro hac vice*)
  haydenlittle@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, Texas 77002-2841
Telephone:     (713) 221-7000
Facsimile:     (713) 221-7100

*Attorneys for Plaintiffs Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc.*

KING & SPALDING LLP
Ethan P. Davis (SBN 294683)
  edavis@kslaw.com
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     (415) 318-1228
Facsimile:     (415) 318-1300

Randy M. Mastro (*pro hac vice*)
  rmastro@kslaw.com
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone:     (212) 556-2100
Facsimile:     (212) 556-2222

*Attorneys for Defendants Strand Consult and Roslyn Layton*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc., <br><br>     Plaintiffs, <br><br>     vs. <br><br> Strand Consult and Roslyn Layton, <br><br>     Defendants. | Case No. 5:24-cv-03454-BLF <br><br> Hon. Beth Labson Freeman <br><br> **JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER** <br><br> Date:     October 31, 2024 <br> Time:    11:00 am <br> Crtrm.:   Via Zoom <br>              Courtroom 3 – 5th Floor <br>              280 South 1st Street, <br>              San Jose, CA 95113 <br><br> Trial Date:           None Set |

# JOINT CASE MANAGEMENT STATEMENT

Counsel for Plaintiffs Yangtze Memory Technologies Company, Ltd. ("YMTC, Ltd.") and Yangtze Memory Technologies, Inc. ("YMT, Inc.") (together, "YMTC" or "Plaintiffs") and counsel for Defendants Strand Consult and Roslyn Layton (together, "Defendants") hereby jointly submit this Case Management Statement pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California.

## I.   JURISDICTION AND SERVICE

### A.   Plaintiffs' Statement

This Court has personal jurisdiction over Defendants based on Defendants' purposeful direction of their tortious conduct towards California. Defendants operated and maintained the "China Tech Threat" website, which was accessible in California and specifically targeted California audiences, including YMTC's California-based subsidiary. The website's content, including the "CTT Report," explicitly called for actions impacting YMTC's business relationships within California. Defendants' actions were intended to cause harm in California, and that harm, including the loss of customers, prospective customers, and technical partners located in California, has in fact occurred in this judicial district.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 due to diversity of citizenship between YMT, Inc. (a California corporation with its principal place of business in California) and Roslyn Layton (a Florida domiciliary), with the foreign corporations YMTC, Ltd. and Strand Consult as additional parties. *See* 28 U.S.C. § 1332(a)(3). The amount in controversy exceeds $75,000, based on the significant financial harm YMTC has suffered due to the alleged trade libel and unfair competition, including lost business opportunities, damage to reputation and goodwill, and expenses incurred in responding to the wrongful campaign.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district, specifically the targeting of YMTC's California subsidiary and the resulting harm to its business relationships within the district. All Defendants have been served with the Complaint.

**B.     Defendants' Statement**

This Court lacks both subject-matter jurisdiction and personal jurisdiction.

*Diversity Jurisdiction*.  The Complaint claims jurisdiction under 28 U.S.C. § 1332(a)(3) because this is supposedly "an action between citizens of different States and in which citizens of foreign states are additional parties." Compl. ¶ 18. That assertion is predicated on the allegation that Defendant Roslyn Layton "resides in and owns a home" in Naples, Florida. Compl. ¶ 12. But in fact, Layton (a citizen of both the United States and Denmark) resides and is domiciled in Denmark. Because Layton is not domiciled in any U.S. state, 28 U.S.C. § 1332(a)(3) does not supply a basis for jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). In addition, because only Layton's American citizenship is considered for purposes of determining diversity, *Yokeno v. Sekiguchi*, 754 F.3d 649, 655 (9th Cir. 2014), Layton is also not a foreign citizen under § 1332. Layton cannot be a party to any suit under diversity jurisdiction. Furthermore, the inclusion of plaintiff Yangtze Memory Technologies Co., Ltd., a Chinese entity, eliminates § 1332(a)(2) as a possible ground for jurisdiction. *See Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024).

*Article III Standing*.  This Court also lacks subject-matter jurisdiction for another, independent reason: Plaintiffs (collectively, "Yangtze") fail to plead any injury that is fairly traceable to Defendants' actions and is not the result of the independent action of third parties not before the Court. By the time Defendants published the CTT Report, other experts, the White House, the Department of Commerce, and members of both chambers of Congress had already expressed alarm about the national-security threats posed by Yangtze as a key part of China's long-running project to establish state control over the semiconductor industry in service of its civil-military fusion goals. Those independent warnings about Yangtze continued to, through, and after the time of Plaintiffs' alleged injuries. The Complaint does not allege any facts from which the Court could plausibly infer that Plaintiffs' alleged harms were caused by the publication of the CTT Report. Rather, Yangtze's allegation that it "lost opportunities" and business relationships in October and November 2022 supports the opposite inference: Yangtze's problems are attributable to government officials.

*Personal Jurisdiction*. This Court lacks general personal jurisdiction over the Defendants because neither is "at home" in California. Plaintiffs also cannot establish specific jurisdiction over either Defendant because their claims do not arise out of or relate to any activity that Defendants directed toward California. Plaintiffs claim that the Report was "aimed at" California, "directed" toward the California subsidiary, and harmed Plaintiffs in California. Compl. ¶ 17. But the only support for that assertion is that the Report references Apple, and the Complaint does not allege that Apple is one of the "numerous" entities that severed whatever relationship it had with one or both of the Plaintiffs "in the fall of 2022." Compl. ¶ 35. So, Plaintiffs' claims do not "arise from" Defendants' statements about Apple. In addition, the Ninth Circuit has held that "a theory of individualized targeting," such as Plaintiffs' assertion that the Defendants' conduct was "directed" toward the California subsidiary, is insufficient to establish specific jurisdiction. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017). And in any event, the Report does not even mention the California subsidiary; instead, it discusses "Yangtze Memory Technologies Company," "a Chinese semiconductor maker." Dkt. 1-2 at 5. That is the Chinese entity. Compl. ¶ 9. Finally, the Complaint does not plausibly allege that "the brunt of the harm suffered by Plaintiffs … occurred in California," Compl. ¶ 17, because the Complaint does not specify which Plaintiff—the entity in California or the entity in China—allegedly had and lost commercial relationships with California entities.

## II.     FACTS

### A.     Plaintiffs' Statement

YMTC, a globally recognized developer and manufacturer of advanced 3D NAND flash memory, with its U.S. subsidiary located in this district, alleges that Defendants Strand Consult and its Executive Vice President, Roslyn Layton, orchestrated a deliberate campaign to disseminate false information about YMTC and its products. This campaign, primarily carried out through the website "China Tech Threat" (CTT), was, on information and belief, funded by Micron Technology, a direct competitor of YMTC in the 3D NAND flash memory market.

As Bloomberg reported in an article titled "Dell, Micron Backed a Group Raising Alarms on Rivals' China Ties," Micron funded a website called "China Tech Threat" run by Defendant

1  Strand Consult and its Executive Vice President, Defendant Roslyn Layton. While China Tech
2  Threat purports to be focused on policy, according to Bloomberg, China Tech Threat is actually
3  engaged in "astroturfing," the practice of cleverly disguising the corporate messaging of
4  companies (like Micron) as grassroots advocacy.

5  As early as September 2020, China Tech Threat began broadcasting and disseminating
6  false statements about YMTC and its products as part of its "astroturfing" campaign. On June 8,
7  2022, China Tech Threat published a report on its website titled *Silicon Sellout: How Apple's*
8  *Partnership with Chinese Military Chip Maker YMTC Threatens National Security* (the "CTT
9  Report"), co-authored by Defendant Layton. The CTT Report repeatedly implores "Apple [to]
10 voluntarily end its partnership with YMTC" and "source its chips from existing suppliers like
11 Micron" based on false and misleading statements, including accusations that YMTC's memory
12 chips posed national security risks, contained spyware capable of transmitting data to Beijing, and
13 were linked to the Chinese military. These claims are demonstrably false. Memory chips, by their
14 nature, are passive storage devices that cannot execute code, transmit data wirelessly, or function
15 as alleged by Defendants. Furthermore, YMTC is not owned or controlled by the Chinese military
16 and has never provided its products for military applications.

17 The falsehoods spread by Defendants through China Tech Threat, have inflicted significant
18 damage on YMTC's reputation, disrupted its business relationships, and caused substantial
19 financial harm, including the loss of customers and prospective customers in this judicial district,
20 damage to its brand and goodwill, and significant expenses incurred to counteract the false
21 narrative propagated by Defendants.

22 YMTC brings this action to put a stop to Defendants' illegal campaign of spreading
23 misinformation about YMTC and YMTC's products through China Tech Threat and elsewhere
24 and compensate YMTC for the harm caused by Defendants' disinformation.

25 **B.    Defendants' Statement**
26 This is a vexatious case brought by a Chinese government-owned semiconductor
27 manufacturer and its subsidiary to chill Defendants' free speech about this controversial Chinese
28 enterprise. Defendants are a Danish consulting company and its Executive Vice President, who

resides and is domiciled in Denmark. In October 2022, the U.S. Department of Commerce added Yangtze to its "Unverified List," which designates entities for which the Department was unable to verify critical information about the end use and end user of items subject to export restrictions. That designation imposed various burdensome requirements on any transactions with Yangtze. In December 2022, Yangtze was moved to the "Entity List" after a cross-departmental committee determined that it posed a significant risk of involvement in activities contrary to American national security and foreign policy interests. Since then, the Department of Defense has identified Yangtze as a "Chinese military company."

In 2022, Defendants dared to call out Yangtze's threat to U.S. national security, but they were far from the only ones. Other expert commentators publicly warned about these same risks for years before the CTT Report. The Executive Branch and members of Congress have also long been concerned about Yangtze. In June 2021, the White House published a Department of Commerce report that sounded the alarm about China's long-term project to place under state control its entire semiconductor supply chain as part of its military-civil fusion objectives. That report described China's work to establish Yangtze as China's "national champion" memory chip producer as the most mature of China's efforts in that project. The next month, two members of Congress publicly questioned Yangtze's ties to the Chinese military and called on the Executive Branch to impose sanctions. Bipartisan warnings about Yangtze, calls for American companies to avoid doing business with Yangtze, and calls for legal restrictions on commercial relationships with Yangtze continued to mount, including shortly before Yangtze allegedly suffered harm to its reputation and business relationships in October and November 2022.

Just last month, members of Congress held a hearing on the alarming trend of researchers, academics, and business owners who have criticized Chinese companies finding themselves slapped with frivolous lawsuits designed to intimidate them and abuse the U.S. discovery process. This suit is an example of that strategy of intimidation and abuse of process, and it is an attempt to chill Defendants' participation (and the participation of others) in matters of public significance.

## III. LEGAL ISSUES

Plaintiffs contend that, based on the current state of the pleadings, the legal issues the Court may be asked to resolve in this action include: (i) whether Defendants' statements regarding YMTC's products constitute trade libel under California law; (ii) whether Defendants violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.) by engaging in unlawful, unfair, or fraudulent business practices through their dissemination of false and misleading information; (iii) whether Defendants acted with malice, oppression, or fraud, potentially warranting punitive damages under California law; (iv) the nature and extent of damages suffered by YMTC as a result of Defendants' actions, including lost profits, damage to reputation, and expenses incurred in mitigation; and (v) whether YMTC is entitled to injunctive relief to prevent Defendants from making further false and misleading statements.

Defendants contend that, based on the current state of the pleadings, the legal issues the Court may be asked to resolve in this action include: (i) whether the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332; (ii) whether Plaintiffs lack Article III standing because their injuries are not fairly traceable to Defendants; and (iii) whether the Court lacks personal jurisdiction over Defendants.

## IV. MOTIONS

Plaintiffs anticipate filing a motion for summary judgment on their claims after the close of fact and expert discovery, addressing the core issues of trade libel and unfair competition.

Defendants anticipate moving to dismiss under Federal Rule of Civil Procedure 12 and moving to strike under California's Anti-SLAPP law, Cal. Civ. Proc. Code § 425.16. Defendants believe that the flaws in Plaintiffs' claims could not be cured by amendment. Defendants also intend to move to stay discovery pending the Court's resolution of the motion to dismiss and motion to strike.

## V. AMENDMENT OF PLEADINGS

Plaintiffs reserve the right to amend their Complaint in response to issues that Defendants raise. Plaintiffs also anticipate they may amend their Complaint based on further information and

investigation, including newly discovered facts or legal developments. Plaintiffs propose a deadline of February 12, 2025, for amending pleadings.

Defendants do not object to Plaintiffs' proposed deadline of February 12, 2025, for amending pleadings.

## VI. EVIDENCE PRESERVATION

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and the Court's Checklist for ESI Meet and Confer. The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps to preserve evidence relevant to the issues in this action. Each party confirms that it has taken reasonable and proportionate steps to preserve relevant evidence, such as implementing a litigation hold with respect to documents and information reasonably likely to be subject to discovery in this litigation. The parties agree to continue to discuss the topics mentioned in the Court's ESI Guidelines and Checklist for ESI Meet and Confer to determine what ESI measures should be adopted in this action.

## VII. DISCLOSURES

Per Rule 26(a)(1)(C), Plaintiffs served Initial Disclosures on October 24, 2024, including the information required under Rule 26(a)(1). Defendants should be required to provide their Initial Disclosures as well. No motion to dismiss or motion to stay discovery has been filed. The potential filing or pendency of a motion to dismiss does not justify delaying initial disclosures. *See, e.g.*, *Canter & Assocs. v. Teachscape, Inc.*, 2008 WL 191978, at *1 n. 2 (N.D. Cal. Jan. 22, 2008) ("The pendency of a motion to dismiss almost never serves to excuse compliance with initial disclosure obligations."); *Espineli v. Toyota Motor Sales, U.S.A., Inc.*, 2019 WL 3080808, at *1 (E.D. Cal. July 15, 2019) (declining to alter initial disclosure deadlines based on a pending motion to dismiss and a "forthcoming second motion to dismiss"); *see also, e.g.*, *Tavantzis v. Am. Airlines, Inc.*, No. 23-CV-05607-BLF, 2024 WL 812012, at *2-3 (N.D. Cal. Feb. 23, 2024) (denying request to stay discovery where a motion to dismiss was pending).

During the parties' Rule 26(f) conference, Defendants informed Plaintiffs of Defendants' intent to move to stay discovery.  Pursuant to Rule 26(a)(1)(C), Defendants objected to proceeding with initial disclosures and any discovery prior to the Court's resolution of that motion to stay.

## VIII.   DISCOVERY

The Parties conducted their Rule 26(f) conference on October 10, 2024.

### A.   Prior and Future Discovery

Plaintiffs intend to engage in fact and expert discovery.  Plaintiffs currently anticipate taking fact discovery concerning, among other things: (i) the nature and extent of Defendants' relationship with Micron Technology, including any financial or other arrangements related to the "China Tech Threat" website and the "CTT Report"; (ii) the creation and dissemination of the false and misleading statements about YMTC and its products, including the sources consulted, the editorial process, and the methods of publication and promotion; (iii) the impact of the false and misleading statements on YMTC's reputation, business relationships, and financial performance, including specific instances of lost customers, lost business opportunities, and expenses incurred in responding to the misinformation campaign; and (iv) the identification of all individuals and entities involved in the creation, publication, and dissemination of the false and misleading statements, including any individuals or entities acting in concert with Defendants.

Plaintiffs served initial disclosures on October 24, 2024.  Plaintiffs anticipate taking further written discovery, including interrogatories, requests for production, and requests for admission, as well as depositions of Defendants and others with knowledge of relevant facts.  Plaintiffs also plan to issue subpoenas to third parties, including Micron Technology and other entities that may possess relevant information.  Defendants' anticipated pleadings motion does not warrant staying this discovery.  *See, e.g.*, *Tavantzis*, 2024 WL 812012, at *1 ("The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." (citation omitted)).  "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.  In fact, such a notion is directly at odds with the need for expeditious

resolution of litigation." *Singh v. Google, Inc.*, No. 16-CV-03734-BLF, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016) (citation omitted).

Defendants object to any discovery prior to the Court's resolution of Defendants' anticipated motion to dismiss and anti-SLAPP motion, as discussed above. Plaintiffs' description of the broad, substantial discovery they intend to seek, from both parties and non-parties, further justifies a stay of discovery. The substantial jurisdictional and free-speech issues presented by this case should be addressed at the threshold, before anyone must incur the fees and expenses of such discovery, to ensure that those serious costs are not a waste of party and nonparty resources. *See, e.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (stay of discovery was appropriate where it "further[ed] the goal of efficiency for the court and litigants"); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. CV 19-ML-2905-JAK, 2022 WL 19236923, at *5 (C.D. Cal. Sept. 6, 2022) (granting motion to stay discovery pending ruling on motion to dismiss that raised "a critical jurisdictional challenge"); *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No., 2013 WL 12129944, at *4 (C.D. Cal. Jan. 14, 2013) (granting motion to stay discovery pending resolution of anti-SLAPP motion that was "potentially dispositive" of many of plaintiff's claims in order to avoid "costly and wasteful proceedings.").

In the event that the Court denies the motion to stay or grants the motion to stay but denies the motion to dismiss and anti-SLAPP motion, Defendants currently anticipate taking fact discovery concerning, among other things: (i) the nature and extent of Plaintiffs' relationship with the Chinese government, the Chinese Communist Party, and the Chinese military; (ii) the manufacturing and production of Plaintiffs' products; (iii) the nature and extent of Plaintiffs' relationship with Huawei and other entities subject to U.S. sanctions or restrictions; and (iv) Plaintiffs' responses to statements by third parties similar to the statements made by Defendants, as well as the impact of such third-party statements and third-party actions on Plaintiffs.

Defendants will serve initial disclosures, if required, pursuant to the Court's ruling on Defendants' objection. If discovery proceeds, Defendants anticipate taking comprehensive discovery, including by propounding interrogatories, requests for production, and requests for admission to Plaintiffs. Defendants also anticipate taking depositions of Plaintiffs' key personnel

and other individuals with knowledge of the relevant facts. Further, Defendants anticipate issuing subpoenas to third parties, including Apple, Huawei, and other entities that may possess relevant information.

### B. Proposed Discovery Limits and Stipulations

Plaintiffs propose that the discovery limits set under the Federal Rules of Civil Procedure be modified by limiting requests for admission to 25 per side, except as to authenticity of documents. As the case progresses, the parties may also stipulate to other discovery limits.

Defendants do not object to Plaintiffs' proposed limitation of requests for admission to 25 per side, except as to the authenticity of documents.

The parties are currently negotiating the terms of a stipulated protective order to govern the handling of confidential information during discovery and anticipate finalizing and submitting the order to the Court for approval. The parties are also working towards an agreement on an ESI protocol to address the specific technical aspects of ESI discovery, including search terms, data formats, and production methods.

### C. Proposed Discovery Schedule

The parties propose the alternative schedule for discovery set forth in Section 15 below.

## IX. CLASS ACTIONS

Not applicable.

## X. RELATED CASES

None.

## XI. RELIEF

Plaintiffs seek remedies to address the harm caused by Defendants' alleged misconduct. This includes monetary damages, encompassing compensatory damages for actual losses incurred, such as lost profits and business opportunities, damage to reputation and goodwill, and expenses incurred in mitigating the harm. Plaintiffs also seek punitive damages, if warranted by evidence of malice, oppression, or fraud on the part of Defendants. Finally, Plaintiffs seek injunctive relief to prevent Defendants from continuing to publish false and misleading statements about Plaintiffs

and their products. The specific amount of monetary damages will be determined through discovery and presented to the Court at the appropriate time.

Defendants intend to seek attorney's fees and costs in connection with their anticipated anti-SLAPP motion.

## XII. SETTLEMENT AND ADR

The parties recognize the potential benefits of settlement and are committed to exploring alternative dispute resolution (ADR) options in good faith. Plaintiffs are willing to stipulate to an ADR process. Defendants prefer to discuss ADR selection at the Case Management Conference.

## XIII. OTHER REFERENCES

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XIV. NARROWING OF ISSUES

The parties are not aware of any issues that can be narrowed at this time and do not currently have any suggestions to expedite the evidence at trial. The parties do not wish to bifurcate issues, claims, or defenses in this action.

## XV. SCHEDULING

The parties do not believe this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. The parties propose the following schedule:

| Event | Proposed Date |
| --- | --- |
| Non-expert discovery cutoff | Thursday, July 10, 2025 |
| Opening expert reports | Thursday, August 28, 2025 |
| Rebuttal expert reports | Thursday, September 18, 2025 |
| Expert discovery cutoff | Thursday, October 9, 2025 |
| Deadline to file dispositive motions | Thursday, October 30, 2025 |
| Deadline for responses to dispositive motions | Thursday, November 20, 2025 |
| Deadline for replies in support of dispositive motions | Thursday, December 4, 2025 |
| Deadline to hear dispositive motions | Tuesday, January 13, 2026 |
| Pretrial conference | Thursday, March 19, 2026 |
| Trial | Monday, April 20, 2026 |

Defendants may seek reasonable modifications to this schedule as discovery unfolds to address, for example, any difficulties in obtaining discovery from the Plaintiff-parent entity in China.

## XVI. TRIAL

Plaintiffs have demanded a jury trial on all claims so triable. Plaintiffs estimate the trial will require approximately five days based on the existing claims.

## XVII. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

All parties have filed disclosures pursuant to Civil Local Rule 3-15. Plaintiffs certify that there is no financial or non-financial interest in the subject matter in controversy for Plaintiffs to report. Defendants certify that there is no financial or non-financial interest in the subject matter in controversy for Defendants to report other than the interest of John William Strand as CEO of Defendant Strand Consult.

## XVIII. PROFESSIONAL CONDUCT

Counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XIX. OTHER

The parties are unaware of other matters that may facilitate the just, speedy, and inexpensive disposition of this matter.

| | | |
|---|---|---|
| 1 | DATED: October 24, 2024 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 5 | | By  */s/ Robert M. Schwartz* |
| 6 | | Robert M. Schwartz |
| | | *Attorneys for Plaintiffs Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc.* |
| 9 | DATED: October 24, 2024 | Respectfully submitted, |
| 10 | | KING & SPALDING LLP |
| 13 | | By  */s/ Ethan P. Davis* |
| | | Ethan P. Davis |
| | | *Attorneys for Defendants Strand Consult and Roslyn Layton* |

**CIVIL LOCAL RULE 5-1 ATTESTATION**

I, Robert Schwartz, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Ethan P. Davis concurred in the filing of this document.

DATED: October 24, 2024                     /s/ Robert M. Schwartz
                                            Robert Schwartz

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.

IT IS SO ORDERED.

Dated:

HON. BETH LABSON FREEMAN
UNITED STATES DISTRICT JUDGE