Ethan P. Davis (SBN 294683)
edavis@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Randy M. Mastro (*pro hac vice*)
rmastro@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Attorneys for Defendants*
STRAND CONSULT AND ROSLYN LAYTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Strand Consult and Roslyn Layton, <br><br> Defendants. | Case No. 5:24-cv-03454-BLF <br><br> Hon. Beth Labson Freeman <br><br> **DEFENDANTS' MOTION TO STAY DISCOVERY** <br><br> Hearing Date: March 13, 2025 <br> Time: 9:00 a.m. <br> Location: Courtroom 3, 5th Floor <br><br> Complaint Filed: June 7, 2024 |

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendants Strand Consult and Roslyn Layton will bring on for hearing before the Honorable Beth Labson Freeman, Judge for the United States District Court for the Northern District of California, Courtroom 3, this Motion to Stay Discovery pending a final resolution of Defendants' forthcoming Motion to Dismiss. In bringing this application, Defendants do not concede that they are subject to the personal jurisdiction of this Court and reserve all rights to contest personal jurisdiction. Defendants also do not concede that this Court has subject matter jurisdiction over this proceeding and reserve all rights to contest subject matter jurisdiction.

This motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the Declaration of Ethan P. Davis submitted herewith, the pleadings, papers, and records on file in this case, and such oral argument as may be presented at any hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This is a vexatious case brought by a Chinese government-owned semiconductor manufacturer and its subsidiary (collectively, "Yangtze" or "Plaintiffs") to chill Defendants' free speech about this controversial Chinese enterprise. Both the U.S. Commerce and Defense Departments, applying their own rigorous standards, have independently placed Yangtze on sanctions lists as a "Chinese military company" that "pose[s] a significant risk of being … involved in activities contrary to the national security and foreign policy interests of the United States." Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States, (Jan. 31, 2024); Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505, 77,506 (Dec. 19, 2022).

In 2022, Defendants also dared to call out Yangtze's threat to U.S. national security, but they were not the first and certainly were not alone in sounding the alarm. In June 2021, the White House published a report from the Department of Commerce that warned about China's long-term project to "place under state control or ownership its entire semiconductor supply chain" as part of its "military-civil fusion objectives." White House, "Building Resilient Supply Chains, Revitalizing

1  American Manufacturing, and Fostering Broad-Based Growth," June 2021, at 59–60, available at https://tinyurl.com/43c8mydb. The "most mature" of China's efforts in that project is establishing Yangtze as "China's national champion memory chip producer." *Id.* at 62.

Members of Congress, including a bipartisan coalition of U.S. Senators, publicly questioned Yangtze's ties to the Chinese military—and called on the Executive Branch to impose sanctions on Yangtze—starting nearly a year *before* Defendants published their 2022 report that Plaintiffs now baselessly claim is the cause of their damaged reputation and relationships. *See, e.g.*, Marco Rubio & Bill Hagerty, Letter to Secretary of Commerce, July 12, 2021, available at https://tinyurl.com/bddyb89m; Karen Freifeld, U.S. Senators Schumer, Warner Join Calls to Blacklist Chinese Chipmaker YMTC, Reuters, Aug. 1, 2022. Other expert commentators publicly warned about these same risks years before Defendants did. *See, e.g.*, SOS International, Blue Heron: Yangtze Memory Technologies Co. (Dec. 2020).

Despite the condemnation by so many reputable sources, including our own government, Yangtze blames a single report issued by Defendants instead. Something else is at play here that members of Congress have also publicly called out: "an alarming trend" that "[r]esearchers, business owners, and academics who expose the truth about a Chinese company … have suddenly found themselves slapped with frivolous lawsuits" designed to intimidate critics into silence, abuse the U.S. judicial process, and extract sensitive information from those they sue while shielding their own information under Chinese law. *See* How the CCP Uses the Law to Silence Critics and Enforce Its Rule: Hearing Before the House Select Committee on the Strategic Competition Between the United States and the Chinese Communist Party (Sept. 19, 2024) (Statement of J. Moolenaar, Chairman; Statement of R. Krishnamoorthi), available at https://tinyurl.com/2x9pf23x.

This latest suit—brought by a Chinese-owned company in a California court against defendants based in Denmark—vividly illustrates this strategy of intimidation. It is a blatant attempt to chill Defendants' participation in matters of public significance. Plaintiffs seek to abuse the judicial process by burdening Defendants with vexatious litigation costs and opening the door to invasive discovery, all in a court thousands of miles from where they reside.

Defendants are preparing a combined Motion to Dismiss and Motion to Strike under

1  California's anti-SLAPP provision, Cal. Code Civ. Proc. § 425.16. *See* Decl. of Ethan P. Davis
2  ¶ 10. Plaintiffs' Complaint should immediately be dismissed on multiple grounds. Preventing abuse
3  of the judicial process is the central purpose of the anti-SLAPP provision, which allows defendants
4  to protect themselves from being subjected to discovery in meritless litigation. The immediate issue
5  to be decided, though, is whether the Court should stay discovery pending final resolution of
6  Defendants' forthcoming motions. Allowing Yangtze to proceed with discovery in the interim
7  would reward its misconduct and permit it to achieve its very purpose in bringing this frivolous
8  litigation. Courts routinely stay discovery in circumstances like this, and this Court should do
9  likewise. *See, e.g.*, *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129944, at *6 (C.D.
10  Cal. Jan. 14, 2013); *Gallagher v. Phillips*, 2021 WL 5563680, at *2 (S.D. Cal. Apr. 22, 2021).

11  **II.   STATEMENT OF FACTS**

12  Plaintiffs Yangtze Memory Technologies Co., Ltd. and Yangtze Memory Technologies,
13  Inc. (together, "Yangtze") are a Chinese semiconductor manufacturer and its California subsidiary,
14  respectively. ECF 1 ("Compl.") ¶¶ 9–10. Defendant Strand Consult Aps ("Strand Consult") is a
15  Danish consulting company. Compl. ¶ 11. Defendant Roslyn Layton is its Executive Vice President
16  and a co-founder of Strand Consult's China Tech Threat ("CTT") website. Compl. ¶¶ 11–12.

17  Since at least early 2021, the U.S. government has monitored Yangtze's concerning role in
18  the Chinese government's project to control the semiconductor industry as part of its military-civil
19  fusion objectives. In growing numbers in 2021 and 2022, members of Congress began calling for
20  action by the Executive Branch to address the threat. The Court may take judicial notice of these
21  reports and warnings as evidence of what information was in the public realm in the time leading
22  up to Defendants' statements and the Chinese company's alleged harms. *See Von Saher v. Norton*
23  *Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

24  In June 2022, Defendants published on the CTT website a report titled *Silicon Sellout: How*
25  *Apple's Partnership with Chinese Military Chip Maker YMTC Threatens National Security*. Compl.
26  ¶ 28; ECF No. 1-2 (the "Report"). Echoing information already in the public domain, the Report
27  describes Yangtze's ties to the Chinese military and the threats to American national security posed
28  by Apple's reported plans to partner with YMTC. Report at 2. The Report also noted that "[m]any

U.S. policymakers and experts have cautioned that YMTC poses a clear and present danger to America's national security," citing such warnings as early as July 2021. Report at 8.

On October 7, 2022, the Department of Commerce added Yangtze Memory Technologies Co., Ltd. to its Unverified List. *See* Dep't of Commerce, Revisions to the Unverified List: Clarifications to Activities and Criteria that May Lead to Additions to the Entity List, 87 Fed. Reg. 61,971, 61,972. The Unverified List ("UVL") designates entities for which the Bureau of Industry and Security was unable to verify "legitimacy and reliability relating to the end use and end user of items subject to" export restrictions. 87 Fed. Reg. at 61,971. Various burdensome requirements apply to transactions with a UVL entity. No license exceptions can apply to an export, reexport, or transfer to which such an entity is a party. 15 C.F.R. § 740.2(a)(17). Even for transactions for which no license is required, any party dealing with a UVL entity must obtain from it an extensive statement describing the end use and end user of the product and binding the entity to cooperate with end-use checks. 15 C.F.R. § 744.15(a)–(b). And for every export transaction involving a UVL entity, a person located in the United States must file with the Bureau an electronic record describing the transaction and certifying licensing compliance. 15 C.F.R. § 758.1(b)(8), (e)–(f). In December 2022, the Bureau moved YMTC to the "Entity List," which identifies entities that a cross-departmental committee has determined present risks to American national security and/or foreign policy interests. Bureau, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505, 77,505–06 (Dec. 19, 2022).

Yangtze filed this suit on June 7, 2024, alleging that Defendants' statements in the Report are false and defamatory and therefore constitute trade libel and an unlawful business practice. Compl. ¶¶ 28–55. Yangtze alleges that it lost business relationships "between October and November 2022," *id.* ¶ 16, *i.e.*, immediately after the Department of Commerce had blacklisted it, but blames instead the Report as the source of the damage to its reputation, *id.* ¶ 42. It demands compensatory damages, punitive damages, special damages, and injunctive relief so that it can "control the publication and distribution" of Defendants' statements about it. *Id.* ¶ 55 *et seq.* Yangtze has insisted on proceeding forward with discovery immediately, even conditioning its agreement to a responsive pleading extension on Defendants' participation in a Rule 26(f)

4

1  conference. *See* Decl. of Ethan P. Davis ¶ 6.

## III. LEGAL STANDARDS

A district court's "wide discretion in controlling discovery," *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), includes the discretion to stay discovery upon a showing of "good cause," Fed. R. Civ. P. 26(c)(1)(A). That standard is satisfied when the court is "convinced that the plaintiff will be unable to state a claim for relief." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981). When a motion that is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed," good cause is typically found. *Yiren Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL 1993503, at *2 (N.D. Cal. Apr. 27, 2018). "In applying this two-factor test, the court must take a 'preliminary peek' at the merits of the pending dispositive motion to assess whether a stay is warranted." *Id.* (quoting *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011)).

A stay of discovery is particularly appropriate in these circumstances, where a Chinese company seeks to chill the defendants' protected speech on matters of public concern. The "central purpose" of California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, is to "screen[] out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." *Baral v. Schnitt*, 376 P.3d 604, 615 (Cal. 2016). So long as the claims arise from an act in furtherance of the defendant's expression regarding a public issue, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. *See Gunn v. Drage*, 65 F.4th 1109, 1118 (9th Cir. 2016). When an anti-SLAPP motion challenges the legal sufficiency of a claim, the familiar standard of Federal Rule of Civil Procedure 12(b)(6) applies. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (cleaned up).

## IV. THE COURT SHOULD STAY DISCOVERY

Defendants' upcoming Motion to Strike and Motion to Dismiss will present several independent grounds to dismiss this case. These issues justify a stay of discovery, as they are case-

dispositive. As Defendants will show, Yangtze's claims arise directly from Defendants' protected speech, and Yangtze cannot demonstrate any likelihood of success on the merits. First, this suit is a vexatious attempt to chill Defendants' expression, including by abusing the discovery process. Second, this Court lacks subject-matter jurisdiction for multiple independent reasons. Third, the Court lacks personal jurisdiction over Defendants, who reside thousands of miles away. Finally, the trade libel claim and unfair competition claims fail because Plaintiffs have not pleaded special damages with the required specificity.[1]

### A.   This Suit Is a Vexatious Attempt to Chill Defendants' Expression.

A stay of discovery is appropriate because this litigation is an attempt to chill Defendants' expression, including by abusing the discovery process, as explained above. Courts frequently grant motions to stay discovery pending a resolution of an anti-SLAPP motion to strike. *See, e.g.*, *Mireskandari*, 2013 WL at *6; *Gallagher*, 2021 WL at *2; *Smith v. Craig*, 2019 WL 4781852, at *2 (D. Nev. Sept. 30, 2019) (Nevada anti-SLAPP law); *cf. Smith v. Payne*, 2012 WL 6712041, at *5 n.7 (N.D. Cal. Dec. 26, 2012) (noting that when an anti-SLAPP motion is not akin to a Rule 56 motion, there is no reason why the *automatic* stay of discovery under California law, *see* Cal. Civ. Proc. Code § 425.16(g), should not apply in federal court); *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 2015 WL 5071977, at *4 (N.D. Cal. Aug. 27, 2015) (similar); *Century Surety Co. v. Prince*, 782 F. App'x 553, 557 (9th Cir. 2019) (district court was within its discretion to deny discovery pending resolution of anti-SLAPP motion under Nevada law). Allowing a plaintiff to obtain discovery before deciding an anti-SLAPP motion would effectively reward the plaintiff for bringing a meritless suit designed to chill First Amendment rights. *Cf. DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013) (explaining that California's anti-SLAPP statute "functions as an immunity from suit" and emphasizing the "particular solicitude" owed by federal courts to the California legislature's protection of constitutional rights); *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, ___ F. Supp. 3d ____, 2024 WL 1246318 at *23 (N.D. Cal. Mar. 25, 2024) (denying leave to amend claim stricken under anti-SLAPP statute where amendment and discovery would harm the very interests meant to be protected by that statute).

---

[1] Defendants may raise additional arguments in their motions.

**B.      This Court Lacks Subject-Matter Jurisdiction.**

**(1)     There Is No Basis for Diversity Jurisdiction.**

The Complaint claims jurisdiction under 28 U.S.C. § 1332(a)(3) because this is supposedly "an action between citizens of different States and in which citizens of foreign states are additional parties." Compl. ¶ 18. That assertion is predicated on the allegation that Defendant Roslyn Layton "resides in and owns a home" in Naples, Florida. Compl. ¶ 12. But in fact, Layton is not domiciled in any U.S. state; she resides and is domiciled in Denmark and does not own the home referred to in the Complaint, as Defendants will show by competent evidence. *See St. Clair v. City of Ohio*, 880 F.2d 199, 201 (9th Cir. 1989) (holding that the Court may consider material outside the pleadings to resolve a Rule 12(b)(1) motion). Because Layton is a U.S. citizen who is not domiciled in any U.S. state, 28 U.S.C. § 1332(a)(3) does not apply. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1929). In addition, because only Layton's U.S. citizenship is considered for purposes of determining diversity, *Yokeno v. Sekiguchi*, 754 F.3d 649, 655 (9th Cir. 2014), Layton is also not a foreign citizen under § 1332 (although she is a dual citizen of the United States and Denmark). Layton cannot be a party to any suit under diversity jurisdiction. Furthermore, the inclusion of plaintiff Yangtze Memory Technologies Co., Ltd., a Chinese entity, eliminates § 1332(a)(2) as a possible ground for jurisdiction. *See Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024).

**(2)     Yangtze's Injuries Are Not Traceable to Defendants.**

As an "indispensable part of [its] case," Yangtze must plead that it has suffered an injury that is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). A plaintiff alleging that a defendant "caused injury by influencing the conduct of third parties" "must offer facts showing" that the challenged conduct is "at least a substantial factor motivating the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014). A plaintiff cannot "rely[] on 'speculation' or 'guesswork' about the third parties' motivations." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)).

Plaintiffs' Complaint fails to plead Article III standing. All Yangtze can drum up are

conclusory allegations that Defendants' report "caused substantial harm to YMTC." *See, e.g.*, Compl. ¶¶ 42, 49. But the Complaint fails to allege any facts to support that inference. It does not acknowledge government officials' warnings about Yangtze or the listing of the Chinese entity on sanctions lists. And it alleges no facts suggesting the Report influenced any of these third-party warnings and actions.

The facts that Plaintiffs *do* allege support the opposite inference: that YMTC's alleged injuries are attributable to government officials. Plaintiffs allege, for example, that they "lost opportunities … in the fall of 2022 … shortly after" the CTT Report was published. Compl. ¶ 35; *see also id.* ¶ 16 (alleging that "relationships between Plaintiffs and customers, potential customers, and technical partners … ended between October and November 2022" "following" Defendants' statements). But the fall of 2022 is also when the Department of Commerce added Yangtze to the Unverified List, and it is more plausible that a governmental sanctions designation is responsible for Yangtze's alleged plight than a single report issued by a company in Denmark.

Other materials in the public domain confirm this conclusion. Before the Report was published, multiple members of Congress raised the same concerns that the Report discusses. *See* Dkt. 1-2 at 8. In July 2021, two congressmen publicly warned about YMTC's links to the Chinese military and called on the Department of Commerce to add YMTC to the Entity List. *Id.*; *see* U.S. House of Representatives Foreign Affairs Committee, Press Release: McCaul, Hagerty Urge Raimondo to Include the CCP's YMTC on Commerce Department Entity List, July 12, 2021, available at https://tinyurl.com/4u99bry5. Similarly, "after news of Apple's potential partnership with YMTC surfaced in March 2022," Senator Marco Rubio wrote a public letter to Apple's CEO stating that YMTC should already be blacklisted and calling on Apple to avoid doing a deal with YMTC. Dkt. 1-2 at 8; *see* Marco Rubio, Press Release: Rubio to Apple: Deal with CCP Chip-Maker Would Threaten U.S. National Security, Strengthen China, Apr. 1, 2022, available at https://tinyurl.com/ycx8wpa2.

Public criticisms of Yangtze and its relationship with Apple continued to mount shortly before Plaintiffs' alleged injuries. *See, e.g.*, Karen Freifeld, "U.S. Senators Schumer, Warner Join Calls to Blacklist Chinese Chipmaker YMTC," Reuters, Aug. 1, 2022; Marco Rubio, Press Release:

8
DEFENDANTS' MOTION TO STAY DISCOVERY                                CASE NO. 5:24-cv-03454-BLF

Rubio, Warner Urge DNI to Review Risk Chinese Chipmaker YMTC Presents to National Security, Sept. 22, 2022. In August 2022, Reuters publicly reported that the United States was considering imposing restrictions on Yangtze. *See, e.g.*, Alexandra Alper & Karen Freifeld, "U.S. Considers Crackdown on Memory Chip Makers in China," Reuters, Aug. 1, 2022.

Given this drumbeat of third-party statements and warnings, Yangtze cannot establish that its injuries are fairly traceable to the Defendants. A stay of discovery while Defendants pursue these case-dispositive arguments is warranted.

### C. The Court Lacks Personal Jurisdiction Over Defendants.

This case offends basic principles of fair play and due process by targeting parties with no connection to California. "At its core, the personal jurisdiction analysis is designed to ensure 'that maintenance of the suit does not offend traditional notions of fair play and substantial justice,' which is the hallmark of due process." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In conducting this analysis, the inquiry focuses on a defendant's contacts with the forum State, as "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," not the plaintiff's contacts. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Neither general nor specific personal jurisdiction exists here.

For general jurisdiction, a defendant's contacts must "be so continuous and systematic as to render [the] defendant essentially at home in the forum state." *Glob. Commodities v. Beneficio de Arroz Choloma*, 972 F.3d 1101, 1106 (9th Cir. 2020). Here, neither defendant is even allegedly "at home" in California. *See* Compl. ¶¶ 11, 12. A court may also exercise specific jurisdiction over "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For this type of personal jurisdiction, the plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

Yangtze asserts that the Report was "explicitly directed to audiences in this juridical district," Compl. ¶ 13, and cites in support the Report's references to the partnership between Apple and YMTC. *Id.*; *see also id.* ¶¶ 28–29 (similar). But the Complaint does not allege that Apple is

one of the "numerous" entities that severed whatever relationship it had with one or both of the Plaintiffs "in the fall of 2022." Compl. ¶ 35. Plaintiffs' claims therefore do not "arise from" Defendants' statements about Apple. Yangtze also complains that Defendants' conduct was directed "towards a company and its wholly owned California subsidiary, and to cause harm to that subsidiary." Compl. ¶ 17. The Ninth Circuit has squarely foreclosed the argument that "a theory of individualized targeting" suffices to establish specific jurisdiction. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017). In any event, there is no allegation in the Complaint that Defendants took any action directed toward the California subsidiary. The Report makes no mention of Yangtze Memory Technologies, Inc.; instead, it discusses "Yangtze Memory Technologies Company," "a Chinese semiconductor maker." Dkt. 1-2 at 5. That entity is "headquartered in China and maintains a principal place of business in Wuhan, China." Compl. ¶ 9.

### D. Yangtze Fails to State a Claim.

Under California law, a cause of action for trade libel requires a plaintiff to plead and prove special damages. *See Leonardini v. Shell Oil Co.*, 264 Cal. Rptr. 883, 898 (Cal. Ct. App. 1989). Because Plaintiffs "merely allege[] that the libelous statements 'harmed [their] business relationship[s]'" without the required specificity, Plaintiffs have failed to adequately plead special damages. *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 938 (N.D. Cal. 2008). Because YMTC's unfair-competition claim depends on its trade-libel claim, *see* Compl. ¶ 52, that claim fails, too. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1316 (N.D. Cal. 1997).

### V. **CONCLUSION**

For good cause shown, the Court should stay discovery until Defendants' forthcoming combined Motion to Strike and Motion to Dismiss is finally resolved.

| | |
|---|---|
| DATED:  October 30, 2024 | KING & SPALDING LLP |
| | By: */s/ Ethan P. Davis* |
| | Ethan P. Davis |
| | Randy M. Mastro (*pro hac vice*) |
| | Attorneys for Defendants Strand Consult and Roslyn Layton |