1  ETHAN P. DAVIS (SBN 294683)
    *edavis@kslaw.com*
2  **KING & SPALDING LLP**
    50 California Street, Suite 3300
3  San Francisco, California 94111
    Telephone: (415) 318-1200
4  Facsimile: (415) 318-1300

5  RANDY M. MASTRO (*pro hac vice*)
    *rmastro@kslaw.com*
6  **KING & SPALDING LLP**
    1185 Avenue of the Americas, 34th Floor
7  New York, New York 10036
    Telephone: (212) 556-2100
8  Facsimile: (212) 556-2222

9  *Attorneys for Defendants*
    STRAND CONSULT AND ROSLYN LAYTON
10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                             SAN JOSE DIVISION

14

15  YANGTZE MEMORY TECHNOLOGIES          Case No. 5:24-cv-03454-BLF
    COMPANY, LTD. AND YANGTZE
16  MEMORY TECHNOLOGIES, INC.,           Hon. Beth Labson Freeman

17                                        **DEFENDANTS STRAND CONSULT AND**
              Plaintiffs,                 **ROSLYN LAYTON'S REPLY IN**
18                                        **SUPPORT OF MOTION TO STAY**
          v.                              **DISCOVERY**
19
    STRAND CONSULT, ROSLYN LAYTON,        Hearing Date:  March 13, 2025
20  AND DCI GROUP AZ L.L.C.,              Time:  9:00 a.m.
                                          Location: Courtroom 3, 5th Floor
21
              Defendants.
22

23                                        Complaint Filed: June 7, 2024

24

25

26

27

28

---

DEFENDANTS' REPLY IN SUPPORT OF                        CASE NO. 5:24-cv-03454-BLF
MOTION TO STAY DISCOVERY

## I.    INTRODUCTION

As Defendants Strand Consult and Roslyn Layton's ("Defendants") Motion to Stay Discovery makes clear, Dkt. 39 ("Mot."), this is a vexatious case intended to chill Defendants' expression and abuse the discovery process. Proving the point, as soon as Plaintiffs were presented with challenges to subject-matter jurisdiction, personal jurisdiction, and the merits of their claims—as well as the threat of an anti-SLAPP motion, for which a prevailing defendant is entitled to an award of fees and costs, *see* Cal. Code Civ. Proc. § 425.16(c)—Plaintiffs decided that they will "no longer … pursue[]" *any* of the claims they had previously asserted, Dkt. 46 ("Opp.") at 4. Instead, Plaintiffs now bring entirely new claims, including against a new party, in an attempt to substitute a new action for one in which subject-matter jurisdiction did not exist. *See generally* Dkt. 50 ("Am. Compl.").

But Plaintiffs' attempt to avoid an anti-SLAPP motion (and a prevailing defendant's entitlement to attorney's fees) and to buy time to engage in fishing expeditions cannot succeed. It is well-established that when subject-matter jurisdiction does not exist at the outset of an action, as here, the Court must dismiss the action. A defect in subject-matter jurisdiction cannot be cured by amendment. None of the few exceptions to that rule apply here.

Despite this established doctrine—and despite Defendants' explanation of the doctrine to Plaintiffs before they filed their amended complaint, *see* Decl. of Ethan P. Davis ¶¶ 4–5 & Ex. A—Plaintiffs are determined to forge ahead with discovery before this Court has the opportunity to address fundamental jurisdictional issues. Plaintiffs' conduct simply reinforces that this action is an attempt to intimidate Defendants and other critics of the Chinese entities that threaten American national security. To allow discovery to proceed while the Court considers Plaintiffs' shifting claims would only reward Plaintiffs' gamesmanship.

## II.    THE COURT SHOULD STAY DISCOVERY

### A.    The Defect in Subject-Matter Jurisdiction Cannot be Cured by Amendment

Plaintiffs urge the Court to disregard its lack of subject-matter jurisdiction over their suit at the time of filing and to instead consider their brand-new claims under the Lanham Act, 15 U.S.C. § 1125(a). *See* Am. Compl. ¶ 30; Opp. at 5 (contending that "the Court no longer needs to evaluate

1

whether it has jurisdiction based on diversity of citizenship"). But Plaintiffs' response to Defendants' argument regarding subject-matter jurisdiction—which Defendants raised at the earliest opportunity in their Motion to Stay—amounts to nothing more than sleight of hand.

Notably, Plaintiffs no longer claim 28 U.S.C. § 1332 as a basis for jurisdiction. *See* Am. Compl. ¶¶ 25–31. Let there be no mistake: diversity jurisdiction cannot exist here. As Defendants have already explained, *see* Mot. at 7, the allegation that Defendant Roslyn Layton is domiciled in Florida, *see* Am. Compl. ¶ 23, is false, as Defendants are prepared to show by competent evidence. Therefore, Layton is neither a "foreign citizen" nor a "citizen of a State" for purposes of 28 U.S.C. § 1332, and her presence as a party destroys complete diversity.

Plaintiffs' attempt to amend does not alter this Court's obligation to dismiss this action. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." (emphasis added)). As a matter of clearly established law, Plaintiffs cannot use an amendment to create jurisdiction that did not exist at the outset of the case. "Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). "This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004). "If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'" *Morongo Band*, 858 F.2d at 1380 (quoting 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3844, at 332 (1986)); *see also Morris v. Gilmer*, 129 U.S. 315, 325 (1889) (holding that when "the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further and to dismiss the [suit]"). Although defective *allegations* of jurisdiction may be amended, a defect that is "one of substance" rather than one of form cannot be remedied by amendment. *Id.* at 1381 n.3.

Here, a fatal jurisdictional defect existed at the outset of the suit. *See* Mot. at 7. The sole alleged basis for jurisdiction was diversity of citizenship, predicated on the allegation that Defendant Roslyn Layton "resides in and owns a home" in Naples, Florida. Compl. ¶ 12. In fact, Layton resides in Denmark, as Plaintiffs now concede, Opp. at 8, and does not own the home in

2

1    Naples, *see* Ex. B. "Jurisdictional *facts*, not fiction even if truly believed, are dispositive." *Strotek*

2    *Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002) (emphasis in original). The

3    facts will show that Layton is domiciled in Denmark, not in Florida. *See St. Clair v. City of Ohio*,

4    880 F.2d 199, 201 (9th Cir. 1989) (holding that a court may consider material outside the pleadings

5    in order to determine its subject-matter jurisdiction). Therefore, this Court's "duty is to proceed no

6    further and to dismiss the [suit]." *Morris*, 129 U.S. at 325.

7            Well-settled law requires that this suit be dismissed, regardless of any attempt by Plaintiffs

8    to amend their complaint. In *Strudley v. Santa Cruz County Bank*, the Ninth Circuit affirmed the

9    district court's holding that plaintiffs could not "amend their complaint as a matter of right pursuant

10   to Federal Rule of Civil Procedure 15(a) to cure a jurisdictional defect in their original complaint."

11   747 F. App'x 617, 618 (9th Cir. 2019) (Mem.). The Court recognized that even though the plaintiffs

12   in that action purported to amend as of right under Rule 15(a), the issue was controlled by the

13   federal statute that specifically governs amendment of pleadings regarding jurisdiction, 28 U.S.C.

14   § 1653. Section 1653 allows parties to amend "[d]efective *allegations* of jurisdiction." Plainly,

15   Congress chose to allow parties to amend "incorrect statements about jurisdiction that actually

16   exists." *Newman-Green, Inc. v. Alfonzo-Larrain*, 40 U.S. 826, 830–31 (1989). But Congress did

17   not permit amendment of a complaint "so as to produce jurisdiction where none actually existed

18   before." *Id.* at 831. Because the plaintiffs in *Strudley* "sought to create jurisdiction, not clarify it,

19   when they amended their complaint to add a federal cause of action," the amendment could not

20   cure the jurisdictional defect. *Strudley*, 747 F. App'x at 618.

21           The outcome in *Strudley* mirrors decisions by courts across the country, including in

22   situations strikingly similar to this one. *See, e.g.*, *Multicultural Radio Broadcasting, Inc. v. Korean*

23   *Radio Broadcasting, Inc.*, 2017 WL 436250, at *4–*8 (D.N.J. Jan. 31, 2017) (dismissing a suit for

24   lack of jurisdiction where diversity jurisdiction did not exist and plaintiffs' attempt to add a Lanham

25   Act claim was not permissible; collecting cases). Other circuits agree with the Ninth Circuit that

26   amendment cannot cure a lack of jurisdiction. *See, e.g.*, *Pressroom Unions-Printers League Income*

27   *Sec. Fund v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) (holding that district court

28   correctly denied motion for leave to amend where plaintiff sought "not to remedy inadequate

3

1    jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for

2    one where it did not exist"); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888–89 (5th Cir. 2000)

3    (explaining that amendment can remedy inadequate allegations of jurisdiction, but cannot

4    retroactively create subject-matter jurisdiction).

5         A few highly circumscribed nuances or exceptions exist to the time-of-filing rule for

6    subject-matter jurisdiction and the corresponding prohibition against using amendment to cure a

7    lack of subject-matter jurisdiction. None apply here. For example, when the sole impediment to

8    jurisdiction is the presence of a nondiverse party who is dispensable, a court may, pursuant to

9    Federal Rule of Civil Procedure 21, drop that dispensable party. *See Grupo Dataflux v. Atlas Glob.*

10   *Grp.*, 541 U.S. 567, 572–73 (2004). That is not the case here. Another nuance permits a plaintiff to

11   amend himself *out* of court: when a plaintiff's amendment eliminates subject-matter jurisdiction

12   that had previously existed, that amendment, and not solely the original complaint, controls. *See*

13   *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–75 (2007). But it does not follow that a

14   plaintiff can retroactively plead himself *into* court. *See Strudley*, 747 F. App'x at 618

15   (distinguishing *Rockwell* on that basis); *see also Morongo*, 858 F.2d at 1381 n.2 (explaining that

16   subject-matter jurisdiction may be lost through amendment, but not created).

17        **B.    Even if Plaintiffs Could Amend Their Complaint, It Would Fail**

18        Even if Plaintiffs *could* amend their complaint, Defendants are likely to prevail on a motion

19   to dismiss.[1] Therefore, good cause exists to grant a stay of discovery because that motion will be

20   dispositive of the entire case and is likely to succeed. *See Wood v. McEwen*, 644 F.2d 797, 801 (9th

21   Cir. 1981); *Yiren Huang v. Futurewei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL 1993503, at

22   *2 (N.D. Cal. Apr. 27, 2018).

23        Plaintiffs will not be able to plausibly plead Article III standing. A plaintiff must plausibly

24   plead that it has suffered an injury that is "fairly … trace[able] to the challenged action of the

25   defendant, and not … th[e] result [of] the independent action of some third party not before the

26   court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). When a plaintiff

27   alleges that a defendant "caused injury by influencing the conduct of third parties"—as Plaintiffs

28

---

[1] Defendants may assert additional arguments in their motion to dismiss.

DEFENDANTS' REPLY IN SUPPORT OF                                    CASE NO. 5:24-cv-03454-BLF
MOTION TO STAY DISCOVERY

1    do by complaining that they have suffered financial injury because *third parties* allegedly severed

2    their business relationships with Plaintiffs after Defendants' challenged conduct—the plaintiff

3    "must offer facts showing" that the challenged conduct is "at least a substantial factor motivating

4    the third parties' actions." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014). That requirement

5    of "particular facts" without reliance on "speculation" or "guesswork" about third parties'

6    motivations applies even at the motion-to-dismiss stage. *Id.* (citing *Clapper v. Amnesty Int'l USA*,

7    568 U.S. 398, 413–14 (2013)). Plaintiffs' gesturing to earlier statements by Defendants, *see* Opp.

8    at 11, does nothing to plausibly suggest that there is a non-attenuated line of causation between

9    Defendants' criticism of YMTC and Plaintiffs' alleged harm.

10           Nor will Plaintiffs be able to plead a plausible claim for relief under the Lanham Act. The

11   Lanham Act applies to conduct "in commerce," including conduct in "commercial advertising or

12   promotion." 15 U.S.C. § 1125(a)(1)(B). The Ninth Circuit defines "commercial advertising or

13   promotion" as "(1) commercial speech, (2) by a defendant who is in commercial competition with

14   plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and

15   (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch

16   Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021). But neither Strand Consult (a consulting company in

17   Denmark) nor Roslyn Layton (an individual in Denmark) could possibly be considered "in

18   commercial competition with" Plaintiffs, manufacturers of semiconductors. Nor was Defendants'

19   challenged conduct made for any commercial purpose.

20   **III.    CONCLUSION**

21          The Court should stay discovery unless and until it determines that it has subject-matter

22   jurisdiction over this action and, if so, Defendants' forthcoming Motion to Dismiss is resolved.

23

24   DATED:  November 20, 2024              KING & SPALDING LLP

25                                         By: *Ethan P. Davis*
                                           ETHAN P. DAVIS

26                                         RANDY M. MASTRO (*pro hac vice*)
                                           Attorneys for Defendants

27                                         Strand Consult and Roslyn Layton

28

DEFENDANTS' REPLY IN SUPPORT OF                              CASE NO. 5:24-cv-03454-BLF
MOTION TO STAY DISCOVERY