1  Michael L. Resch (SBN 202909)
   mresch@kslaw.com
2  KING & SPALDING LLP
   50 California Street, Suite 3300
3  San Francisco, California 94111
   Telephone: (415) 318-1200
4  Facsimile: (415) 318-1300

5  Randy M. Mastro (*pro hac vice*)
   rmastro@kslaw.com
6  KING & SPALDING LLP
   1185 Avenue of the Americas, 34th Floor
7  New York, New York 10036
   Telephone: (212) 556-2100
8  Facsimile: (212) 556-2222

9  *Attorneys for Defendants*
   STRAND CONSULT, ROSLYN LAYTON, AND
10 DCI GROUP AZ, L.L.C.

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14

15 YANGTZE MEMORY TECHNOLOGIES          Case No. 5:24-cv-03454-BLF
   COMPANY, LTD. AND YANGTZE
16 MEMORY TECHNOLOGIES, INC.,           **DEFENDANTS' NOTICE OF MOTION
                                        AND MOTION TO DISMISS AMENDED
17             Plaintiffs,              COMPLAINT PURSUANT TO RULES
                                        12(b)(1), (2), & (6) AND 9(b);
18        v.                            MEMORANDUM OF POINTS AND
                                        AUTHORITIES**
19 STRAND CONSULT, ROSLYN LAYTON,
   AND DCI GROUP AZ LLC,                Date:  March 13, 2025
20                                      Time: 9:00 a.m.
               Defendants.             Location: Courtroom 3, 5th Floor
21                                      Judge: The Hon. Beth L. Freeman

22                                      Complaint Filed: June 7, 2024

23

24

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS FAC                    CASE NO. 5:24-cv-03454-BLF

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 13, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Beth L. Freeman of the above-entitled Court, located at the United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Courtroom 3, Defendants Strand Consult, Roslyn Layton, and DCI Group AZ, L.L.C. ("Defendants") will and hereby do move the Court to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (6) and 9(b) without leave to amend.

This Court should grant the requested dismissal for several independent reasons. First, the Court lacks subject-matter jurisdiction over this action. Subject-matter jurisdiction must exist at the outset of the action. Here, there was no subject-matter jurisdiction at the outset. That fatal defect cannot be cured by amendment. Second, Plaintiffs have not sufficiently and plausibly alleged Article III standing. Third, Plaintiffs have failed to establish statutory standing under the Lanham Act. Fourth, the Court lacks personal jurisdiction over Defendant DCI Group AZ, L.L.C. Finally, Plaintiffs do not plausibly allege facts to support their alleged Lanham Act claim.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Michael L. Resch and Roslyn Layton and attached exhibits, the pleadings and records on file in this case, the Request for Judicial Notice included herein and all matters of which the Court may take judicial notice, and such other or further material as may be presented at or before the hearing on the Motion.

Dated: December 17, 2024                    **KING & SPALDING LLP**


By: */s/ Michael L. Resch*
    Michael L. Resch
    Randy M. Mastro (*pro hac vice*)

    Attorneys for Defendants
    Strand Consult, Roslyn Layton, and DCI
    Group AZ, L.L.C.

# TABLE OF CONTENTS

I.    ISSUES TO BE DECIDED ................................................................. 2

II.   INTRODUCTION .......................................................................... 2

III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY .................... 4

IV.   LEGAL STANDARDS .................................................................... 6

V.    ARGUMENT ............................................................................... 7

      A.    This Action Must Be Dismissed for Lack of Subject-Matter Jurisdiction............... 7

            1.    There Was No Subject-Matter Jurisdiction at the Outset of this Action...... 7

            2.    This Fatal Jurisdictional Defect Cannot Be Cured by Amendment............. 8

      B.    This Action Must Be Dismissed for Lack of Article III Standing. ........................ 11

      C.    Plaintiffs Fail to Plead Statutory Standing under the Lanham Act. ...................... 13

      D.    The Court Lacks Personal Jurisdiction Over DCI Group. .................................... 15

      E.    The FAC Does Not Plausibly Allege a Claim Under the Lanham Act.................. 18

            1.    The CTT Publications are Not a "Commercial Advertising or Promotion" And Are Thus Not Actionable Under the Lanham Act............................. 20

            2.    The Specified Statements Fail to Meet the Standards for False Advertising. ..................................................................................... 23

VI.   REQUEST FOR JUDICIAL NOTICE .............................................. 25

VII.  CONCLUSION ............................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
    525 F. Supp. 3d 1088 (N.D. Cal. 2021) ................................................................. 22

*Allbirds, Inc. v. Giesswein Walkwaren AG*,
    2020 WL 6826487 (N.D. Cal. June 4, 2020) (Freeman, J.) ............................... 11, 12

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ........................................................................ 15, 18

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021) ................................................................................ 21

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ................................................................................ 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 7

*In re Boon Glob. Ltd.*,
    923 F.3d 643 (9th Cir. 2019) .................................................................................. 17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) (Stevens, J., concurring) ....................................................... 21

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) .......................................................................... 22, 23

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .......................................................................... *passim*

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ................................................................................ 15

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .................................................................................. 25

*In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*,
    953 F.3d 890 (6th Cir. 2020) .................................................................................. 10

*DNA Sports Performance Lab, Inc. v. Major League Baseball*,
    2020 WL 4430793 (N.D. Cal. Aug. 1, 2020) ......................................................... 15

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ................................................................................ 18

ii

*Exeltis USA Inc. v. First Databank, Inc.*,
    520 F. Supp. 3d 1225 (N.D. Cal. 2021) ................................................................. 22

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    582 U.S. 351 (2021) ...................................................................................... 16, 17

*In re Gilead Scis. Securities Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................. 7

*Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
    972 F.3d 1101 (9th Cir. 2020) ........................................................................... 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ......................................................................................... 16

*Grupo Dataflux v. Atlas Glob. Grp.*,
    541 U.S. 567 (2004) .................................................................................... 10, 11

*HomeLight, Inc. v. Shkipin*,
    694 F. Supp. 3d 1242 (N.D. Cal. 2023) .............................................................. 14

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ....................................................................................... 6, 9

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) ............................................................................. 8

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) .................. 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ......................................................................................... 13

*Maffick LLC v. Facebook, Inc.*,
    2021 WL 1893074 (N.D. Cal. May 11, 2021) .............................................. *passim*

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ............................................................................ 7

*Mississippi Band of Choctaw Indians v. Holyfield*,
    490 U.S. 30 (1989) ........................................................................................... 8

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ................................................................... 3, 9, 11

*Morris v. Gilmer*,
    129 U.S. 315 (1889) ......................................................................................... 9

*Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*
    2017 WL 436250 (D.N.J. Jan. 31, 2017) ........................................................... 10

iii

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989) ......................................................................................... 8, 9

*Peak Health Ctr. v. Dorfman*,
    2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ..................................... 19, 21, 23, 25

*Pressroom Unions-Printers League Income Sec. Fund. v. Continental Assur. Co.*,
    700 F.2d 889 (2d. Cir. 1983) ................................................................................. 10

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) ............................................................................................... 11

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ................................................................................. 6

*Smith v. Bank of Am., N.A.*,
    679 F. App'x 549 (9th Cir. 2017) ..................................................................... 7, 11

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ......................................................................... 19, 24

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................... 11

*Stahl L. Firm v. Judicate W.*,
    2013 WL 4873065 (N.D. Cal. Sept. 12, 2013) ............................................... 11, 12

*Strudley v. Santa Cruz Cnty. Bank*,
    747 F. App'x 617 (9th Cir. 2019) ........................................................... 3, 9, 10, 11

*Townsend Farms, Inc. v. United Juice Corp.*,
    793 F. App'x 493 (9th Cir. 2019) ......................................................................... 23

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ......................................................19, 20, 25

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ................................................................................. 25

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................... 15, 16, 17

*Whitmire v. Victus Ltd.*,
    212 F.3d 885 (5th Cir. 2000) ................................................................................. 10

*Yokeno v. Sekiguchi*,
    754 F.3d 649 (9th Cir. 2014) ................................................................................... 8

*Young Hollywood LLC v. White Ops, Inc.*,
    2020 WL 6162795 (C.D. Cal. Aug. 6, 2020) ......................................................... 22

iv

*Zinus Inc. v. Simmons Bedding Co.*,
    2007 WL 4287391 (N.D. Cal. Dec. 6, 2007) ........................................................................... 19

**Statutes and Other Authorities**

15 U.S.C. § 1125 .............................................................................................................11-15, 18-23

28 U.S.C. § 1331 ........................................................................................................................ 5, 6, 10

28 U.S.C. § 1332 ........................................................................................................................... 5, 7, 8

28 U.S.C. § 1653 .............................................................................................................................. 9, 10

Cal. Civ. Proc. Code § 410.10 ............................................................................................................ 15

Cal. Code Civ. Proc. § 425.16 ............................................................................................................. 3

Department of Commerce, Additions and Revisions to the Entity List and
    Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19,
    2022) ............................................................................................................................................. 4

Department of Defense, Entities Identified as Chinese Military Companies
    Operating in the United States (Jan. 31, 2024) ....................................................................... 4-5

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................................... 15

Fed. R. Civ. P. 9(b) ............................................................................................................... 19, 23-25

Fed. R. Civ. P. 12(b)(1) ......................................................................................................... 2, 6, 10, 11

Fed. R. Civ. P. 12(b)(2) ...................................................................................................................... 2, 7

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................... 7

Fed. R. Civ. P. 12(h)(3) ...................................................................................................................... 3, 9

Fed. R. Civ. P. 15 ............................................................................................................................... 9, 10

Fed. R. Civ. P. 21 ................................................................................................................................... 11

Fed. R. Civ. P. 82 ..................................................................................................................................... 9

White House, "Building Resilient Supply Chains, Revitalizing American
    Manufacturing, and Fostering Broad-Based Growth" (June 2021) ........................................ 4

v

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     ISSUES TO BE DECIDED**

1.     Whether this Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(1) because no subject-matter jurisdiction existed at the outset of the action and that fatal jurisdictional defect cannot be cured by Plaintiffs amending their complaint.

2.     Whether this Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack Article III standing.

3.     Whether this Court should dismiss the First Amended Complaint (ECF 50) ("FAC") because Plaintiffs lack statutory standing under the Lanham Act.

4.     Whether this Court should dismiss the claims against DCI Group AZ, L.L.C. in the FAC under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

5.     Whether this Court should dismiss the FAC under Federal Rules of Civil Procedure 9(b) and 12(b)(6) because Plaintiffs did not make plausible factual allegations to support their Lanham Act claim.

**II.     INTRODUCTION**

From its inception, this lawsuit has been a meritless attempt by a Chinese government-owned semiconductor manufacturer (along with its subsidiary (together, "YMTC")) to intimidate and silence its critics.[1] But the very statements challenged by YMTC in this litigation are supported by the United States government, which has placed YMTC on its list of Chinese military companies and imposed sanctions on it. Thus, it comes as no surprise that others, including the Defendants here, have also been critical of YMTC in their political commentary.

In light of a threshold jurisdictional defect, however, this Court does not need to reach the fundamental deficiencies in the Lanham Act claim alleged in the Amended Complaint ("FAC"). Significantly, Defendants repeatedly have explained to YMTC and its counsel that the Court lacked

---

[1] Plaintiff Yangtze Memory Technologies Company, Ltd. (YMTCL) is the Chinese entity. Plaintiff Yangtze Memory Technologies, Inc. (YMTI) is its wholly owned California subsidiary. ECF 1 ¶¶ 9–10.

2

subject-matter jurisdiction over the complaint initially filed in this case ("Complaint"). But rather than dismiss the case, YMTC now doubles down, asserting brand-new claims and adding a new defendant. But try as it might, YMTC cannot overcome the jurisdictional defect because the law is clear that such a defect cannot be cured, and the case must be dismissed. *See, e.g.*, *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). And even if the first amended complaint *were* properly before this Court—which it is not—it would nevertheless fail for numerous, independent reasons as described in detail below.

In its Complaint, YMTC alleged claims under California law against a Danish consulting company, Strand Consult, and its employee Dr. Roslyn Layton. *See generally* ECF 1 (the "Complaint"). YMTC claimed diversity in trying to establish this Court's subject-matter jurisdiction. Defendants, however, repeatedly advised YMTC and its counsel that their jurisdictional allegations were demonstrably false, and that this Court lacked subject-matter jurisdiction. *See* ECF 37 at 3; ECF 39 at 7. In response, YMTC simply sought to *create* jurisdiction by filing an amended complaint that replaces all of its previous claims with a single cause of action under the Lanham Act. But prior to YMTC's filing of the FAC, Defendants provided YMTC with case law holding that such a strategy would not cure the fatal jurisdictional issues that existed at the outset of this action. *See Morongo Band*, 858 F.2d at 1380; *Strudley v. Santa Cruz Cnty. Bank*, 747 F. App'x 617, 618 (9th Cir. 2019) (Mem.); *see also* ECF 55-1 ¶¶ 4–5; ECF 55-2. Nonetheless, YMTC pressed forward and abandoned its California claims in a transparent attempt to avoid California's anti-SLAPP law, which prohibits vexatious litigation filed to chill First Amendment rights (like this litigation) and entitles a prevailing defendant to an award of attorney's fees. *See* ECF 46 at 1 (stating that YMTC "***drops*** the California state law claims" in order to "moot[] Defendants' … anti-SLAPP motion[]"); Cal. Code Civ. Proc. § 425.16(a)–(c). YMTC also added a new defendant: DCI Group AZ, L.L.C., a public affairs company ("DCI Group").

The FAC should be dismissed for lack of subject-matter jurisdiction, and the Court need not reach Defendants' other arguments in this motion. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Alternatively, however, the FAC should be dismissed for these independent reasons: (1) YMTC

3

lacks Article III standing; (2) YMTC fails to allege statutory standing under the Lanham Act; (3) the Court lacks personal jurisdiction over DCI Group because the FAC fails to allege that DCI Group has sufficient contacts with California or that YMTC's claims arise out of those contacts; and (4) YMTC fails to plausibly allege its Lanham Act claim because the publications at issue are *not* "commercial advertising or promotion(s)" and because none of the statements identified in the FAC are false or misleading material statements about Plaintiffs or their products.

### III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs are a Chinese semiconductor manufacturer and its California subsidiary. Complaint ¶¶ 9–10. Defendant Strand Consult Aps ("Strand Consult") is a Danish consulting company. *Id.* ¶ 11. Defendant Roslyn Layton is Strand Consult's Executive Vice President, and her work includes contributions to Strand Consult's China Tech Threat ("CTT") website. *Id.* ¶¶ 11–12. Dr. Layton has written, and Strand Consult has published on the CTT website, reports and articles that are critical of YMTCL. *See, e.g.*, ECF 1-2 at 3.

The United States government has long monitored YMTC's concerning role in the Chinese government's project to control the semiconductor industry as part of its military-civil fusion objectives. *See, e.g.*, The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021 (Resch Decl. Ex. 1), at 60–63 (describing that project and recognizing the emergence of YMTCL as "China's national champion memory chip producer," attributed to billions of dollars from Chinese government sources, as among "the most mature of all [China's] efforts across the semiconductor spectrum"). As detailed in one of Dr. Layton's reports, published in June 2022, "[m]any U.S. policymakers have cautioned that YMTC poses a clear and present danger to America's national security." ECF 1-2 at 10.

The Department of Commerce has placed YMTC on a sanctions list because it "pose[s] a significant risk of being … involved in activities contrary to the national security and foreign policy interests of the United States." Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505, 77,506 (Dec. 19, 2022) (Resch Decl. Ex. 2). The United States Department of Defense has designated YMTC as a "Chinese military company." Department of Defense, Entities Identified as Chinese Military

4

1    Companies Operating in the United States, (Jan. 31, 2024) (Resch Decl. Ex. 3).

2         YMTC sued Strand Consult and Dr. Layton on June 7, 2024, alleging that their statements

3    in a June 2022 report published on the China Tech Threat website (the "CTT Report") were false

4    and defamatory. Compl. ¶¶ 28–55. The Complaint asserted causes of action under California law

5    for trade libel and an unlawful business practice. *Id.* YMTC alleged that the CTT Report harmed

6    its reputation and led to its loss of business relationships "between October and November 2022."

7    *Id.* ¶ 16. It sought compensatory damages, punitive damages, special damages, and injunctive relief

8    so that it can "control the publication and distribution" of Strand Consult's and Dr. Layton's

9    statements about it. *Id.* ¶ 55 *et seq.*

10        The Complaint cited 28 U.S.C. § 1332(a)(3) as the basis for the Court's subject-matter

11   jurisdiction. *Id.* ¶ 18. In support, it alleged that Dr. Layton "is a citizen of Florida" because she

12   allegedly "resides in and owns a home" in Florida. *Id.* ¶¶ 19, 12. Relying on this allegation, YMTC

13   claimed that the suit was between citizens of different states—the California YMTC entity and Dr.

14   Layton—with citizens of foreign states (the Chinese YMTC entity and Strand Consult) as

15   additional parties. *Id.* ¶¶ 18–19.

16        In the parties' Joint Case Management Statement filed on October 24, 2024, Dr. Layton and

17   Strand Consult explained that Dr. Layton in fact resides and is domiciled in Denmark. *See* ECF 37

18   at 3. Dr. Layton and Strand Consult (together, the "Denmark Defendants") reiterated that fact in

19   their Motion to Stay Discovery, in which they informed YMTC and the Court that they were

20   prepared to prove Dr. Layton's domicile by competent evidence. ECF 39 at 7. When the Denmark

21   Defendants raised this issue during the initial case management conference on October 31, 2024,

22   Plaintiffs' counsel responded that the issue would be "mooted" when Plaintiffs filed an amended

23   complaint asserting a new basis for subject-matter jurisdiction. Tr. at 6–7; *see* ECF 55-1 ¶¶ 2–3. In

24   YMTC's Opposition to Defendants' Motion to Stay Discovery, YMTC confirmed its intent to file

25   the FAC "drop[ping] the California state law claims" and "add[ing]" two claims arising under the

26   Lanham Act." ECF 46 at 1 (emphasis omitted). YMTC contended that this amendment would moot

27   the subject-matter jurisdiction issue by establishing jurisdiction under 28 U.S.C. § 1331. *Id.*

28

The next day, Defendants provided YMTC with case law holding that when subject-matter jurisdiction is lacking at the outset of an action, that defect cannot be cured by an amended complaint and the action must be dismissed. ECF 55-1 ¶¶ 4–5; *see* ECF 55-2 (email correspondence between Defendants' counsel and Plaintiffs' counsel on that issue). Despite purporting to dispute "Defendants' view of the case," YMTC did not respond at all to the issue Defendants raised. ECF 55-2 at 2. A few days later, Plaintiffs filed the FAC, discarding all of Plaintiffs' prior state law claims in favor of only one cause of action: false advertising, product disparagement, and unfair competition under the Lanham Act based on statements made in (i) the CTT Report, ECF 50-4, and (ii) a January 4, 2021 article that appears on the China Tech Threat website (the "CTT Article"), ECF 50-3. The FAC also claimed subject-matter jurisdiction under 28 U.S.C. § 1331 and added a new defendant, DCI Group AZ, L.L.C. *See* FAC ¶¶ 24, 30. The FAC alleges that all three Defendants are engaging in "deceptive marketing" "at the request of one of Plaintiff YMTC's competitors"—specifically, Micron. *Id.* ¶¶ 2, 7.

In their Reply in Support of the Motion to Stay Discovery, the Denmark Defendants argued, *inter alia*, that the action must be dismissed because the defect in subject-matter jurisdiction at the outset of the action could not be cured by amendment. ECF 55 at 1–4. On December 2, 2024, this Court granted the Motion to Stay Discovery. ECF 59. The Court preliminarily reviewed the parties' arguments regarding subject-matter jurisdiction and found "that Defendants have established in their papers that the subject matter jurisdiction issue is 'potentially dispositive' of the entire case" and could be decided without further discovery. *Id.* at 3.

## IV.    LEGAL STANDARDS

"It is to be presumed that a cause lies outside" the limited jurisdiction of the federal courts, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "In resolving a factual attack on jurisdiction" under Rule 12(b)(1), "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is also required if a plaintiff has not established Article III standing.

1    *Smith v. Bank of Am., N.A.*, 679 F. App'x 549, 550 (9th Cir. 2017).

2         The plaintiff also bears the burden of establishing personal jurisdiction. *Mavrix Photo, Inc.*

3    *v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). To withstand a motion under Rule

4    12(b)(2) based on written materials, a plaintiff must make a prima facie showing of jurisdictional

5    facts. *Id.*

6         A complaint is properly dismissed under Rule 12(b)(6) for failure to state a claim if it fails

7    to plead "enough facts to state a claim to relief that is plausible"—not merely "conceivable"—"on

8    its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must assume the truth

9    of well-pleaded allegations and draw reasonable inferences in favor of the plaintiff. *See In re Gilead*

10   *Scis. Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). However, the Court need not "accept

11   as true allegations that contradict matters properly subject to judicial notice," nor "allegations that

12   are merely conclusory … or unreasonable inferences." *Id.* (cleaned up).

13   **V.     ARGUMENT**

14       **A.     This Action Must Be Dismissed for Lack of Subject-Matter Jurisdiction.**

15       As Defendants have repeatedly explained to Plaintiffs, this action must be dismissed for

16   lack of subject-matter jurisdiction. *See* ECF 55-1 ¶ 4; ECF 55-2. The Court lacked subject-matter

17   jurisdiction over this action from the outset because there was no basis for diversity jurisdiction,

18   which was the sole alleged basis for jurisdiction when the lawsuit was filed. That fatal defect cannot

19   be cured by amendment. The Court need go no further to grant this motion and dismiss the FAC.

20           **1.     There Was No Subject-Matter Jurisdiction at the Outset of this**

21                  **Action.**

22       This action was commenced under the auspices of diversity jurisdiction. Plaintiffs, a

23   California entity and its Chinese parent company, alleged upon information and belief that Strand

24   Consult is headquartered and maintains its principal place of business in Denmark and that Dr.

25   Layton "resides in and owns a home" in Florida. Compl. ¶¶ 18, 9–12. Suing a "citizen of [a]

26   different State[]," 28 U.S.C. § 1332(a)(3), was the only way that Plaintiffs could bring their state-

27   law claims of trade libel and unfair competition. Compl. ¶¶ 38–55. So, Plaintiffs alleged that Dr.

28   Layton "is a citizen of Florida." Compl. ¶ 19. Such an allegation is and has always been false.

1    "In order to be a citizen of a State within the meaning of the diversity statute, a natural

2    person must both be a citizen of the United States *and* be domiciled within the State." *Newman-*

3    *Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). "The problem in this case is that [Dr.

4    Layton], although a United States citizen, has no domicile in any State. [She] is therefore 'stateless'

5    for purposes of § 1332(a)(3)." *Id.* Although Dr. Layton is also a citizen of Denmark, only her U.S.

6    citizenship is considered for purposes of determining diversity. *Yokeno v. Sekiguchi*, 754 F.3d 649,

7    655 (9th Cir. 2014). Therefore, Layton's presence as a party "destroyed complete diversity."

8    *Newman-Green*, 490 U.S. at 829.

9        Dr. Layton's domicile in Denmark is beyond doubt. Domicile "is established by physical

10   presence in a place in connection with a certain state of mind concerning one's intent to remain

11   there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Dr. Layton's

12   home has been in Denmark since 2010, and she intends to remain there. Layton Decl. ¶ 1 & Ex. A.

13   She lives in Denmark with her husband and their children. Layton Decl. ¶ 1. Strand Consult, a

14   Danish company, is Dr. Layton's only regular employer; she does her work from Denmark except

15   while on business trips. *Id.* ¶ 4. The house in Florida referenced by YMTC was Dr. Layton's

16   childhood home; she has never owned it. *Id.* ¶ 5. She sometimes visits her mother there while her

17   children are on school break; in total, she spends perhaps a few weeks in Florida each year. *Id.* ¶ 6.

18   To be sure, Dr. Layton has used the Florida address for correspondence and is registered to vote in

19   Florida, Compl. ¶ 12, FAC ¶ 23, Layton Decl. ¶¶ 7–8, but those facts are plainly insufficient to

20   establish her domicile, *see Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (defining domicile

21   as a fixed habitation where the person intends to remain permanently or indefinitely). Put another

22   way, the factors relevant to determining domicile point overwhelmingly to Denmark. *Lew*, 797 F.2d

23   at 749–50 (listing factors including fixed abode, intent to remain, location of spouse and family,

24   and place of employment).

25        **2.    This Fatal Jurisdictional Defect Cannot Be Cured by Amendment.**

26        The consequence of the Court's lack of subject-matter jurisdiction over the Complaint is

27   clear. Because the law prohibits YMTC from creating subject-matter jurisdiction while the case is

28   pending, YMTC's effort to cure the jurisdictional deficiency through the FAC fails.

8

"Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band*, 858 F.2d at 1380. "If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'" *Id.* (quoting 15 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3844, at 332 (1986)); *see also Morris v. Gilmer*, 129 U.S. 315, 325 (1889) (holding that when "the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further and to dismiss the [suit]"); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." (emphasis added)); 3 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE – CIVIL § 15.14 (3d ed. 1999) ("[I]f there is no federal jurisdiction, it may not be created by amendment.").

Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen.*, 511 U.S. at 377. In *Strudley*, the Ninth Circuit affirmed the district court's holding that the plaintiffs could not "amend their complaint as a matter of right pursuant to Federal Rule of Civil Procedure 15(a) to cure a jurisdictional defect in their original complaint." 747 F. App'x at 618. Because the plaintiffs in *Strudley* "sought to create jurisdiction, not clarify it, when they amended their complaint to add a federal cause of action," the Court affirmed the dismissal of the case. *Id.* The same outcome is required here.

The Court in *Strudley* recognized that although the plaintiffs in that action purported to amend as of right under Rule 15(a), the issue was controlled by the federal statute that specifically governs amendment of pleadings regarding jurisdiction, 28 U.S.C. Section 1653. *Id. See also Kokkonen*, 511 U.S. at 377 (jurisdiction cannot be expanded by judicial decree); Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts … ."). Section 1653 grants parties the ability to amend "[d]efective *allegations* of jurisdiction." (emphasis added). In other words, Congress granted federal courts the ability to exercise jurisdiction when parties amend "incorrect statements about jurisdiction that actually exists." *Newman-Green*, 490 U.S. at 830–31. But Congress did not permit amendment of a complaint "so as to produce jurisdiction where none actually existed before." *Id.* at 831.

9

1    The outcome in *Strudley* mirrors decisions by courts across the country, including in

2    situations strikingly similar to this one. Various Courts of Appeals have held, like the Ninth Circuit,

3    that amendment cannot cure a lack of subject-matter jurisdiction. *See, e.g.*, *Pressroom Unions-*

4    *Printers League Income Sec. Fund. v. Continental Assur. Co.*, 700 F.2d 889, 893 (2d. Cir. 1983)

5    (no leave to amend where plaintiff sought "to substitute a new action over which there is jurisdiction

6    for one where it did not exist"); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 888–89 (5th Cir. 2000)

7    (amendment cannot retroactively create subject-matter jurisdiction); *see also In re DePuy*

8    *Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 895–96 (6th Cir. 2020)

9    (collecting cases).

10    *Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.* is particularly

11    instructive. There, like here, the plaintiffs claimed diversity jurisdiction as the basis for their suit.

12    2017 WL 436250, at *1 (D.N.J. Jan. 31, 2017). After the defendants disputed the existence of

13    diversity jurisdiction, the plaintiffs sought to amend their complaint "in order to add a claim under

14    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and to assert federal question jurisdiction

15    pursuant to 28 U.S.C. § 1331." *Id.* at *2. The district court held that the plaintiffs failed to establish

16    diversity jurisdiction. *Id.* at *3. And it held that the plaintiffs could not "assert[] a new federal cause

17    of action and a new basis for subject matter jurisdiction" by amending their complaint, whether

18    under 28 U.S.C. section 1653 or Federal Rule of Civil Procedure 15. *Id.* at *5–6. The outcome in

19    this case should be the same.

20    This case falls squarely in the heart of the prohibition on retroactively creating subject-

21    matter jurisdiction. That prohibition is consistent with the principle that "the jurisdiction of the

22    Court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas*

23    *Glob. Grp.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539

24    (1824)). It also prevents time-consuming litigation by preventing "plaintiffs who took no effort to

25    ensure that their action had a valid jurisdictional basis" from amending their complaint whenever

26    faced with a Rule 12(b)(1) motion. *See Multicultural Radio*, 2017 WL 436250 at *7. A few highly

27    circumscribed nuances or exceptions exist, but none apply here. For example, when the sole

28    impediment to jurisdiction is the presence of a nondiverse party who is dispensable, a court may

10

1   drop that dispensable party pursuant to Federal Rule of Civil Procedure 21. *See Grupo Dataflux*,

2   541 U.S. at 572–73. That is not the case here. Another nuance permits a plaintiff to amend himself

3   *out* of court: when a plaintiff's amendment eliminates subject-matter jurisdiction, that amendment,

4   and not solely the original complaint, controls. *See Rockwell Int'l Corp. v. United States*, 549 U.S.

5   457, 473–75 (2007). But it does not follow that a plaintiff can retroactively plead himself *into*

6   federal court. *See Strudley*, 747 F. App'x at 618 (distinguishing *Rockwell* on that basis); *see also*

7   *Morongo*, 858 F.2d at 1380 n.2 (explaining that subject-matter jurisdiction may be lost through

8   amendment but may not be retroactively created).

9        For these reasons, the Court should dismiss the FAC under Rule 12(b)(1) for lack of

10  jurisdiction and does not need to reach the additional grounds for dismissal presented in this motion.

11              **B.    This Action Must Be Dismissed for Lack of Article III Standing.**

12       To plead Article III standing, a plaintiff must demonstrate "(1) an 'injury in fact,' (2) that

13  is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a

14  favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016). To establish "injury

15  in fact," a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest'

16  that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.*

17  at 339 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). Dismissal is required where

18  a plaintiff fails to meet the requirements for Article III standing. *Smith*, 679 F. App'x at 550; *see*

19  *also Allbirds, Inc. v. Giesswein Walkwaren AG*, 2020 WL 6826487 (N.D. Cal. June 4, 2020)

20  (Freeman, J.) (dismissing Lanham Act claims for failure to establish Article III standing).

21       A plaintiff establishes Article III standing for false advertising under the Lanham Act if

22  "some consumers who bought the defendant's product under a mistaken belief fostered by the

23  defendant would have otherwise bought the plaintiff's product." *Allbirds*, 2020 WL 6826487, at *4

24  (quoting *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 825 (9th Cir. 2011)). In other words,

25  Article III standing under the Lanham Act requires that a plaintiff adequately plead *competitive*

26  injury, either through evidence of "*direct* competition" or "actual market experience … creating a

27  chain of inferences showing how defendant's false advertising could harm plaintiff's business."

28  *Stahl L. Firm v. Judicate W.*, 2013 WL 4873065, at *2 (N.D. Cal. Sept. 12, 2013) (cleaned up)

11

1    (emphasis in original). A plaintiff cannot "rely on a bare legal conclusion to assert injury-in-fact."

2    *Id.* Here, YMTC lacks Article III standing for two independent reasons.

3         **First**, YMTC fails to adequately plead *competitive* injury sufficient to establish Article III

4    standing under the Lanham Act. Defendants and YMTC are not direct competitors. Strand Consult

5    and Dr. Layton are consultants, and DCI Group is a public affairs company. By contrast, Plaintiffs

6    are, by their own description, "developers and manufacturers of 3d NAND flash memories." FAC

7    ¶ 5. The FAC is devoid of any factual allegations that YMTC "actually competes" with Defendants

8    or that YMTC "competes or intends to compete with Defendants for the same pool of customers."

9    *Stahl L. Firm*, 2013 WL 4873065 at *3. As Article III injury for a false advertising claim requires

10   at least "*some* factual allegations in the pleading to support at least the inference of competition"—

11   and none exist here—dismissal is warranted. *Id.* at *6 (dismissing amended complaint for lack of

12   standing under the Lanham Act where the plaintiff "failed to allege or otherwise indicate that he

13   competes with Defendants" and "therefore failed to establish he has suffered or will suffer an

14   Article III injury as a competitor").

15        **Second**, YMTC fails to plead any "concrete or particularized" injury that is "fairly

16   traceable" to Defendants' alleged statements or alleged false advertising. The FAC contains only

17   generalized allegations of harm resulting from Defendants' alleged conduct that are far from

18   "concrete" or "particularized." *See, e.g.*, FAC ¶ 82 ("YMTC suffered substantial injury, including

19   harm to YMTC's reputation and goodwill, resulting in lost sales, revenue, opportunities, and market

20   share…"). YMTC also states in a conclusory fashion that "Defendants' conduct was a substantial

21   factor in causing these harms" because "[c]onsumers and businesses, particularly in the technology

22   sector, are sensitive to national security concerns and the potential for data breaches and

23   cyberattacks" without any further explanation. FAC ¶¶ 81–82. Such conclusory allegations do not

24   establish Article III standing, especially where the parties are not direct competitors. *See, e.g.*, *Stahl*

25   *L. Firm*, 2013 WL 4873065 at *2–3, 6; *see also Allbirds*, 2020 WL 6826487, at *4 (dismissing

26   Lanham Act claims for lack of standing where plaintiff failed to "provide evidence" that the subject

27   of the allegedly false statements was "an important factor for consumers" such that the court could

28   infer that defendant's "allegedly false or misleading advertising draws sales away from [plaintiff]

… creating a chain of inferences that [defendant's] false or misleading advertising harms [plaintiff's] business.").

Of special note here, the alleged statements are duplicative of similar statements already in the public (in this case by the United States government). In such circumstances, there is plainly no independent impact on YMTC's customers from Defendants' publications—and YMTC does not plausibly allege otherwise.

### C.    Plaintiffs Fail to Plead Statutory Standing under the Lanham Act.

In addition to failing to plead Article III standing, YMTC also lacks statutory standing to bring a false advertising claim under the Lanham Act, which requires that a plaintiff's injuries are "proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 132 (2014). This requires showing "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising …. [T]hat occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 958 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 133 (2014)) (emphasis added). Plaintiffs fail to establish a direct connection between the challenged statements and any of their alleged injuries.

***First***, the FAC fails to plead that any alleged reputational harm was proximately caused by Defendants. *Lexmark Int'l, Inc*, 572 U.S. at 133 ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."). The FAC makes a generalized statement about how the challenged statements "deceived, or had the tendency to deceive, a substantial segment of the relevant purchasing public, or those making purchasing decisions, including YMTC's customers and prospective customers, OEMs, businesses, and consumer end-users." FAC ¶ 80. Crucially, however, YMTC has not plausibly alleged any *facts* that any of these customers 1) were aware of the CTT Publications or 2) regularly rely on reports made by consultants or public affairs companies, such as Defendants, when making their purchasing decisions. *See, e.g., Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021) (dismissing Lanham Act claim where plaintiff "provided no clues about how the

13

1    alleged deception …might have affected the economic decisions by … existing and potential

2    customers, whoever they might be") (citations omitted).

3        Further, statements regarding YMTC's relationship with the Chinese government (and the

4    related potential security issues) appear in several other publications that are completely

5    unaffiliated with Defendants. For example, the White House published a paper that describes

6    YMTC as "China's national champion memory chip producer." Resch Decl. Ex. 1 at 62. And the

7    Department of Commerce has placed YMTC on a sanctions list based on a determination that it

8    "pose[s] a significant risk of becoming involved in activities contrary to the national security and

9    foreign policy interests of the United States." Resch Decl. Ex. 2 at 77,506. Therefore, even if

10    statements regarding YMTC's relationship with the Chinese government have had any material

11    effect on YMTC's sales or goodwill, YMTC has not adequately pled that such harm is directly

12    attributable to *Defendants* instead of any other source. *See, e.g.*, *HomeLight, Inc. v. Shkipin,* 694 F.

13    Supp. 3d 1242, 1255 (N.D. Cal. 2023) (dismissing Lanham Act claim where connection between

14    challenged statements and alleged harm was "too attenuated to establish proximate cause,"

15    especially where there was "[an]other plausible explanation" for why the alleged harm may have

16    occurred). For these reasons, YMTC has not sufficiently alleged that the CTT Publications reached

17    any of its consumers or had any effect on their purchasing decisions, much less that the CTT

18    Publications directly led to a loss in YMTC's sales or goodwill that otherwise would not have been

19    experienced as a result of publicly available information unrelated to Defendants.

20        **Second**, YMTC fails to establish how the challenged statements have specifically affected

21    YMTC's sales or business reputation. The FAC makes the conclusory allegation that consumers

22    are "sensitive to national security concerns" and, therefore, the challenged statements "directly

23    harmed YMTC's reputation and goodwill within the industry and among consumers, making it

24    more difficult for YMTC to compete effectively in the market, attract and retain consumers, secure

25    investments, and recruit and retain employees." FAC ¶ 68-69. YMTC's allegations are "ipse dixit

26    and not the pleading of facts." *Maffick LLC*, 2021 WL 1893074, at *5 (dismissing Lanham Act

27    claim for failing to plausibly allege injury from allegedly deceptive statements).

28

14

*Maffick LLC* is particularly relevant here. There, the plaintiff pled similarly vague allegations of reputational harm and damage to their business interests based on statements on Facebook labeling them as "Russia state-controlled media." *Id.* The court rejected this argument, dismissing the *Maffick* plaintiff's false advertising claim after finding that such ambiguous claims of injury were a "far cry" from the Lanham Act's causation requirement, which resembles something "very close to a 1:1 relationship" between an allegedly deceptive statement and alleged reputational harm. *Id.* Specifically, the *Maffick* plaintiff's claims were insufficiently pled because they "provided no clues" about how use of the "Russia state-controlled media" label might have affected the "economic decisions by Maffick's existing and potential customers" and "how those 'decisions' caused a commercial injury to Maffick's sales or business reputation" *Id.* YMTC's claims of alleged harm are similarly insufficient and should be dismissed on the same basis. *See also DNA Sports Performance Lab, Inc. v. Major League Baseball*, 2020 WL 4430793, at *4 (N.D. Cal. Aug. 1, 2020) (conclusory allegations of "lost revenue and market share" insufficient without a "clear diversion of sales" from publication of the offending statements).

### D.    The Court Lacks Personal Jurisdiction Over DCI Group.

The FAC should be dismissed as to DCI Group for another jurisdictional deficiency, this time personal jurisdiction, because the FAC does not sufficiently allege DCI Group's connection to California. Specific personal jurisdiction over an out-of-state defendant is proper only "where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020). In the absence of an applicable federal statute, the Court must look to the law of the state in which it sits. Fed. R. Civ. P. 4(k)(1)(A). Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, … the jurisdictional analyses under state law and federal due process are the same." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004)). The analysis focuses on the defendant's contacts with the forum, as "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him," not the plaintiff's contacts. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Neither general

15

1    nor specific personal jurisdiction exists over DCI Group.

2    For general jurisdiction, a defendant's contacts must "be so continuous and systematic as to

3    render [the] defendant essentially at home in the forum state." *Glob. Commodities Trading Grp.,*

4    *Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). Here, DCI Group

5    is not even allegedly "at home" in California. *See* FAC ¶ 24 (alleging that DCI Group is "an Arizona

6    limited liability company with its principal place of business in Washington, D.C." and that "[e]ach

7    member of DCI is a citizen of a state other than California").

8    A court may also exercise specific jurisdiction over "issues deriving from, or connected

9    with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A.*

10   *v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). For this type of personal jurisdiction, the

11   plaintiff's claims "must 'arise out of or relate to the defendant's contacts' with the forum" state.

12   *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 582 U.S. 351, 359 (2021) (quoting *Bristol-Myers*

13   *Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)). The FAC comes nowhere near plausibly

14   alleging that DCI Group has minimum contacts with California sufficient to establish specific

15   personal jurisdiction.

16   Most fundamentally, the *facts* alleged in the FAC do not reflect a connection between DCI

17   Group's conduct, on the one hand, and California, on the other. For example, YMTC alleges

18   Defendants "intentionally directed false and misleading statements through the China Tech Threat

19   website at YMT Inc. and California, knowing YMT Inc. maintained its principal place of business

20   in this district." FAC ¶ 25. That allegation is plainly insufficient for two reasons: (1) As the United

21   States Supreme Court has held, this type of targeting theory "impermissibly allows a *plaintiff's*

22   contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at

23   289. *Walden* squarely forecloses "a theory of individualized targeting" as sufficient to establish

24   specific jurisdiction. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir.

25   2017); (2) To the extent that a targeting theory "may remain relevant to the minimum contacts

26   inquiry," *id.*, the FAC does not plausibly allege DCI Group (or, indeed, any Defendant) "targeted"

27   YMTI, the California entity. *Not one* of the articles alleged by Plaintiffs even *mentions* the

28   California entity. *See generally* ECF 50-3, 50-4, 50-6, 50-7. Instead, these articles explicitly discuss

16

1  "Yangtze Memory Technologies Company," "a Chinese semiconductor maker." ECF 50-4 at 4; *see*

2  *also* ECF 50-3 at 2 (similar); ECF 50-6 at 2 (similar); ECF 50-7 at 2 (similar). Thus, even read in

3  the light most favorable to Plaintiffs, the FAC at most alleges that DCI Group targeted *China*

4  through the Chinese parent company, YMTCL.

5      Significantly, the sole statement by any Defendant allegedly tied to California is the June

6  2022 Report published by CTT. *See* FAC ¶ 27 (alleging that the Report "targeted Apple Inc. in

7  Cupertino, California, urging Apple to terminate its relationship with YMTC"); ECF 50-4.

8  YMTC's effort to rely on the June 2022 Report also fails for numerous reasons.

9      **First**, the FAC does not allege that *DCI Group* had anything to do with the June 2022 Report

10 published by CTT. *See generally* FAC. This is fatal to YMTC's reliance on the June 2022 Report

11 because each party's contacts with the forum must be assessed individually. *In re Boon Glob. Ltd.*,

12 923 F.3d 643, 651 (9th Cir. 2019). The FAC attempts to link DCI Group to California by alleging

13 that (i) DCI Group has some connection to *other* parties, (ii) those other parties have a connection

14 to a non-party in California (Apple) that has or had some unspecified connection to an unspecified

15 one of the two Plaintiffs, and (iii) one of the Plaintiffs resides in California and the other is linked

16 to California through that subsidiary. Such a tortured series of allegations does not come close to

17 demonstrating conduct by DCI Group that establishes the necessary contacts with California.

18 *Walden*, 571 U.S. at 289–90.

19     **Second**, the "'minimum contacts' analysis looks to the defendant's contacts with the forum

20 State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

21     **Third**, the FAC never alleges that the California entity—as opposed to the Chinese parent

22 company—ever had any "relationship with" Apple, FAC ¶ 27, nor that Apple actually terminated

23 whatever relationship it may have had with either Plaintiff. As such, YMTC's claims could not

24 "arise out of or relate to" that alleged California connection. *Ford Motor Co.*, 592 U.S. at 359.

25     Relatedly, Plaintiffs vaguely assert that "the brunt of the harm suffered by Plaintiffs and

26 caused by Defendants' conduct occurred in California, for example, through the loss of customers,

27 potential customers, and technical partners headquartered or located in the Northern District of

28 California." FAC ¶ 29. Again, Plaintiffs carefully obscure the critical detail of whose "customers"

and "potential customers" those were. The FAC asserts that "YMT Inc., operating within this judicial district, engaged in business discussions with prospective customers" and that some statements by some Defendants "directly and foreseeably harmed YMT Inc.'s business relationships." FAC ¶ 28. But there are no factual allegations to support the legal conclusion that Plaintiffs suffered harm "in California." *Id.* ¶ 29. Plaintiffs fail to allege specific facts from which the Court could conclude that the alleged harms affected the California subsidiary rather than the Chinese parent company. *See, e.g.*, *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002) (noting that harm "appears to have been suffered by Dole U.S. rather than its European subsidiaries" because "[u]nder the terms of the Service Agreement, Dole U.S. … pays all of the costs associated with the warehousing space and lease agreement" (emphasis omitted)).

That leaves only the allegations that the CTT website "is accessible in California," uses specific services "to improve the speed at which the site can be accessed within California," and uses "California-based internet infrastructure." FAC ¶¶ 26, 29. But YMTC does not claim DCI Group has anything to do with the "infrastructure" of the website. Nor does it allege that the use of content delivery services that "improve the speed at which the site can be accessed within California," *id.* ¶ 26, is evidence of a connection to California in particular. For example, YMTC does not claim that the website is designed to be accessed within California more quickly than it can be accessed worldwide, let alone more quickly than in other U.S. states as is required to support jurisdiction. *See AMA Multimedia*, 970 F.3d at 1212 (holding that use of internet provider "that offers fast speeds in the United States" was not evidence of purposeful direction toward United States where there was no "evidence to suggest that [the defendant] chose this vendor or was motivated by a desire to appeal to the U.S. market or generate more U.S. users, as opposed to more users globally").

### E.    The FAC Does Not Plausibly Allege a Claim Under the Lanham Act.

YMTC fails to make plausible factual allegations in support of its sole cause of action against all Defendants, namely, false advertising, product disparagement, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2]

---

[2] This cause of action is asserted "contributorily" as to Defendant DCI Group.

1    Under Ninth Circuit law, a plaintiff alleging false advertisement under the Lanham Act is

2    required to prove five elements:

3       (1) a false statement of fact by the defendant in a commercial advertisement about

4       its own or another's product; (2) the statement actually deceived or has the tendency

5       to deceive a substantial segment of its audience; (3) the deception is material, in that

6       it is likely to influence the purchasing decision; (4) the defendant caused its false

7       statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

8       be injured as a result of the false statement, either by direct diversion of sales from

9       itself to defendant or by a lessening of the goodwill associated with its products.

10   *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (footnotes omitted).

11   The same elements apply to YMTC's product-disparagement and unfair-competition claims. *See,*

12   *e.g.*, *Zinus Inc. v. Simmons Bedding Co.*, 2007 WL 4287391, at *4 (N.D. Cal. Dec. 6, 2007)

13   (applying these factors to product-disparagement claim); *Peak Health Ctr. v. Dorfman*, 2019 WL

14   5893188, at *6 (N.D. Cal. Nov. 12, 2019) (a Lanham Act "unfair competition" claim is a claim for

15   either "false association" or "false advertising").

16   YMTC must plausibly allege each of these elements and must do so with particularity under

17   Rule 9(b). *See, e.g.*, *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017–18,

18   1020 (N.D. Cal. 2012) (dismissing Lanham Act false advertising claims for failure to meet Rule

19   9(b) pleading requirements); *Peak Health Ctr.*, 2019 WL 5893188, at *7, *10–11 (same). Plaintiffs

20   were therefore required to allege the "who, what, when, where, and how of the misconduct

21   charged." *Id.* at *4 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

22   Despite alleging broadly that Defendants engaged in a "widespread and coordinated

23   campaign of false and misleading commercial advertising and promotion," FAC ¶ 62, the FAC

24   identifies only five specific statements in two sources (*i.e.*, the CTT Report and CTT Article,

25   together, the "CTT Publications"). As described below, these allegations do not plausibly allege a

26   claim because (1) the CTT Publications are *not* "commercial advertising or promotion" and (2)

27   none of the five specified statements are false or misleading material statements about Plaintiffs or

28   their products. Although YMTC also gestures to "other" statements in unnamed "various channels

19

and mediums," FAC ¶¶ 65, 62, such vague assertions are plainly insufficient. *See TransFresh Corp.*, 862 F. Supp. 2d at 1019–20 (dismissing false advertising claims for failure to meet Rule 9(b) standard where plaintiff failed to allege with requisite specificity "when and where" the alleged statements were made). As the Lanham Act forms the sole basis for the FAC, the FAC should be dismissed in its entirety.

> **1.    The CTT Publications are Not a "Commercial Advertising or Promotion" And Are Thus Not Actionable Under the Lanham Act.**

The Lanham Act is "not a boundless remedy for unfair trade practices in all their multivarious forms, or 'a federal codification of the overall law of unfair competition,' but applies only to the trade practices that it specifically prohibits." *Maffick LLC*, 2021 WL 1893074, at *3 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003)). "Conduct that is not commercial, and does not involve the sale of goods and services, is outside the 'dangers that the Lanham Act was designed to address,' and consequently not actionable under Section 43(a)." *Id.* at *3 (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)).

As a threshold matter, YMTC's false-advertising claim fails because YMTC has not adequately alleged that the challenged statements appeared within a "commercial advertising or promotion." *See* 15 U.S.C. 1125(a)(1)(B). Under Ninth Circuit law, a "commercial advertising or promotion" is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy *defendant's* goods or services." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (emphasis added) (quoting *Gordon & Breach Sci. Publishers v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994)). *See also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:71 (5th ed. 2024) (The Lanham Act's "commercial advertising or promotion" requirement "includes *only* communications that can be characterized as Constitutionally defined "commercial speech." (emphasis added)). The CTT Publications meet none of these required factors.

***First***, neither the CTT Article nor the CTT Report constitutes "commercial speech," which is defined in this Circuit as "speech that does *no more* than propose a commercial transaction."

1    *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (emphasis added) (quoting

2    *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)). *See also Peak Health Ctr.*, 2019

3    WL 5893188 at *7 ("A determination of whether speech is commercial should rest on 'the

4    commonsense distinction between speech proposing a commercial transaction and other varieties

5    of speech.'" (alteration adopted) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64

6    (1983))). Commercial speech should "not be defined too broadly lest speech deserving of greater

7    constitutional protection be inadvertently suppressed." *Central Hudson Gas & Elec. Corp. v. Pub.*

8    *Serv. Comm'n of N.Y.*, 447 U.S. 557, 579 (1980) (Stevens, J., concurring).

9         In *Peak Health Center*, the court found that an "investigative report" that focused entirely

10   on potential fraud in the development of plaintiff's CBD products was not "commercial speech"

11   despite being published on a website owned by the plaintiff's competitors. *Peak Health Ctr.*, 2019

12   WL 5893188 at *2. In doing so, the court looked closely at the actual report, finding that the "article

13   does not appear to be an advertisement or promotion. It is presented in a news format and purports

14   to be an 'investigative report.'" *Id.* at *7. And, notably, while the report critiqued the plaintiff's

15   products, "it contains nothing that can plausibly be characterized as advertising or promoting [the

16   publisher-competitor's] own products (or anyone else's)." *Id.*

17        As in *Peak Health Center*, both CTT Publications are news articles devoid of any proposals

18   of a "commercial transaction." The CTT Report is very clearly a long-form investigative report—

19   formatted and presented like an academic journal article—and the CTT Article is, at best, an

20   opinionated blog post. *See* ECF 50-4, 50-3. Neither is an advertisement or promotion by any

21   commonsense description. That each source focuses on YMTC and mentions YMTC's products is

22   unimportant; the CTT Publications are not advertising or promoting products owned by Defendants

23   (or any other company). The FAC should be dismissed on this ground alone.

24        **Second**, as described above, Defendants are not "in commercial competition" with

25   Plaintiffs. DCI Group is a public affairs company, while Strand Consult and Dr. Layton are

26   consultants. Plaintiffs are, by their own description, "developers and manufacturers of 3d NAND

27   flash memories." FAC ¶ 5. The parties do not sell competing products and Plaintiffs cannot

28   plausibly allege that Defendants are commercial competitors of Plaintiffs. *See, e.g., Young*

21

1    *Hollywood LLC v. White Ops, Inc.*, 2020 WL 6162795, at *6 (C.D. Cal. Aug. 6, 2020) (No

2    "commercial competition" where plaintiff was a "publisher and distributor of exclusive, premium

3    celebrity and lifestyle content" and Defendant was a "cybersecurity company that provides fraud

4    detection services"). This is another independent ground requiring dismissal of the FAC.

5         ***Third***, the CTT Publications were not written "for the purpose of influencing consumers to

6    buy [Defendants'] goods and services" as Defendants do not have any goods or services to sell—

7    all of the reports offered through the China Tech Threat website are available to consumers free of

8    charge. YMTC does not even allege that Defendants made money from the articles of which YMTC

9    complains, nor even from marketing or advertisements on the CTT websites. And, even if

10   Defendants *were* profiting from the sale of its publications, such revenue is irrelevant for the

11   purposes of determining a competitive commercial purpose under the Lanham Act. A contrary rule

12   would lead to the impermissible conclusion that "*[a]ny publication* would be deemed an

13   advertisement if the defendant had an interest in encouraging others to purchase it." *Alfasigma USA,*

14   *Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1101 (N.D. Cal. 2021) (emphasis added).

15   Therefore, a "profit motive to sell one's publication" by itself is insufficient to convert an

16   investigative report, such as the CTT Publications, into a "commercial advertising or promotion"

17   under the Lanham Act. *Id. See also Children's Health Def.*, 112 F.4th at 765 (A "simple profit

18   motive to sell copies of a publication or to obtain an incidental economic benefit, without more,

19   does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or

20   book for sale could be considered a commercial publication." (quoting *Ariix,* 985 F.3d at 1117)).

21        Recognizing the lack of commercial competition between the parties, Plaintiffs instead try

22   to rely on a non-party competitor. More specifically, YMTC makes the conclusory allegation that

23   the CTT Publications were somehow written for the sole benefit of "divert[ing] sales to" non-party

24   Micron, which Plaintiffs describe as their "direct competitor in the 3D NAND flash memory

25   market." FAC ¶ 63. But that allegation cannot support a Lanham Act claim against Defendants.

26   *See, e.g., Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1235 (N.D. Cal. 2021)

27   (holding that defendant's pharmaceutical database was not a "commercial advertising or

28   promotion" because—even if it was funded or directed by plaintiff pharmaceutical manufacturer's

competitors—it was "undisputed that the products listed in the database are not Defendant's own"); *see also Peak Health Ctr.*, 2019 WL 5893188 at *7 (where challenged statements appeared in an "investigative report," allegations of a "competitive relationship between [Defendant's employer] and [Plaintiff] and the economic incentives that may arise from that relationship" were insufficient to support "characterization of the article as a 'commercial advertising or promotion' without more").

YMTC has not alleged that Defendants have any financial stake in any of Micron's products such that the CTT Publications could be reasonably interpreted as advertisements or promotions of those products. Therefore, YMTC's conclusory allegations regarding any alleged relationship with non-party Micron are insufficient to convert the CTT Publications into a Lanham Act "commercial advertisement or promotion."

Simply put, the CTT Publications do not meet any of the factors required to constitute a "commercial advertisement or promotion," and thus YMTC's Lanham Act claim fails as a matter of law. *See Townsend Farms, Inc. v. United Juice Corp.*, 793 F. App'x 493, 495 (9th Cir. 2019) (affirming dismissal of Lanham Act false advertising claim where the false advertising claim "fail[ed] as a matter of law" because the press release in which the challenged statements appeared "did not propose a commercial transaction"); *Children's Health Def. v. Meta Platforms, Inc.,* 112 F.4th 742 (9th Cir. 2024) (Lanham Act false advertising claim properly dismissed because defendant's "economic interests are far too remote from the challenged speech for it to be plausible that the economic benefit was the primary purpose for speaking") (citation omitted).

### 2.    The Specified Statements Fail to Meet the Standards for False Advertising.

YMTC's false-advertising claim also fails because the challenged statements are non-actionable opinions and are not pled with the particularity required under Rule 9(b).

***First***, to demonstrate falsity under the Lanham Act, a plaintiff must show that a statement was "literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. To give rise to liability under the Lanham Act, a challenged statement must make a "specific and

measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract*, 173 F.3d at 731. The four challenged statements, which appear in the CTT Report, are clearly hypotheticals and, therefore, non-actionable:

- "YMTC chips equipped with spyware and installed on Apple devices *could* funnel collected data back to Beijing" FAC ¶ 77(b) (emphasis added)

- "YMTC chips … *present the possibility* that malicious technology … from the Chinese military could be introduced to Apple end-users" FAC ¶ 77(c) (emphasis added);

- "YMTC chips *could* be … intentionally compromised with rogue features … These built-in and concealed vulnerabilities would not be detected during manufacturing. They *could* be exploited … to disrupt performance or exfiltrate data"; FAC ¶ 77(d) (emphasis added) and

-  "Electronics with embedded chips are enabled with a 'kill switch' … Such features, under Chinese military production, *could* be enabled … to shut down remotely by an unauthorized Chinese government actor." FAC ¶ 77(e) (emphasis added).

None of the four statements above are actionable under the Lanham Act. While each warns of hypothetical and/or potential vulnerabilities in YMTC's products, critically, *none* of the statements would reasonably be interpreted by a consumer of YMTC's products to be objective fact. These four statements are therefore insufficient to form the basis of a Lanham Act false advertising claim. *See Coastal Abstract*, 173 F.3d at 731 ("Statements of opinion are not generally actionable under the Lanham Act.").

**Second**, while YMTC has alleged the "what" and "where" for each of the five identified statements, *see* FAC ¶ 70, the FAC fails to adequately plead *why* any of the five statements are false or misleading with the particularity required under Rule 9(b). Four of the five statements are simply labeled as "false and/or misleading statement" without any facts to support the allegation. This includes, for example, the statement in the CTT Article that "YMTC is associated with criminal activity, including a Social Security spoofing scam, identity theft, and cyber extortion." This statement is presented as a "false and/or misleading statement" but without any facts or

explanation as to *why* the statement is false or misleading. Dismissal is warranted under Rule 9(b) on that basis alone. *See, e.g., Peak Health Ctr.*, 2019 WL 5893188 at *11 (dismissing Lanham Act claim under Rule 9(b) because complaint failed to plead facts sufficient to allege "why or how the article's statements are wrong"); *TransFresh Corp.*, 862 F. Supp. 2d at 1019 (dismissing false advertising claims that did not meet Rule 9(b) requirements, including statements that did not "allege specific facts" as to "why [the statements] are misleading.").

The "Lanham Act does not confer a special license to shoot first, and ask questions later." *Maffick LLC*, 2021 WL 1893074, at *5. "A plaintiff suing under the Lanham Act is no different from any other plaintiff, and must plausibly allege a claim at the pleading stage in order for the case to proceed." *Id.* (citation omitted). YMTC's claims are insufficient to establish injury under the Lanham Act and should be dismissed. Furthermore, because amendment would be futile, the dismissal should be without leave to amend. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## VI.  REQUEST FOR JUDICIAL NOTICE

Defendants respectfully request that the Court take judicial notice of the following:

1. The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021. *See* Resch Decl. Ex. 1.

2. Dep't of Com., Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19, 2022). *See* Resch Decl. Ex. 2.

3. Dep't of Def., Entities Identified as Chinese Military Companies Operating in the United States (Jan. 31, 2024). *See* Resch Decl. Ex. 3.

The Court may take judicial notice of these documents as evidence of what information was available to the public around the time of Defendants' alleged conduct and Plaintiffs' alleged harm. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

## VII.  CONCLUSION

For the foregoing reasons, YMTC's Amended Complaint should be dismissed under Rules 9(b) and 12(b)(1), (2), and (6) without leave to amend.

1    Dated: December 17, 2024                    **KING & SPALDING LLP**

2

3                                          By: */s/ Michael L. Resch*
                                              Michael L. Resch
4                                             Randy M. Mastro (*pro hac vice*)

5                                             Attorneys for Defendants
                                              Strand Consult, Roslyn Layton, and DCI
6                                             Group AZ, L.L.C.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS FAC                    CASE NO. 5:24-cv-03454-BLF