Michael L. Resch (SBN 202909)
*mresch@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Randy M. Mastro (*pro hac vice*)
*rmastro@kslaw.com*
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

*Attorneys for Defendants*
STRAND CONSULT, ROSLYN LAYTON, AND
DCI GROUP AZ, L.L.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES COMPANY, LTD. AND YANGTZE MEMORY TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STRAND CONSULT, ROSLYN LAYTON, AND DCI GROUP AZ LLC, <br><br> Defendants. | Case No. 5:24-cv-03454-BLF <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1), (2), & (6) AND 9(b)** <br><br> Date:  March 13, 2025 <br> Time: 9:00 a.m. <br> Location: Courtroom 3, 5th Floor <br> Judge: The Hon. Beth L. Freeman <br><br> Complaint Filed: June 7, 2024 |

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Argument ...................................................................................................................... 2

        A.      This Action Must be Dismissed for an Incurable Lack of Subject Matter
                Jurisdiction ....................................................................................................... 2

                1.      The Court Lacked Subject Matter Jurisdiction Over the Initial Complaint . 2

                2.      The Jurisdictional Defect Is Incurable ........................................................ 4

                3.      The Court Should Decline YMTC's Request to Construe the FAC as a
                        New Action ................................................................................................ 8

        B.      The Court Lacks Personal Jurisdiction over DCI Group ......................................... 8

        C.      The FAC Fails to Establish Standing or Plausibly Allege a Claim Under the
                Lanham Act ....................................................................................................... 9

                1.      YMTC Lacks Standing to Pursue a Lanham Act Claim ............................ 9

                2.      The CTT Publications Are Not Commercial Speech and Therefore Not
                        Actionable Under the Lanham Act .......................................................... 12

                3.      None of the Challenged Statements Are Actionable Assertions of Objective
                        Fact ......................................................................................................... 13

III.    Conclusion ................................................................................................................. 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ariix, LLC v. NutriSearch Corp.*,
    985 F.3d 1107 (9th Cir. 2021).......................................................................................... 13, 14

*United States ex rel. Atkins v. Reiten*,
    313 F.2d 673 (9th Cir. 1963)................................................................................................... 9

*Boelens v. Redman Homes, Inc.*,
    759 F.2d 504 (5th Cir. 1985)................................................................................................... 7

*Chabner v. United of Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000)................................................................................................. 7

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
    403 F. Supp. 3d 813 (N.D. Cal. 2019) (Freeman, J.) ........................................................... 15

*ConnectU v. Zuckerburg*,
    522 F.3d 82 (1st Cir. 2008) ................................................................................................. 5, 6

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ................................................................................................................ 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................................................................................ 5

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986)............................................................................................... 3, 4

*LNS Enters. LLC v. Continental Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) ................................................................................................... 4

*Maffick LLC v. Facebook, Inc.*,
    No. 20-CV-05222-JD, 2021 WL 1893074 (N.D. Cal. May 11, 2021) ................................. 11

*Mason v. Genisco Tech. Corp.*,
    960 F.2d 849 (9th Cir. 1992)................................................................................................... 9

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988)......................................................................................... 5, 7, 8

*Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*,
    Civil Action No. 15-1961 (SRC), 2017 WL 436250 (D.N.J. Jan. 31, 2017)........................... 8

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)................................................................................................................. 5

*Northstar Financial Advisors Inc. v. Schwab Investments*,
   779 F.3d 1036 (9th Cir. 2015)...................................................................... 8

*Peak Health Ctr. v. Dorfman*,
   No. 19-CV-04145-VKD, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ............... 15

*Rockwell Int'l Corp. v. United States*,
   549 U.S. 457 (2007)................................................................................ 6, 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).................................................................................... 9

*Strudley v. Santa Cruz Cnty. Bank*,
   747 F. App'x 617 (9th Cir. Jan. 9, 2019) ....................................................... 7

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995)......................................................................... 4

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
   No. CV-19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ........... 11

*TrafficSchool.com, Inc. v. Edriver Inc.*,
   653 F.3d 820, 825-826 (9th Cir. 2011) ........................................................ 12

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010)...................................................................... 11

*Washer v. Bullitt County*,
   110 U.S. 558 (1884).................................................................................. 5


**Other Authorities**

28 U.S.C. § 1653 ....................................................................................... 5, 6, 8

31 U.S.C. § 3730(e)(4)(A) ................................................................................ 7

52 U.S.C. § 20302(a)(1) ................................................................................... 4

52 U.S.C. § 20310(5)(B)–(C)............................................................................. 4

Fed. R. Civ. P. 9(b) ....................................................................................... 15

Fed. R. Civ. P 12 ....................................................................................... 6, 15

Fed. R. Civ. P. 15 ...................................................................................... 5, 8, 9

Fed. R. Civ. P. 82 ......................................................................................... 5

Fla. Stat. § 97.041(4)...................................................................................... 4

iii

Fla. Stat. § 97.051 ............................................................................................................ 4

Lanham Act ............................................................................................................ *passim*

iv

1    **I.        <u>INTRODUCTION</u>**

2           Nothing in the YMTC Plaintiffs' opposition changes the threshold, indisputable

3    jurisdictional defect in this case. YMTC's misguided decision to pursue this amended complaint

4    ("FAC") anyway does not cure that defect and never could have; therefore, this case must now be

5    summarily dismissed for lack of subject matter jurisdiction.

6           Simply put, YMTC had no good-faith basis for pursuing this FAC in the first place and

7    knew it. Indeed, prior to insisting on proceeding, YMTC and its counsel were made aware that they

8    had no basis to allege that Dr. Layton was domiciled in Florida—the purported basis for the Court's

9    subject matter jurisdiction over the original complaint. YMTC was also made aware of the

10   controlling case law that such a jurisdictional defect could not be cured by amendment.

11   Nonetheless, YMTC refused to dismiss the FAC and forced Defendants to have to file this motion.

12   And now, YMTC doubles down on its factually baseless and legally bankrupt position. This Court

13   should have none of it.

14          As just one example, despite having no evidence whatsoever to contradict the sworn

15   statement of Dr. Layton that she lives in Denmark with her husband and children (and has lived

16   there since 2010) and intends to remain there with her family, YMTC continues to argue that she

17   is domiciled in Florida simply because of her voter registration there, which predates her current

18   (and longtime) Denmark residency. Such a tissue-thin, purported factual basis tells the Court all it

19   needs to know. But YMTC does not stop there. It then offers a tortured interpretation of the law

20   that cannot overcome the overwhelming weight of authority that this jurisdictional defect cannot

21   be cured by amendment. That should end the inquiry.

22          As described in detail below, YMTC's arguments in opposition to the rest of Defendants'

23   Motion to Dismiss fare no better. Leaving aside the threshold subject matter and personal

24   jurisdiction barriers to proceeding here, at its core, this lawsuit is nothing more than an effort by

25   YMTC to silence criticism by a non-competitor. But the Lanham Act does not permit such claims,

26   especially where, as here, the criticism is fully justified. Indeed, only one week ago, the Department

27   of Defense released an updated list of Chinese Military Companies Operating in the United States,

28   affirming that Yangtze Memory Technologies Co., Ltd. is part of China's military-civil fusion

1

strategy in support of the People's Liberation Army. *See* Dep't of Defense, Press Release: DOD Releases List of Chinese Military Companies in Accordance with Section 1260H of the National Defense Authorization Act for Fiscal Year 2021 (Jan. 7, 2025).[1] That Chinese government-owned entity and its California subsidiary (together, "YMTC") are suing Defendants for allegedly publishing statements that, for example, describe YMTC's products as presenting the "possibility" of national security risks. *See* FAC (Dkt. 50) ¶ 64(c). Leaving aside Defendants' protected right to express themselves on such important public issues in concert with their own government's position, Defendants are *not* competitors of YMTC—merely commentators on national security issues—and the China Tech Threat ("CTT") Publications challenged in the FAC do not qualify as commercial speech. The Lanham Act therefore has no application whatsoever to this circumstance, and YMTC's attempt to weaponize it here is completely misplaced. In the end, though, this Court need not reach the merits, because its lack of subject matter jurisdiction is so clear.

**II.    ARGUMENT**

    **A.    This Action Must be Dismissed for an Incurable Lack of Subject Matter Jurisdiction**

        **1.    The Court Lacked Subject Matter Jurisdiction Over the Initial Complaint**

        YMTC relies exclusively on the parties' alleged diversity as the basis for the Court's subject matter jurisdiction over the initial Complaint. As Defendants have explained repeatedly, however, the Court lacks diversity jurisdiction over this action because Dr. Layton is a U.S. citizen who is not domiciled in any U.S. state. Dkt. 65 ("Mot.") at 7–8; Dkt. 37 at 3; Dkt. 39 at 7; Dkt. 55 at 2–3. Having no meaningful response, YMTC persists in its misguided reliance on two facts: (1) Dr. Layton is registered to vote in Florida, and (2) Dr. Layton has used a Florida address in correspondence regarding China Tech Threat. Dkt. 66 ("Opp.") at 9–10. Neither comes close to establishing domicile, an issue on which the plaintiff always retains the burden of persuasion. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

---

[1] *Available at* https://tinyurl.com/5n8xk2fb.

As a threshold and indisputable legal principle, Dr. Layton's need to be a legal resident of Florida *when she registered to vote*, *see* Fla. Stat. §§ 97.041(4), 97.051, has no relationship whatsoever to her current residence or domicile. By law, a U.S. citizen living overseas—like Dr. Layton—is permitted to vote by absentee ballot in federal elections in the last place in which she was domiciled before leaving the United States. 52 U.S.C. § 20302(a)(1); *id.* § 20310(5)(B)–(C).

To be sure, an individual's "old domicile is not lost until a new one is acquired. A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely." *Lew*, 797 F.2d at 750. Here, Dr. Layton submitted a declaration establishing that she has lived in Denmark since 2010 (*i.e.*, she is physically present in Denmark) and intends to remain there. Dkt. 65-5 ¶ 1. Dr. Layton's intent to remain in Denmark is not surprising, given she lives there with her husband and children. *Id.* Independently corroborating Dr. Layton's sworn statement, the Danish Customs and Tax Administration considers Dr. Layton to have resided in Denmark since mid-2010. *See* Dkt. 65-6. YMTC has not even alleged, let alone proven, any facts to the contrary. *Contra* Opp. at 9 (erroneously suggesting Dr. Layton's statement of intent is "in conflict with the facts").

YMTC's reliance on Dr. Layton's use of a Florida address on correspondence related to CTT is also meritless. *See* Opp. at 10 (citing Dkt. 65-5 ¶ 7). Dr. Layton's occasional use of that address is not relevant to either her physical presence or her intent to remain in Denmark with her family. In short, YMTC has not alleged, much less proven, that Dr. Layton's occasional use of a Florida address for business related to Strand Consult outweighs the fact that Strand Consult is a Danish company and that Dr. Layton ordinarily completes her work for Strand Consult, including work related to the CTT website, in Denmark. Dkt. 65-5 ¶ 4; *see also* FAC ¶ 22 (alleging that Strand Consult maintains its principal place of business in Denmark).

In a last-ditch attempt to prolong this litigation, YMTC asks the Court to allow jurisdictional discovery. Opp. at 10. But YMTC has done nothing to "demonstrate how further discovery would allow [it] to contradict" Dr. Layton's sworn affidavit. *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). As such, the Court should deny such a futile and vague request. *See LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022).

3

1

## 2.    The Jurisdictional Defect Is Incurable

2          Nearly a month after filing the FAC—and more than a month after Defendants raised the

3    issue, *see* Dkt. 55-2 at 2-3—YMTC claimed for the first time that its "decision to file the FAC was

4    based on a reasonable interpretation" of inapposite case law, Dkt. 66-2 at 3. But the Ninth Circuit

5    has spoken clearly: "In determining federal court jurisdiction, we look to the original, rather than

6    to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is

7    commenced." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376,

8    1380 (9th Cir. 1988). That principle governs here and requires dismissal.

9          YMTC relies primarily on an out-of-circuit opinion, *ConnectU v. Zuckerburg*, 522 F.3d 82

10   (1st Cir. 2008). It argues that under *ConnectU*, its amendment must be given effect and is

11   controlling for purposes of subject matter jurisdiction. Opp. at 5–8. In *ConnectU*, the First Circuit

12   reasoned that whenever "a plaintiff amends its complaint as of right, the Civil Rules operate

13   mechanically," such that "the absence of federal subject matter jurisdiction in the original complaint

14   will pose no obstacle to the consideration of an amended complaint." 522 F.3d at 96.

15         YMTC's reliance on *ConnectU* fails. Most fundamentally, YMTC has no response to the

16   straightforward point that the amendment of pleadings regarding jurisdiction is specifically

17   governed by statute: 28 U.S.C. section 1653. *See* Mot. at 9; *see also* Dkt. 55 at 3. Federal courts

18   have only that power given to them by "Constitution and statute, which is not to be expanded by

19   judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Federal

20   Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts." Fed. R. Civ.

21   P. 82. Section 1653 permits "[d]efective allegations of jurisdiction" to be amended, which is

22   consistent with the Supreme Court's allowance of judgment upon an amended complaint where the

23   original pleading was "technically defective," *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884).

24   But as the Supreme Court has explained, section 1653 does *not* permit amendments that would

25   "produce jurisdiction where none actually existed before." *Newman-Green, Inc. v. Alfonzo-Larrain*,

26   490 U.S. 826, 831 (1989). When a defect is "one of substance" rather than form, section 1653 does

27   not allow amendment. *Morongo Band*, 858 F.2d at 1380 n.3. YMTC's reliance on its purported

28   amendment "as of right" pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), therefore, does

4

1   not save it. *See* Opp. at 4, 6–8. The First Circuit in *ConnectU* clearly did not mean to suggest

2   otherwise, given that the court there made no mention of section 1653, which, as a statute enacted

3   by Congress, cannot be overcome by the operation of the rules of civil procedure. That gap in the

4   First Circuit's reasoning leaves its holding inapplicable, especially given the controlling authority

5   from the Ninth Circuit.

6          *ConnectU* is distinguishable on other grounds as well. There, the court repeatedly

7   emphasized the apparent absence of strategic behavior and the fact that the amendment preceded

8   any challenge to subject matter jurisdiction. The First Circuit noted *three times* that the plaintiff

9   before it had switched its jurisdictional basis "before any jurisdictional issue ha[d] been raised,"

10  522 F.3d at 92; *see also id.* at 85, 95. Likewise, it reasoned that "in the mine-run of federal question

11  cases," there are not "heightened concerns about … strategic behavior." *Id.* at 92. This is not the

12  "mine-run" of cases; it is (and always has been) a vexatious case brought to chill speech and burden

13  critics with invasive discovery and the expenses of litigation. *See* Dkt. 37 at 5–6; Dkt. 39 at 1–3,

14  5–6. Indeed, YMTC evaded an anti-SLAPP motion to strike under California law only by

15  abandoning *all* of its original claims. *See* Mot. at 3. And YMTC's amendment was concededly in

16  response to Defendants' challenge to the Court's subject matter jurisdiction over this action. *See*

17  Dkt. 37 at 3; Dkt. 39 at 7; Dkt. 46 at 1 (YMTC's assertion that its "forthcoming amended complaint"

18  would "moot[] any question about diversity of citizenship"). That YMTC filed the FAC before

19  Defendants could move to dismiss on jurisdictional grounds—as YMTC knew Defendants were

20  preparing to do, *see* Dkt. 46 at 1—does not change the fact that YMTC's amendment was a blatant

21  and ineffective attempt to circumvent a fatal jurisdictional defect. *See* Fed. R. Civ. P. 12(h)(3) ("If

22  the court determines *at any time* that it lacks subject matter jurisdiction, the court *must* dismiss the

23  action.") (emphasis added)).

24         YMTC also erroneously relies on *Rockwell Int'l Corp. v. United States*, 549 U.S. 457

25  (2007). There, the Supreme Court held that an amended complaint *defeated* jurisdiction rather than

26  curing jurisdiction, as YMTC tries to do here. This alone demonstrates why *Rockwell* does not

27  support YMTC's effort to defend the FAC.

28

In *Rockwell*, the Supreme Court construed a provision of the False Claims Act that eliminates jurisdiction over certain claims brought by a relator who is not the original source of the information. 549 U.S. at 460; *see* 31 U.S.C. § 3730(e)(4)(A). The Court construed the statutory phrase "information on which the allegations are based" to refer to "the relator's allegations," and then reasoned that the term "allegations" included "(at a minimum) the allegations in the original complaint *as amended*." *Rockwell*, 549 U.S. at 473. Therefore, the relator had pleaded himself out of court because his original complaint satisfied the original-source exception, but his voluntary amendments later in the litigation added allegations for which he was not the original source. *Id.* at 473–74. Notably, the Court interpreted "allegations" to extend to amended complaints because a narrower understanding would enable the plaintiff to manipulate the court's jurisdiction by "plead[ing] a trivial theory of fraud for which he had some direct and independent knowledge and later amend[ing] the complaint to include theories" for which he was not the original source. *Id.* Likewise, the Court distinguished its holding from the rule for cases removed to federal court, in which, in order to combat "forum-manipulation concerns," "an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction." *Id.* at 474 n.6. *See also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (addressing only removal jurisdiction). Here, by contrast, manipulation of the Court's jurisdiction is precisely YMTC's intent.

As the Ninth Circuit explained in *Morongo Band*, the distinction between an amendment that *removes* a ground for subject matter jurisdiction and one that *adds* a ground for subject matter jurisdiction is critical. *Morongo Band*, 858 F.2d at 1380 n.2 (distinguishing *Boelens* because "[i]n the present case, the district court *lacked* jurisdiction at the outset"). *See also Strudley v. Santa Cruz Cnty. Bank*, 747 F. App'x 617, 618 (9th Cir. Jan. 9, 2019) (Mem.) (holding that the fact that "a plaintiff may voluntarily amend its original complaint to *remove* federal jurisdiction (except when a case has been removed to federal court)" does not mean that plaintiffs may do "the exact opposite.")). *Rockwell* did not claim to hold otherwise, explicitly or by implication. Indeed, in both of the cases that *Rockwell* cited as evaluating an amended complaint to determine jurisdiction, the plaintiff's amendment *removed* a ground for jurisdiction. *See Rockwell* at 474 (citing *Wellness*

1    *Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995); *Boelens v. Redman Homes, Inc.*,

2    759 F.2d 504, 508 (5th Cir. 1985)).

3        YMTC also relies on *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d

4    1036 (9th Cir. 2015). *See* Opp. at 7. *Northstar*, however, explains precisely why *Morongo Band*

5    controls here. In *Northstar*, the Ninth Circuit considered the effect of a supplemental pleading under

6    Rule 15(d), which permits a party to "serve a supplemental pleading setting out any transaction,

7    occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ.

8    P. 15(d); *Northstar*, 779 F.3d at 1044. *Northstar* distinguished *Morongo* because *Morongo* "did not

9    involve a supplemental pleading, much less one with allegations of events that occurred after the

10   commencement of the action." *Id.* at 1046. This case, of course, concerns an amended complaint

11   (like *Morongo Band*), not a supplemental complaint regarding events that occurred after the original

12   complaint was filed (like *Northstar*). So, *Northstar* itself shows that *Morongo Band* controls here,

13   requiring the Court to "look to the original, rather than to the amended, complaint" to evaluate its

14   jurisdiction. *Morongo Band*, 858 F.2d at 1381.

15       Finally, YMTC selectively cites *Multicultural Radio*, in which the district court held that a

16   plaintiff could *not* use an amendment to retroactively create subject matter jurisdiction.

17   *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, Civil Action No. 15-1961 (SRC),

18   2017 WL 436250, at *4–8 (D.N.J. Jan. 31, 2017). YMTC claims that *Multicultural Radio*

19   "highlights" the distinction between amendment as of right and amendment by leave of court. Opp.

20   at 7. Certainly, the *Multicultural Radio* court cited its lack of authority to consider a motion for

21   leave to amend as one reason why the action had to be dismissed. 2017 WL 436250, at *6 & n.2.

22   But YMTC ignores the entire preceding paragraph, in which the court explained that "the negative

23   inference to be drawn from [28 U.S.C.] Section 1653's language is that the statute implicitly

24   forecloses amendments aimed at curing a lack of subject matter jurisdiction under Rule 15." *Id.* at

25   *6. In other words, section 1653 bars the amendment *regardless* of Rule 15, just as Defendants

26   have said all along.

27

28

7

**3.    The Court Should Decline YMTC's Request to Construe the FAC as a New Action**

In the alternative, YMTC requests that the Court "treat[] the Amended Complaint as a newly filed action." Opp. at 8. The Court should decline that invitation because YMTC had every opportunity to follow the procedures to achieve that result—*i.e.*, dismiss this lawsuit and, if it desired, file a new action—but refused to do so. YMTC cites no reason why the Court should overlook that refusal and enable its manipulation. Instead, YMTC gestures to "judicial economy." Opp. at 8 (quoting *Janus v. AFSCME*, 585 U.S. 878, 889 (2018)). But judicial economy required YMTC to dismiss this action when it learned that Dr. Layton is not domiciled in any U.S. state and was advised that such a defect cannot be cured by amendment.

YMTC decries dismissal as an insistence "upon an empty formalism." Opp. at 8 (quoting *United States ex rel. Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963)). Not so. Neither the limits on courts' subject matter jurisdiction nor the procedures required to initiate a lawsuit are mere technicalities. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). In a new action, for example, YMTC would be required to effectuate proper service. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). YMTC would have to satisfy prerequisites before demanding the discovery it continues to seek. *See* Opp. at 1. In short, YMTC would have to bear the burdens any other plaintiff must bear after filing a complaint over which the Court lacked jurisdiction.

Even if the FAC could be construed somehow as an entirely new action (which it cannot), any such "new action" would be subject to defenses of a limitations period or principles of laches based on the filing date of the FAC. *Cf. Atkins*, 313 F.2d at 674–75 (permitting a pleading labeled as an "amended complaint" to be considered a supplemental pleading under Rule 15(d) where no statute of limitations problem was present).

**B.    The Court Lacks Personal Jurisdiction over DCI Group**

YMTC fails to show that its claims "arise out of or relate to" DCI Group A.Z., LLC's ("DCI Group") alleged contacts with California. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

8

1  YMTC admits that "the basis of this case" is a single publication: the June 2022 report written by

2  Dr. Layton and a co-author and published by CTT. Opp. at 11; see Dkt. 50-4 ("CTT Report").

3  YMTC argues that the CTT Report "is a call for Apple, headquartered in California, to end its

4  partnership with YMTC and, by implication, its California subsidiary." Opp. at 11. And it claims

5  that "Plaintiffs allege that DCI participated in the content on CTT, including the CTT Report." Opp.

6  at 12.

7  But the cited portions of the FAC make no such allegation. See FAC ¶¶ 45–46. Instead, the

8  FAC alleges that DCI had a "role" related to unspecified "false statements about YMTC." Id. ¶ 45.

9  The only factual allegation tying DCI Group to the CTT Report is the assertion that "sentences

10  contained in the CTT Report were also contained verbatim in a prior report that listed a DCI

11  employee as the author in metadata." Opp. at 12; FAC ¶ 43. But at most, that amounts to an

12  allegation that the CTT Report drew on an earlier CTT publication. It does not allege that DCI

13  Group took any action related to the CTT Report that could amount to "aiming" its conduct at

14  California, much less that YMTC's claims arise out of any such action by DCI Group. YMTC's

15  argument cannot trump its conflicting allegations.

**C.    The FAC Fails to Establish Standing or Plausibly Allege a Claim Under the Lanham Act**

18  YMTC's effort to defend its Lanham Act claim in this context does not withstand scrutiny.

**1.    YMTC Lacks Standing to Pursue a Lanham Act Claim**

20  Defendants' Motion to Dismiss makes clear that YMTC lacks Article III and statutory

21  standing to pursue a Lanham Act claim, both of which require plausible allegations of competitive

22  harm that are specifically connected to allegedly false statements. YMTC does not dispute that

23  Article III standing requires a "concrete and particularized" injury that is "fairly traceable to the

24  challenged action of the defendant." Mot. at 11–12; Opp. at 13. Similarly, statutory standing under

25  the Lanham Act requires that a plaintiff's injuries are "proximately caused by violations of [the

26  Lanham Act]" and requires showing "economic or reputational injury flowing *directly* from the

27  deception wrought by the defendant's advertising." Mot. at 13 (quoting *Lexmark Int'l, Inc. v. Static

28  Control Components*, *Inc.*, 572 U.S. 118, 133 (2014) (emphasis added)).

YMTC's Opposition repeats the same threadbare allegations of harm to its "reputation and goodwill" from its FAC and does not offer any direct throughline connecting the challenged statements and YMTC's alleged harm. Instead, the Opposition states in conclusory fashion that such alleged harm is "fairly traceable" to the CTT Publications, and that this "causation chain does not fail simply because it has several links." Opp. at 14. However, YMTC ignores clear precedent requiring any alleged harm under the Lanham Act to "clearly flow" from the alleged false advertisement. *Maffick LLC v. Facebook, Inc*., No. 20-CV-05222-JD, 2021 WL 1893074, at \*5 (N.D. Cal. May 11, 2021) (citing *Lexmark* and discussing how the "causal chain" linking injuries to consumer confusion should translate to "something very close to a 1:1 relationship").

The "causation chain" that YMTC suggests is far too attenuated to support its Lanham Act claim, particularly because any alleged harm suffered by YMTC could be attributed (and, indeed, is more plausibly attributable) to a number of sources *besides* Defendants, such as the United States government's own publications. *See* Mot. at 14. YMTC's argument against Defendants' Request for Judicial Notice of these other sources is unavailing. Defendants request that the Court take judicial notice of these documents as an indication of what information was available to the public around the time of Defendants' alleged conduct and YMTC's alleged harm. Mot. at 14, 25. Courts have found that judicial notice under that reasoning is proper on a motion to dismiss. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

*ThermoLife Int'l LLC v. Sparta Nutrition LLC,* which YMTC cites, confirms that a plaintiff cannot "blankly allege[]" causation without "connecting the dots." No. CV-19-01715-PHX-SMB, 2020 WL 248164, at \*9 (D. Ariz. Jan. 16, 2020). Listing other potential "intervening reasons" for why the *ThermoLife* plaintiff's sales might have decreased, the court dismissed a Lanham Act false advertising claim because the "vague and speculative allegations" in the complaint did not show how the alleged false advertising could have caused the plaintiff's alleged injuries "any more than any one these reasons could have." *Id.* Therefore, dismissal was warranted because "[n]o factual allegations support the inference that a consumer buying [d]efendant's purportedly falsely advertised products would have otherwise bought 'products sourced by [plaintiff]' *but for* [d]efendant's false advertising." *Id.* (emphasis in original). So should be the case here.

YMTC also cites *TrafficSchool.com, Inc. v. Edriver Inc.* to support its claim that it has adequately pled standing, but that case is inapposite. There, the parties were direct competitors such that causation could be established because, as the court concluded, "sales gained by one are … likely to come at the other's expense." 653 F.3d 820, 825–826 (9th Cir. 2011). That is clearly not the case here. Also, the plaintiff in *TrafficSchool.com* had provided evidence that the content of the allegedly false statements was an "important factor" in its consumers' purchasing decisions. *Id.* Here, by contrast, YMTC concedes that the parties are not direct competitors (Opp. at 22), and YMTC's Opposition offers no other plausible basis to conclude from the FAC's allegations that the CTT Publications reached any of YMTC's consumers or had any effect on their purchasing decisions.

Put another way, YMTC does not argue or allege any facts from which it can be concluded that its consumers rely or relied on Defendants Strand Consult and Dr. Layton's China Tech Threat website when making their purchasing decisions. Nor has YMTC made any attempt to argue how any alleged harm can be specifically traced to the CTT Publications in light of the fact that numerous other sources (including sources identified in the Motion) have warned of YMTC's connections to China. YMTC argues that Defendants take issue with only the "first element" of a Lanham Act claim (requiring a commercial advertisement). Opp. at 20. Not so. YMTC's lack of standing necessarily also results in its failure to meet the other elements of a Lanham Act claim, such as the requirement that the challenged statements "actually deceived or [have] the tendency to deceive a substantial segment of [their] audience," that any alleged deception was material and "likely to influence the purchasing decision[s]" of consumers, and that YMTC "has been or is likely to be injured as a result of the false statement[s]." Mot. at 19 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

For these reasons, YMTC does not have the requisite Article III or statutory standing to support its false advertising claims.

11

2.      **The CTT Publications Are Not Commercial Speech and Therefore Not Actionable Under the Lanham Act**

It is undisputed that YMTC must first establish that any allegedly false statements appeared in a "commercial advertising or promotion." Mot. at 20 (citing 15 U.S.C. § 1125(a)(1)(B)). Under Ninth Circuit law, this necessarily requires that such challenged statements are "commercial speech," which is speech that "does *no more* than propose a commercial transaction." *Id.* at 20–21 (citing *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021)). YMTC stretches the law too far in arguing that the CTT Publications somehow constitute "commercial speech."

As explained in the Motion to Dismiss, the CTT Report is a long-form investigative report and the CTT Article (Dkt. 50-3) is, at best, an opinionated blog post. *Id.* at 21. Both were written for and published on Defendants Strand Consult and Dr. Layton's China Tech Threat website, which focuses on news and reports regarding American national security interests. There is no plausible basis to argue that the CTT Publications propose a commercial transaction.

While YMTC argues that the CTT Publications are akin to the guide in *Ariix*, crucial differences exist. First, unlike here, the guide in *Ariix* was intended specifically to provide ratings of different nutritional supplements and had "become a trusted name among sales representatives in the direct marketing supplement industry." 985 F.3d at 1111. Among the allegations in *Ariix* was that the authors of the guide were purposely rigging its supposedly neutral ratings to benefit a certain company by ensuring that it received a top ranking in the guide and that its main competitor did not. *Id.*

The guide in *Ariix* was therefore intended to be a resource for consumers to assess potential options to inform their purchasing decisions. By contrast, the CTT Publications were neither (1) resources upon which potential consumers regularly relied to inform their purchasing decisions or (2) written to *promote* or *advertise* any specific product. Try as it might, YMTC cannot magically convert an investigative report into an advertisement or promotion simply because it also mentions a company's competitors. Notably, YMTC alleges that the CTT Publications were written to promote non-party Micron's products at the expense of YMTC's products but, in doing so, it fails to address that the CTT Publications listed numerous other companies *in addition to* Micron as

12

potential alternatives to YMTC's products. *See, e.g.*, FAC Ex. 4 (Dkt. 50-4), at 12 (stating that memory chips could be sourced from "non-Chinese chipmakers like Micron, Kioxia, Samsung, SK Hynix, Western Digital, and Intel").

Nor has YMTC plausibly alleged that either of the CTT Publications were written "for the purpose of influencing consumers to buy [Defendants'] goods and services." *Ariix*, 985 F.3d at 1115 (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). YMTC concedes that Defendants are not competitors with YMTC and are "not sellers of memory products." Opp. at 22. Instead, YMTC argues that an agency relationship exists between Defendant DCI and non-party Micron. *Id.* at 22–23. While Defendants dispute such a characterization, Defendant DCI did not author or publish either of the CTT Publications and thus any alleged relationship between DCI and Micron is irrelevant to the question of whether the CTT Publications are commercial speech. And, further, while YMTC cites to a statement that Defendant Strand Consult "made money" on CTT (*id.* at 23), Defendants' Motion to Dismiss made clear that any profit from the sale of publications is irrelevant for the purposes of determining whether a publication is "commercial speech" under the Lanham Act. Mot. at 22 (quoting *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 765 (9th Cir. 2024) (A "simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech.")). Having no response, YMTC ignored this point altogether.

### 3.    None of the Challenged Statements Are Actionable Assertions of Objective Fact

YMTC does not dispute that for a statement to be actionable under the Lanham Act, it must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." Mot. at 23 (quoting *Coastal Abstract Serv.*, 173 F. 3d at 731). This is fatal to YMTC's Lanham Act claim. Each of the challenged statements included in the FAC is a hypothetical *opinion* regarding the potential risks that YMTC's products may pose. Such an opinion is not actionable under the Lanham Act because it could not be reasonably interpreted by a consumer of YMTC's products to be objective fact. Mot. at 23–24. YMTC's

1    Opposition does little to contest this, and instead largely just repeats the law for what constitutes

2    an actionable statement under the Lanham Act. Opp. at 24–25.

3          Further, while YMTC contests whether Rule 9(b) applies to Lanham Act false

4    advertisement claims, this Court has acknowledged that "several district courts have applied 9(b)

5    to false advertising claims brought under the Lanham Act because such claims are grounded in

6    fraud." *Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d 813, 827 (N.D. Cal. 2019) (Freeman,

7    J.). Regardless, YMTC offers no challenge to Defendants' argument that the FAC fails to assert

8    "why" or "how" the challenged statements are false. *See* Mot. at 24–25. Instead, YMTC makes

9    irrelevant statements about its products' alleged technical capabilities and vague laudatory claims

10   about the company (such as the statement that YMTC is "at the forefront of 3d NAND flash

11   memory design" (Opp. at 24)), which are clearly insufficient to explain why any of the identified

12   statements are false. *See, e.g.*, *Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2019 WL

13   5893188, at *11 (N.D. Cal. Nov. 12, 2019) (dismissing Lanham Act claims where plaintiff failed

14   to "plead facts sufficient to plausibly support its claims that all of the statements are false or

15   misleading"). Therefore, YMTC has failed to plausibly allege that any of the identified statements

16   are actionable under the Lanham Act, and the FAC should be dismissed as a result.

17   **III.    CONCLUSION**

18         For the foregoing reasons, the FAC should be dismissed under Rules 9(b) and 12(b)(1), (2),

19   and (6) without leave to amend.

20

21   Dated: January 14, 2025                    **KING & SPALDING LLP**

22

23                                              By: */s/ Michael L. Resch*
                                                   Michael L. Resch
24                                                 Randy M. Mastro (*pro hac vice*)

25                                                 Attorneys for Defendants
                                                   Strand Consult, Roslyn Layton, and DCI
26                                                 Group AZ, L.L.C.

27

28