QUINN EMANUEL URQUHART & SULLIVAN, LLP
David Eiseman (Bar No. 114758)
  davideiseman@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Robert Schwartz (Bar No. 117166)
  robertschwartz@quinnemanuel.com
Aaron Perahia (Bar No. 304554)
  aaronperahia@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Evan Pearson (*pro hac vice*)
  evanpearson@quinnemanuel.com
300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
Telephone:   (737) 667-6100
Facsimile:   (737) 667-6110

Hayden Little (*pro hac vice*)
  haydenlittle@quinnemanuel.com
700 Louisiana Street, Suite 3900
Houston, Texas 77002-2841
Telephone:   (713) 221-7000
Facsimile:   (713) 221-7100

*Attorneys for Plaintiffs Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc.*

KING & SPALDING LLP
Michael Resch (Bar No. 202909)
  mresch@kslaw.com
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:   (415) 318-1200
Facsimile:   (415) 318-1300

Randy M. Mastro (*pro hac vice*)
  rmastro@kslaw.com
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone:   (212) 556-2100
Facsimile:   (212) 556-2222

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Yangtze Memory Technologies Company, Ltd. and Yangtze Memory Technologies, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Strand Consult, Roslyn Layton, and DCI Group AZ L.L.C. <br><br> Defendants. | Case No. 5:24-cv-03454-NW <br><br> Hon. Noël Wise <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Crtrm.:  Courtroom 3 – 5th Floor <br>           280 South 1st Street, <br>           San Jose, CA 95113 <br><br> Trial Date:             March 22, 2027 |

# JOINT CASE MANAGEMENT STATEMENT

Plaintiffs Yangtze Memory Technologies Company, Ltd. ("YMTC, Ltd.") and Yangtze Memory Technologies, Inc. ("YMT, Inc.") (together, "YMTC" or "Plaintiffs") and Defendants Strand Consult, Roslyn Layton, and DCI Group AZ, L.L.C. ("DCI") (together, "Defendants") submit this Case Management Statement per the Court's Order Reassigning the Case. Dkt. 71.

## I. JURISDICTION AND SERVICE

Plaintiffs' initial complaint asserted state law claims against Defendants Strand Consult and Roslyn Layton. Dkt. 1. Plaintiffs are citizens of California and China, and Plaintiffs alleged that Strand Consult and Roslyn Layton are citizens of Denmark and Florida, respectively. *Id.* ¶¶ 9-12. Plaintiffs (with new counsel) filed an amended complaint as of right under Rule 15(a)(1)(B) that substituted federal Lanham Act claims in lieu of the state law claims and added DCI as a Defendant. Dkt. 50. Plaintiffs have served all Defendants. Dkts. 40, 41, 56.

The parties dispute a central jurisdictional question: When a plaintiff amends a complaint as of right to add federal claims, should the court evaluate jurisdiction based on the amended complaint or the original complaint? *See* Dkts. 65-67. Plaintiffs contend that: (1) the Court should evaluate subject matter jurisdiction based on the amended complaint, (2) even if not, this Court can and should construe the amended complaint as a newly-filed action, and (3) Roslyn Layton is a citizen of Florida. Defendants contend that where subject-matter jurisdiction did not exist at the outset of an action, that defect cannot be cured by amendment and that there was no diversity jurisdiction because Roslyn Layton is a citizen of Denmark.

After the parties completed briefing on Defendants' Motion to Dismiss (Dkt. 65-67) (which raised jurisdiction as one of several arguments), the Supreme Court decided *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), which the parties agree related to the jurisdictional question before the Court. Dkts. 68, 69. The parties summarize their positions below and will provide supplemental briefing on this issue if the Court requests it.

### A. Plaintiffs' Statement

**Subject matter jurisdiction.** The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction). "When a plaintiff files a complaint in federal court and then

voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474–75 (2007).  Before *Royal Canin*, the First Circuit held that "an amended complaint that switches the basis of the district court's subject matter jurisdiction from the existence of diversity of citizenship, 28 U.S.C. 1332(a)(1), to the existence of a federal question, *id.* § 1331, should be given effect *when filed as of right* before any jurisdictional challenge has been mounted." *ConnectU v. Zuckerberg*, 522 F.3d 82, 85 (1st Cir. 2008) (emphasis added).  *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988) does not govern this case because *Morongo* involved *leave to file* an amended complaint, which "necessarily implicates a district court's authority to grant or deny the motion" in a case allegedly lacking jurisdiction.  *ConnectU*, 522 F.3d at 96.  But when a plaintiff amends a complaint as of right, "the Civil Rules operate mechanically, and the judge's authority over the case is not brought to bear."  *Id.*

The Supreme Court has now settled the controversy before this Court.  In *Royal Canin*, the Supreme Court held that when a plaintiff "voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."  604 U.S. at 32 (quoting *Rockwell*, 549 U.S. at 473–74).  The Court noted that its rule "parallels a slew of other, mainly judge-made procedural rules linking jurisdiction to the amended, rather than initial complaint."  *Id.* at 34.  The Court favorably cited *ConnectU*, *id.* at 36–37, and stated five times that subject matter jurisdiction is to be decided based on the amended complaint, either to create or destroy jurisdiction:

- In multiple contexts—involving both *cases brought in federal court* and cases removed there—courts conceive of amendments to pleadings as potentially jurisdiction-changing events. The amended complaint becomes the operative one; and in taking the place of what has come before, it can either *create* or destroy jurisdiction.  *Id.* at 34–35 (emphasis added).

- The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction. *Id.* at 35.

- That so-called time-of-filing rule, *Rockwell* explained, concerns only the actual 'state of things' relevant to jurisdiction—meaning, the facts on the ground, rather than (as addressed here) the claims and parties that the plaintiff includes in a complaint.  *Id.* at 36 n.5.

- Adding federal claims can create federal jurisdiction where it once was wanting. *Id.* at 36 (citing *ConnectU*, 522 F.3d at 91).

- [I]n removed cases too, amending a complaint to add a federal claim creates federal jurisdiction when it did not previously exist. So even if removing a case was improper because the initial complaint did not contain a federal claim, the plaintiff's later assertion of such a claim establishes jurisdiction going forward. . . . The appropriateness of federal jurisdiction—or lack thereof—does not depend on whether the plaintiff first filed suit in federal or state court." *Id.* at 37–38.

These statements are not dicta. Fortunately (and fortuitously for this case), the Court discussed what is and what is not dicta in response to the petitioners' reliance on what the Court found to be dicta from two earlier cases. 604 U.S. at 39-43. The Court deemed the petitioners' first citation to be dictum because it "supported neither the decision's result nor its values-based reasoning." *Id.* at 41. The Court deemed the petitioners' second citation as dictum because it "had no bearing on the Court's conclusion," did not "relate to the rationale supporting [the Court's] result," and was "barely reasoned." *Id.* at 42. Immediately after that discussion of dicta, the Court restated the points on which its analysis depends. *Id.* at 43. Among those is that "*Rockwell*'s own core insight"—that courts "look to the amended complaint to determine jurisdiction"—operates "in federal-question cases and diversity cases, both to destroy and to create jurisdiction." *Id.* Accordingly, that statement cannot be deemed mere dictum, as Defendants here contend.

**Personal jurisdiction.** Defendants have not challenged personal jurisdiction over Strand Consult and Roslyn Layton. This Court has personal jurisdiction over DCI because DCI purposefully directed its astroturfing campaign to target a California entity and frustrate deals between two California companies being negotiated in California.

**Article III standing.** Defendants intended to harm Plaintiffs' market share, business reputation, and goodwill. Because their campaign had its intended effect, and these are legally cognizable injuries, Plaintiffs have Article III standing.

B.  **Defendants' Statement**

The jurisdictional issues are fully briefed in Defendants' pending Motion to Dismiss. *See* Dkt. 65, 67. The jurisdictional issues are summarized briefly below.

**Subject-matter jurisdiction.** Plaintiffs' original complaint asserted only claims under California law and claimed diversity jurisdiction on the theory that Dr. Layton is domiciled in Florida. In fact, Dr. Layton is domiciled in Denmark, where she has resided with her family for the past decade. *See* Dkt. 65 at 7–8. Therefore, there was no basis for diversity jurisdiction. After

Defendants informed Plaintiffs of this fundamental defect, *see id.* at 5–6, Plaintiffs filed an amended complaint in which they abandoned all of their original claims in favor of claims under the federal Lanham Act. Based on case law that was then clearly controlling, Defendants argued in their Reply in Support of Motion to Stay Discovery and in their Motion to Dismiss that when subject-matter jurisdiction does not exist at the outset of an action, the action must be dismissed and the defect cannot be cured by amendment. Dkt. 55 at 1–4; Dkt. 65 at 7–11. Judge Freeman, to whom this case was previously assigned, granted Defendants' Motion to Stay Discovery on the basis that "Defendants have established in their papers that [this] subject matter jurisdiction issue is potentially dispositive of the entire case, which favors staying discovery until the Court issues a ruling on that issue." Dkt. 59 at 3 (cleaned up).

After the close of briefing on Defendants' Motion to Dismiss, the Supreme Court held in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), that when a plaintiff amends her complaint to remove the federal-law claims that enabled removal to federal court, leaving only state-law claims, the federal court loses supplemental jurisdiction over the state-law claims and the case must be remanded to state court. This case, by contrast, involves an action brought originally in federal court over which federal jurisdiction did not exist from the outset.

**Personal jurisdiction.** The Court lacks personal jurisdiction over DCI. Plaintiffs have not sufficiently alleged contacts by DCI with California out of which Plaintiffs' claims arise.

**Article III standing.** Plaintiffs have not adequately alleged the facts necessary to support Article III standing. Plaintiffs were required to plausibly plead a concrete and particularized injury that is fairly traceable to Defendants' alleged conduct. But many speakers with no connection to Defendants—including speakers within the United States government—have raised critiques of Plaintiffs that are substantially similar to Defendants' alleged statements. Plaintiffs have not alleged any facts from which it could be concluded that its potential business partners or consumers rely or relied upon Defendants' statements—or even saw those statements at all. Therefore, Plaintiffs have not plausibly alleged any specific harm that could be reasonably traced to Defendants' statements in particular.

## II.     FACTS

### A.     Plaintiffs' Statement

YMTC develops and manufactures 3D NAND flash memory.  YMTC and its California subsidiary allege that Defendant DCI Group enlisted Defendants Strand Consult and its Executive Vice President, Roslyn Layton, to spread false information about YMTC and its products through the website "China Tech Threat" (CTT).  Micron Technology, YMTC's direct competitor, funded CTT, according to a Bloomberg article titled *Dell, Micron Backed a Group Raising Alarms on Rivals' China Ties*.  *See* Dkt. 50-1.  According to Bloomberg, CTT engages in "astroturfing," the practice of cleverly disguising the corporate messaging of companies (like Micron) as grassroots sugadvocacy, a tactic for which DCI is well-known.

CTT began disseminating false statements about YMTC and its products as early as September 2020.  For example, CTT falsely claimed that YMTC was linked to "criminal activity, including a Social Security spoofing scam, identity theft, and cyber extortion."  On June 8, 2022, CTT published a report titled *Silicon Sellout: How Apple's Partnership with Chinese Military Chip Maker YMTC Threatens National Security* (the "CTT Report"), co-authored by Defendant Layton.  *See* Dkt. 50-4.  The CTT Report implores "Apple [to] voluntarily end its partnership with YMTC" and "source its chips from existing suppliers like Micron" based on false and misleading statements, including that YMTC's memory chips pose national security risks, contain spyware capable of transmitting data to Beijing, and are linked to the Chinese military.  These claims are false.  Memory chips, by their nature, are passive storage devices that cannot execute code, transmit data wirelessly, or function in the ways Defendants asserted.

DCI authored these false statements to benefit its client, Micron.  Defendants tried to mask the true authors of the CTT content, but they neglected to scrub the metadata of a small number of documents, revealing DCI as the author.

Defendants' falsehoods have inflicted significant damage on YMTC's reputation, disrupted its business relationships, and caused substantial financial harm, including the loss of customers and prospective customers in this district, damage to its brand and goodwill, and significant expenses incurred to counteract Defendants' false narrative.

**B.    Defendants' Statement**

Plaintiffs are a Chinese semiconductor manufacturer (YMTC, Ltd.) and its U.S. subsidiary (YMT, Inc.). Defendants are a Danish consulting company (Strand), Strand's Executive Vice President, a resident of Denmark (Dr. Layton), and an American public affairs company (DCI). Strand operates a website called "China Tech Threat" (CTT). Dr. Layton has written, and Strand has published on the CTT website, reports and articles that criticize YMTC, Ltd. The U.S. government has long monitored YMTC, Ltd.'s role in the Chinese government's military-civil fusion objectives. As Dr. Layton wrote in the CTT Report that is at the heart of Plaintiffs' complaint, "[m]any U.S. policymakers and experts have cautioned that YMTC[, Ltd.] poses a clear and present danger to America's national security." Dkt. 50-4 at 8. The U.S. government has added YMTC, Ltd. to various sanctions lists. Dkt. 65 at 4–5.

Plaintiffs have now sued Defendants—first under California state law, and then (after realizing that they would have to face an anti-SLAPP motion) solely under federal law—for criticizing them. *See* Dkt. 65 at 3. Plaintiffs allege that statements published on the CTT website criticizing Plaintiffs are false and are to blame for Plaintiffs' alleged loss of unspecified business relationships. Although none of the Defendants is a competitor to Plaintiffs—manufacturers of memory chips—Plaintiffs attempt to bring claims under the Lanham Act, which does not reach non-commercial conduct.

**III.   LEGAL ISSUES**

The legal issues the Court may resolve in this action include: (1) whether the Court should evaluate subject matter jurisdiction based on the amended complaint, (2) whether the Court has personal jurisdiction over DCI, (3) whether YMTC's allegations satisfy Article III standing, (4) whether YMTC has adequately alleged that Defendants' "astroturfing" campaign has proximately caused YMTC's harm (5) whether Defendants' alleged "astroturfing" campaign constitutes commercial speech under the Lanham Act, (6) whether Defendants' alleged statements are actionable assertions of objective facts under the Lanham Act, and (7) whether YMTC has adequately alleged that Defendants are in commercial competition with YMTC.

### IV.   MOTIONS

On December 17, 2024, Defendants moved to dismiss the Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction (as to DCI), lack of Article III and Lanham Act standing, and failure to state a claim under the Lanham Act.  The motion is fully briefed.  Dkts. 65-67.  The motion was originally set for hearing on March 13, 2025 (Dkt. 65), but the hearing was vacated upon reassignment of the case (Dkt. 71).  The Court previously granted (Dkt. 59) Defendants' motion to stay discovery pending resolution of the motion to dismiss, finding jurisdictional issues potentially dispositive.  The parties look forward to a hearing and ruling on Defendants' motion to dismiss at a time that is convenient for the Court.

### V.   AMENDMENT OF PLEADINGS

The deadline to amend the pleadings was January 3, 2025.

### VI.   EVIDENCE PRESERVATION

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and the Court's Checklist for ESI Meet and Confer.  The Parties have met and conferred under Federal Rule of Civil Procedure 26(f) regarding reasonable and proportionate steps to preserve relevant evidence.  Each party confirms that it has taken reasonable and proportionate steps to preserve relevant evidence, including appropriate litigation holds.  The Parties agree to continue to discussing ESI measures that should be adopted.

### VII.   DISCLOSURES

Per Rule 26(a)(1), Plaintiffs served Initial Disclosures on October 24, 2024.  Defendants objected to providing initial disclosures and any discovery before the Court's resolution of Defendants' Motion to Stay Discovery, which the Court granted (Dkt. 59).

### VIII.   DISCOVERY

The Parties conducted their Rule 26(f) conference on October 10, 2024.

#### A.   Prior and Future Discovery

Besides Plaintiffs serving their Initial Disclosures and Defendants objecting to the same, the Parties have not conducted discovery due to the order staying discovery pending resolution of Defendants' Motion to Dismiss.  Dkt. 59.

**B.   Proposed Discovery Limits and Stipulations**

The Parties propose that the discovery limits set under the Federal Rules of Civil Procedure be modified by limiting requests for admission to 25 per side, except as to authenticity of documents. As the case progresses, the parties may also stipulate to other discovery limits.

If and when discovery reopens, the parties will negotiate the terms of a stipulated protective order to govern the handling of confidential information during discovery. The parties will also work towards an agreement on an ESI protocol to address the specific technical aspects of ESI discovery, including search terms, data formats, and production methods.

**C.   Proposed Discovery Schedule**

The Court has ordered the schedule set forth in Section XV below.

**IX.   CLASS ACTIONS**

Not applicable.

**X.   RELATED CASES**

None.

**XI.   RELIEF**

Plaintiffs seek remedies to address the harm caused by Defendants' alleged misconduct. This includes: (a) injunctive relief, including corrective advertising, (b) money damages to be determined at trial, including general, compensatory, special, and treble damages, as well as including pre-judgment interest, (c) disgorgement of profits, and (iv) such other relief as is just and appropriate, including attorneys' fees and costs.

**XII.   SETTLEMENT AND ADR**

The Parties had a phone conference with the ADR coordinator on December 4, 2024, with a follow-up call scheduled for March 20, 2025. The Parties agree that ADR and settlement discussions may be more fruitful once Defendants' motion to dismiss is resolved. Accordingly, consistent with the schedule in place before the reassignment, the Parties intend to request that the follow-up ADR call be postponed until after the Court resolves Defendants' motion to dismiss.

**XIII. <u>OTHER REFERENCES</u>**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XIV. <u>NARROWING OF ISSUES</u>**

The Parties are not aware of any issues that can be narrowed at this time and do not currently have any suggestions to expedite the evidence at trial. The parties do not wish to bifurcate issues, claims, or defenses in this action.

**XV. <u>SCHEDULING</u>**

The Court has ordered (Dkt. 54) the following schedule:

| Event | Date |
|---|---|
| Non-expert discovery cutoff | February 19, 2026 |
| Opening expert reports | March 26, 2026 |
| Rebuttal expert reports | April 30, 2026 |
| Expert discovery cutoff | May 28, 2026 |
| Deadline to file dispositive motions | June 25, 2026 |
| Deadline for responses to dispositive motions | July 23, 2026 |
| Deadline for replies in support of dispositive motions | August 6, 2026 |
| Deadline to hear dispositive motions | September 17, 2026 |
| Pretrial conference | February 11, 2027 |
| Trial | March 22, 2027 |

Because the Court has stayed discovery pending resolution of Defendants' motion to dismiss, the Parties may ask the Court to modify the schedule once that motion is resolved.

**XVI. <u>TRIAL</u>**

Plaintiffs have demanded a jury trial on all claims so triable. Plaintiffs estimate the trial will require approximately five trial days for opening statements, testimony, and closing argument based on the existing claims.

**XVII. <u>DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS</u>**

All Parties have filed disclosures pursuant to Civil Local Rule 3-15. Plaintiffs certify that Plaintiffs have no reportable financial or non-financial interest in the subject matter in controversy.

Defendants certify that Defendants have no reportable financial or non-financial interest in the subject matter in controversy.

## XVIII. PROFESSIONAL CONDUCT

Counsel for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XIX. OTHER

The Parties are unaware of other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

## XX. PARTIES, CLAIMS, AND PROCEDURAL HISTORY

**Parties.** The Parties are as follows:

- Yangtze Memory Technologies Company, Ltd. ("YMTC, Ltd."), a Chinese developer and manufacturer of memory chips headquartered in China.
- Yangtze Memory Technologies, Inc. ("YMT Inc."), a subsidiary of YMTC, Ltd. headquartered in California.
- Strand Consult, a Danish consulting company.
- Dr. Roslyn Layton, the Executive Vice President of Strand Consult.
- DCI Group AZ, L.L.C., a public affairs company.

**Claims.** False Advertising, Product Disparagement, and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a) (all defendants); Contributory False Advertising, Product Disparagement, and Unfair Competition Under the Lanham Act (DCI only).

**Procedural History.**

| Docket # | Date | Event |
| --- | --- | --- |
| 1 | June 7, 2024 | Complaint filed against Strand Consult and Roslyn Layton |
| 39 | October 30, 2024 | Defendants' Motion to Stay Discovery |
| 50 | November 17, 2024 | Amended Complaint filed against Strand Consult, Roslyn Layton, & DCI Group AZ, L.L.C. |
| 59 | December 2, 2024 | Order Granting [39] Defendants' Motion to Stay Discovery |
| 61 | December 4, 2024 | ADR phone conference held |
| 65 | December 17, 2024 | Defendants' Motion to Dismiss Amended Complaint |

DATED: March 17, 2025                    Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP



By      /s/ Robert M. Schwartz
            Robert M. Schwartz
        *Attorneys for Plaintiffs*

DATED: March 17, 2025                    Respectfully submitted,

KING & SPALDING LLP



By      /s/ Michael R. Resch (with permission)
            Michael R. Resch
        *Attorneys for Defendants Strand Consult and
        Roslyn Layton*

-11-     Case No. 5:24-cv-03454-NW
JOINT CASE MANAGEMENT STATEMENT

**CIVIL LOCAL RULE 5-1 ATTESTATION**

I, Robert Schwartz, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that Michael R. Resch concurred in the filing of this document.

DATED: March 17, 2025

/s/   Robert M. Schwartz
       Robert M. Schwartz