1
2
3
4
UNITED STATES DISTRICT COURT

5
NORTHERN DISTRICT OF CALIFORNIA

6
7
YANGTZE MEMORY TECHNOLOGIES, INC., et al.,

Case No. 24-cv-03454-NW

8
Plaintiffs,

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

9
v.

Re: ECF No. 65

10
STRAND CONSULT, et al.,

11
Defendants.

12
13     On June 7, 2024, Plaintiffs Yangtze Memory Technologies Company, Ltd., ("YMTC") and

14 Yangtze Memory Technologies, Inc. ("YMT – USA") (collectively, "Plaintiffs") filed a complaint

15 ("Original Complaint") alleging claims for trade libel and violations of Cal. Bus. Prof. Code

16 § 17200 *et seq*. against Defendants Strand Consult and Roslyn Layton.  Compl., ECF No. 1.  On

17 November 17, 2024, Plaintiffs filed an amended complaint, dropping their state law claims, and

18 instead bringing claims under the Latham Act, 15 U.S.C. § 1125(a), and adding Defendant DCI

19 Group AZ, L.L.C. ("DCI") (collectively, "Defendants").   Amend. Compl., ECF No. 50 ("FAC").

20     Defendants moved to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of

21 Civil Procedure 12(b)(1), (2) and (6), as well as 9(b).  Mot. to Dismiss, ECF No. 65 ("Mot.").

22 Plaintiffs opposed, and Defendants filed a reply.  Opp'n, ECF No. 66 ("Opp'n"); Reply, ECF No.

23 67 ("Reply").

24     The Court found this matter suitable for resolution without oral argument and vacated the

25 hearing set for May 21, 2025.  Civil L.R. 7-1(b); ECF No. 80.  Defendants' motion to dismiss for

26 lack of personal jurisdiction is GRANTED with leave to amend in part.

27 **I.     BACKGROUND**

28     Plaintiffs are "one of the world's leading developers and manufacturers of 3D NAND flash

memories." FAC ¶ 5. Plaintiff YMTC is headquartered in Wuhan, China, but conducts business globally. *Id*. ¶ 20. Plaintiff YMTC – USA is a wholly owned subsidiary of YMTC and is a California corporation with its principal place of business in Santa Clara, California. *Id*. ¶ 21.

Defendant Strand Consult maintains its principal place of business in Copenhagen, Denmark, and does business as China Tech Threat, a website. *Id*. ¶ 22. Defendant Roslyn Layton is Executive Vice President of Strand Consult and a "co-founder" of China Tech Threat. *Id*. ¶ 23. The parties contest Layton's domicile; Defendants argue she resides and is domiciled in Denmark, while Plaintiffs allege she is domiciled in Florida. Mot. at 5; FAC ¶ 23. Defendant DCI is an Arizona limited liability company with its principal place of business in Washington, D.C. FAC ¶ 24.

Plaintiffs allege that, since as early as September 2020, Micron, "another major player in the 3D NAND space" and not a party to this action, has "resorted to a sham marketing scheme to undermine YMTC's achievements by spreading lies about YMTC and its products." *Id*. ¶¶ 7, 11. According to Plaintiffs, "Micron funded a website called 'China Tech Threat' or 'CTT,' run by Defendants Roslyn Layton, Strand Consult, and DCI" that "is engaged in 'astroturfing,' the practice of cleverly disguising the corporate messaging of businesses (such as Micron), as grassroots advocacy." *Id*. ¶¶ 7-8. Plaintiffs allege that "[t]he falsehoods Defendants have spread through China Tech Threat have harmed YMTC's reputation and business relationships," and "have also hurt U.S. consumers." *Id*. ¶ 18.

On December 17, 2024, Defendants moved to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (6), as well as 9(b). Mot. at 1. Defendants argue that (1) the Court lacks subject matter jurisdiction over this action, (2) the Plaintiffs have not sufficiently alleged Article III standing and statutory standing under the Latham Act, and (3) that the Court lacks personal jurisdiction over DCI. *Id*. In the alternative, Defendants argue that Plaintiffs do not plausibly allege facts to support their Lanham Act claims. *Id*.

The Court finds that Plaintiffs have not met their burden to establish personal jurisdiction, and grants Defendants' motion to dismiss without leave to amend as to DCI, and with leave to amend as to whether the Court has personal jurisdiction over Strand Consult and Layton. The

1  Court does not reach the alternate arguments in Defendants' motion to dismiss.

2  **II.    LEGAL STANDARD**

3       In their motion to dismiss, Defendants argue the Court lacks personal jurisdiction over DCI

4  because Plaintiffs have not sufficiently alleged DCI's connection to California.  Mot. at 15.  The

5  Court additionally considers whether it may exercise personal jurisdiction over Strand Consult and

6  Layton.[1]  "This court must consider jurisdiction even if the parties have not challenged it."

7  *Roberts v. United States*, 887 F.2d 899, 900 (9th Cir. 1989) (citing *Louisville & Nashville R. Co. v.*

8  *Mottley,* 211 U.S. 149, 152 (1908)).

9       "It is the plaintiff's burden to establish jurisdiction."  *Ziegler v. Indian River Cnty.*, 64 F.3d

10  470, 473 (9th Cir. 1995).  The plaintiff needs only to make a prima facie showing of jurisdiction to

11  survive a jurisdictional challenge on a motion to dismiss, when the court acts on a defendant's

12  motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing.  *Id*.  While the

13  Court "may not assume the truth of allegations in a pleading which are contradicted by

14  affidavit," *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal

15  quotation marks omitted), the Court must resolve conflicts between the facts contained in the

16  parties' affidavits in the plaintiff's favor.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

17  797, 800 (9th Cir. 2004).

18       **A.    California Personal Jurisdiction**

19       There are two types of personal jurisdiction – general and specific jurisdiction.  *Ranza v.*

20  *Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  "[G]eneral jurisdiction requires affiliations so

21  continuous and systematic as to render the foreign corporation essentially at home in the forum

22  State, *i.e.*, comparable to a domestic enterprise in that State."  *Daimler AG v. Bauman*, 571 U.S.

23  117, 133 n.11 (2014) (internal quotations, citations, and alterations omitted).  Plaintiffs do not

24  contend that the Defendants are "at home" in California, therefore, only specific jurisdiction is at

25  issue.

26       Specific jurisdiction must comport with the forum state's long-arm statute, and with

27  _____

28  [1] Defendants initially argued in their motion to stay that the Court lacked jurisdiction over all
Defendants, *see* ECF No. 39 at 9-10, but did not raise this argument in their motion to dismiss.

3

1    constitutional requirements of due process.  *Ziegler*, 64 F.3d at 473; *Daimler*, 571 U.S. at 126.

2    California's long-arm statute extends jurisdiction to the limits imposed by the Due Process

3    Clause.   Cal. Code Civ. P. § 410.10; *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d

4    1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due

5    process requirements, so the jurisdictional analyses under state law and federal due process are the

6    same.").  This Court must determine whether exercising specific personal jurisdiction over

7    Defendants offends due process.

8        Due process limits a court's power to "render a valid personal judgment against a

9    nonresident defendant."  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291

10   (1980).  "For a court to exercise personal jurisdiction over a nonresident defendant consistent with

11   due process, that defendant must have certain minimum contacts with the relevant forum such that

12   the maintenance of the suit does not offend traditional notions of fair play and substantial

13   justice."  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation

14   marks omitted); *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a

15   defendant be haled into court in a forum State based on his own affiliation with the State, not

16   based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons

17   affiliated with the State.") (internal quotations omitted).

18       Specific jurisdiction exists if: (1) the defendant has performed some act or consummated

19   some transaction with the forum by which it purposefully availed itself of the privilege of

20   conducting business in California; (2) the plaintiff's claims arise out of or result from the

21   defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable.  *Rio*

22   *Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Burger King*

23   *Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).  "The plaintiff bears the burden on the first two

24   prongs, but once both are established, the defendant must come forward with a 'compelling case'

25   that the exercise of jurisdiction would not be reasonable."  *Id.* (internal citations omitted) (citing

26   *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).

27       **B.    Nationwide Personal Jurisdiction**

28       Federal Rule of Civil Procedure 4(k)(2) provides a mechanism to establish personal

*United States District Court*
*Northern District of California*

4

jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2). "Under Rule 4(k)(2), the due process analysis is nearly identical to traditional personal jurisdiction analysis . . . [but] rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (internal citations omitted) (citing *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007)).

## III.   DISCUSSION

The Court analyzes in turn whether there is personal jurisdiction over (a) DCI, and (b) Strand Consult and Layton.

### A.   Personal Jurisdiction over DCI

DCI is an Arizona limited liability company with its principal place of business in Washington, D.C. FAC ¶ 24. Plaintiffs acknowledge that "[e]ach member of DCI is a citizen of a state other than California." *Id.* Because DCI is an out-of-forum defendant,[2] Plaintiffs are required to show that: (1) DCI purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; (2) Plaintiffs' claims arise out of Defendants' California-related activities; and (3) the exercise of jurisdiction would be reasonable. *Ziegler*, 64 F.3d at 473.

#### 1.   *Purposeful Availment*

If a case sounds in tort, as here, courts employ a purposeful direction test, often referred to as the "effects" test. *Calder v. Jones*, 465 U.S. 783, 788 (1984). Under the *Calder* "effects" test, jurisdiction may attach if an out-of-forum defendant engages in conduct aimed at, and having effect in, the situs state. *Id.* at 789. "[T]he three elements of purposeful availment in tort cases are: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the defendant

---

[2] Plaintiffs have offered little in the amended complaint specific to DCI or DCI's role in the alleged conduct. Throughout the amended complaint, Plaintiffs group the Defendants together, arguing that DCI participated in the alleged conduct via their connection to Strand Consult and Layton.

5

should have anticipated would be suffered in the forum state." *Ziegler*, 64 F.3d at 474. Importantly, a plaintiff's connection to a defendant's conduct in the forum should not drive the jurisdictional analysis. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017); *Walden*, 571 U.S. at 285.

### i.    Intentional Action

Under the first prong, Plaintiffs must show that DCI committed an intentional act. *Schwarzenegger*, 374 F.3d at 806. To satisfy the intentional act prong, "the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). "The threshold of what constitutes an intentional act is relatively low." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). Here, Plaintiffs allege that "DCI funded China Tech Threat and authored false, misleading, and disparaging statements about YMTC," which is an intentional action.

### ii.    Express Aim

Under the second prong, Plaintiffs must demonstrate that DCI "expressly aimed" its intentional acts at the forum. *Schwarzenegger*, 374 F.3d at 802. The central question for evaluating if an action was "expressly aimed" is whether the defendant "reached out beyond its home—by, for example, exploiting a market in the forum state." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (quotations and alterations omitted). A defendant does not purposefully direct its activities at the forum state when the unilateral activity of the plaintiff or a third party is all that connects the defendant to the forum state. *See Walden*, 571 U.S. at 284–85 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 291–92).

Plaintiffs allege that "[e]ach Defendant intentionally directed false and misleading statements through the China Tech Threat website at [YMT – USA] and California, knowing [YMT – USA] maintained its principal place of business in this district." FAC ¶ 25. Plaintiffs' case centers on the China Tech Threat website, which "disseminates information and commentary targeting technology policy and markets." *Id.* ¶ 22. The China Tech Threat website is a passive website, it "disseminates" and publishes articles. It is not interactive in the sense that users can exchange information or make purchases. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418

1    (9th Cir. 1997) (distinguishing between "passive" and "interactive" websites, where, if interactive,

2    "users can exchange information with the host computer").

3        "It is well settled that [m]ere passive operation of a website is insufficient to demonstrate

4    express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023),

5    *cert. denied,* 144 S. Ct. 693 (2024) (internal citations omitted). "Not all material placed on the

6    Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it

7    is accessed." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)

8    (website with membership club and ability to submit news tips and photos was interactive). Even

9    "operation of an interactive website does not, by itself, establish express aiming," without

10   "'something more'—conduct directly targeting the forum." *Id*. at 1229; *Briskin v. Shopify, Inc.*,

11   135 F.4th 739, 758 (9th Cir. 2025) (holding that "an interactive platform 'expressly aims' its

12   wrongful conduct toward a forum state when its contacts are its 'own choice and not "random,

13   isolated, or fortuitous"' . . . even if that platform cultivates a 'nationwide audience[ ] for

14   commercial gain'"; affirming "principle of requiring 'something more' to demonstrate 'express

15   aiming.'").

16       When the website itself is the only jurisdictional contact, the Court's analysis turns on

17   whether there is "something more" or "conduct directly targeting the forum." *See, e.g.*, *Mavrix*

18   647 F.3d at 1229–31 (defendant expressly aimed the content of "celebrity-gossip.net" at California

19   for commercial gain because the company knew about its favorable customer base in California).

20       Here, the Court finds that Plaintiffs have not adequately alleged that there is "something

21   more" that ties DCI to California. Plaintiffs argue that DCI availed itself of California by

22   operating China Tech Threat to "specifically to influence California business decisions and harm

23   YMTC's California operations." FAC ¶ 27. Plaintiffs include a China Tech Threat article as an

24   Exhibit, where the website's "tag line" is visible: "We study the problems of technology produced

25   by the People's Republic of China and suggest policy solutions to protect the security, privacy,

26   and prosperity of all Americans." FAC, Ex. 3 at 3. Plaintiffs also rely on a singular article in

27   support of this argument – a June 2022 publication, titled "How Apple's Partnership With Chinese

28   Military Chip Maker YMTC Threatens American National Security." *Id*. ¶ 29; *id*., Ex. 4 at 4.

United States District Court
Northern District of California

1  However, a single article about Apple, a company in California, and a website tag line about

2  "prosperity of all Americans" is not enough to show that Defendants specifically directed their

3  entire website towards California.

4         Plaintiffs additionally argue that "Defendants used California-based internet infrastructure

5  to disseminate their false and misleading statements." FAC at ¶¶ 26, 29. But, Plaintiffs do not

6  connect DCI specifically to the "internet infrastructure." *Id*. There is no indication that DCI is

7  involved in the selection of and continued contact with the "internet infrastructure."

8         Plaintiffs fail to allege sufficient facts to demonstrate that DCI expressly aimed its China

9  Tech Threat website at California.

10                          **iii.        Foreseeable Harm**

11        Third, Plaintiffs must demonstrate that DCI knew that its intentional act would cause harm

12  in California. *Ziegler*, 64 F.3d at 474. Plaintiffs allege a connection to the forum by referring to

13  their own conduct within California, including that YMTC employees "routinely travelled

14  throughout this judicial district to meet and work with potential customers and technical partners"

15  in this district and argue that DCI "knowingly timed and published on the China Tech Threat

16  website to disrupt these discussions, directly and foreseeably harm[ing] YMT Inc.'s business

17  relationships." FAC ¶ 28. Without more information about DCI's own actions specifically

18  directed at California, the claims do not involve "contacts that the defendant *himself* creates with

19  the forum State." *Walden*, 571 U.S. at 284-85 ("the plaintiff cannot be the only link between the

20  defendant and the forum"). Furthermore, the claims here are not analogous to website sales cases,

21  where claims "clearly arise out of and relate to Defendants' conduct of selling those same products

22  to [the forum] residents." *Herbal Brands*, 72 F.4th at 1096; *see also Ayla*, 11 F.4th at 983. This is

23  not sufficient to establish personal jurisdiction. Additionally, given that Plaintiffs did not support

24  their claims with any articles in which Defendants discussed or mentioned YMT – USA, it is

25  difficult to understand how DCI could have anticipated harms that would be suffered in California,

26  as opposed to in China, which was the primary subject of Defendants' articles on their website.

27        The Court finds that DCI has not purposefully availed itself of this forum.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.    *Arising Out of California Activities*

The Court finds that DCI has not purposefully availed itself of California, and Plaintiffs' claims do not arise out of Defendants' forum-related activities.  "The second requirement of the specific jurisdiction test is that the claims arise out of the defendants' forum-related activities." *Ziegler*, 64 F.3d at 474.  Plaintiffs fail to allege facts that show DCI's role in the publications that allegedly caused harm, what harm specifically was caused in California, and what activities directed at California relate to Plaintiff's Latham Act claims.  Plaintiffs do not allege that YMT – USA, had a relationship to Apple – the subject of the article Plaintiffs primarily rely upon – or that Apple in fact terminated the relationship to the detriment of either of the Plaintiffs.  FAC ¶ 27. The Court finds that Plaintiffs' claims do not arise out of Defendants' forum-related activities.

### 3.    *Reasonableness of Exercising Jurisdiction*

Because Plaintiffs have not satisfied the first two prongs, the Court need not analyze whether, with the burden shifted to the Defendants, there is a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

The Court dismisses Plaintiffs' claims against DCI without leave to amend.

### B.    Personal Jurisdiction over Strand Consult and Layton

Defendant Strand Consult's principal place of business is Copenhagen, Denmark.  FAC ¶ 22.  Defendant Layton "is Executive Vice President of Strand Consult and a "co-founder" of China Tech Threat." *Id*. at ¶ 23.

Plaintiffs allege that Layton "resides and maintains a domicile" in Naples, Florida, because Layton has a Florida address listed on China Tech Threat correspondence, and because "Layton is registered to vote in Florida and regularly engages in business activities and communications related to China Tech Threat within the United States, including California." *Id*.  Defendants disagree and assert that "Dr. Layton in fact resides and is domiciled in Denmark."  Mot. at 5.

In reviewing a motion to dismiss for lack of jurisdiction, the Court will generally consider the disputed facts in the light most favorable to the plaintiff; however, the Court must not assume the truth of allegations in a pleading that are contradicted by an affidavit. *CollegeSource, Inc.*, 653 F.3d at 1073.

1    Here, Layton has provided a declaration stating that her "home has been in Denmark since

2    2010, and she intends to remain there"; "[s]he lives in Denmark with her husband and their

3    children"; and "Strand Consult, a Danish company, is Dr. Layton's only regular employer; she

4    does her work from Denmark except while on business trips."  Declaration of Roslyn Layton,

5    ¶¶ 1-4, ECF No. 65-5.  Layton acknowledges the Naples, Florida address cited by Plaintiffs and

6    notes that that was her childhood home, and is her mother's address, which she has used on

7    correspondence related to China Tech Threat.  *Id*. at ¶¶ 5-7.  The Court finds that Layton is

8    domiciled in Denmark.  *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)

9    (domicile is "established by physical presence in a place" with the "intent to remain there").

10    Three requirements must be met in order to establish personal jurisdiction over out-of-

11    forum defendants who are not domiciled in any state under Rule 4(k)(2): (1) the claim against the

12    defendant must arise under federal law; (2) the defendant must not be subject to the personal

13    jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of

14    personal jurisdiction must comport with due process.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

15    1159 (9th Cir. 2006).

16    Here, the claims against Defendants "arise under the Lanham Act, 15 U.S.C. § 1125(a),

17    and involve questions of federal law."  FAC ¶ 30.  Strand Consult and Layton are domiciled in

18    Denmark and not domiciled in the United States, and the Court has no information to support that

19    they are subject to the personal jurisdiction of any state court of general jurisdiction.  The only

20    remaining question for this Court to consider is whether the Court's exercise of personal

21    jurisdiction over the Defendants would comport with due process.

22    "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal

23    jurisdiction analysis with one significant difference: rather than considering contacts between [the

24    defendant] and the forum state, [the Court] consider[s] contacts with the nation as a whole."

25    *Axiom Foods, Inc.*, 874 F.3d at 1072  (quoting *Holland Am. Line*, 485 F.3d at 462).  Specific

26    jurisdiction exists over out-of-forum residents Strand Consult and Layton if (1) they performed

27    some act by which they purposefully directed their activities toward the United States or

28    purposefully availed themselves of the privilege of conducting business in the United States, (2)

United States District Court
Northern District of California

10

1  Plaintiffs' Lanham Act claims arise out of or result from Defendants' United States-related

2  activities, and (3) the exercise of jurisdiction is reasonable.  *Ayla*, 11 F.4th at 979.

3            **1.**  ***Purposeful Availment***

4        The analysis of whether Strand Consult and Layton have purposefully availed themselves

5  of jurisdiction in the United States is substantially similar to the above analysis regarding whether

6  DCI availed itself of jurisdiction in California.  "[T]he three elements of purposeful availment in

7  tort cases are: (1) intentional action; (2) aimed at the forum state; and (3) causing harm that the

8  defendant should have anticipated would be suffered in the forum state."  *Ziegler*, 64 F.3d at 474.

9  Importantly, a plaintiff's connection to a defendant's conduct in the forum should not drive the

10  jurisdictional analysis.  *Axiom Foods, Inc.*, 874 F.3d at 1070; *Walden*, 571 U.S. at 285 ("the

11  plaintiff cannot be the only link between the defendant and the forum").

12                 **i.**  **Intentional Action**

13        Plaintiffs allege that Strand Consult and Layton committed an intentional act when they

14  "made demonstrably false and misleading statements of fact in their commercial advertising and

15  promotion."  FAC ¶ 64.  Strand Consult and Layton do not dispute that they operate China Tech

16  Threat and wrote articles published on the China Tech Threat website.  Mot. at 4.  Therefore, the

17  intentional act prong is satisfied.  *AirWair Int'l Ltd.*, 73 F. Supp. 3d at 1233 (holding that threshold

18  for intentional act is "relatively low").

19                **ii.**  **Express Aim**

20        Because China Tech Threat is a passive website, *see Herbal Brands, Inc.*, 72 F.4th at 1091

21  (mere passive operation of a website is insufficient to demonstrate express aiming), the relevant

22  question is whether the Defendants have engaged in "'something more,' namely 'conduct directly

23  targeting the forum,'" to establish express aiming.  *Adobe Sys. Inc. v. Nwubah*, 2019 WL 6611096,

24  at *6 (N.D. Cal. Dec. 5, 2019).  Plaintiffs have not established the existence of "something more."

25  While China Tech Threat is intended to educate a United States audience with content in English,

26  uses content delivery networks in the United States, and is hosted on a ".com" site, courts have

27  found that such connections are too insignificant to hale foreign Defendants into court in the

28  United States.  *Axiom Foods, Inc.*, 874 F.3d at 1072 (declining to exercise Rule 4(k)(2)

United States District Court
Northern District of California

jurisdiction when defendants' newsletter had "[a]t least 70 recipients with companies in the United States" and plaintiffs had "fail[ed] to explain the relationship between the 70 recipients and their respective companies."); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (holding that a defendant should not be haled into court as a result of "random," "fortuitous," or "attenuated" contacts and declining to exercise Rule 4(k)(2) jurisdiction when the defendant had made seven individual shipments to the East Coast); *Holland Am. Line Inc.*, 485 F.3d at 462 (holding that defendants' contacts with United States "hardly constitute significant contacts" and declining to exercise Rule 4(k)(2) jurisdiction when defendants made occasional visits to cruise ships and unspecified advertising in various marine publications).

In *Holland Am. Line*, the Ninth Circuit found that "[w]e consistently have held that a mere web presence is insufficient to establish personal jurisdiction." *Id.* The Ninth Circuit evaluated a Finnish company's "entirely passive website and [company's] advertisements in various marine publications," finding that the "website does not provide any direct means for purchasing parts or requesting services; it simply provides information on the various products manufactured by the Wärtsilä consortium and redirects potential customers to the appropriate subsidiary." *Id.* (applying the same analysis for purposeful direction toward the forum state and the United States under Rule 4(k)(2)). Moreover, the Ninth Circuit noted that "[t]he few cases in which our sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country." *Holland Am. Line Inc.*, 485 F.3d at 462 (citing *Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C. Cir. 2005) (holding that jurisdiction could be exercised where defendants had engaged in numerous conspiracies to bomb locations in the United States); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (upholding personal jurisdiction under Rule 4(k)(2) where the defendant insurer had directly insured hundreds of claims in the United States)).

Plaintiffs argue that Strand Consult and Layton expressly aimed their actions at the United States because "[t]he China Tech Threat webpage uses Cloudflare content delivery network (CDN) services to improve the speed at which the site can be accessed within California," and "Cloudflare is headquartered in and provides its services from California." FAC ¶ 26. However,

the location of content delivery networks is not sufficient to establish personal jurisdiction. *See Browne v. McCain*, 612 F.Supp.2d 1118, 1124 (C.D. Cal. 2009) (holding that the court did not have personal jurisdiction over a defendant because the location of YouTube servers in California was not enough to show express aim); *Prevail Legal v. Justin Gordon, et al.*, 2021 WL 1947578, at *5 (N.D. Cal. May 14, 2021) (holding that it was "random" that the server hosting Plaintiff's software code happened to be in California even through principal place of business was in Santa Clara, California); *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *1 (N.D. Cal. Jan 13, 2020) (holding that Saudi Arabia-based defendants that used "their then-valid [software] credentials to wrongfully access, copy, and steal . . . repositories of copyrighted and proprietary source code" were not subject to personal jurisdiction because if the party hosts its data with a Silicon Valley company, the Northern District of California would always have jurisdiction); *Republic of Kazakhstan v. Ketebaev*, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) ("The mere fact that Google—the company that owns the servers—is headquartered in California is not enough to establish that Khrapunov, a Kazakh citizen who resides in Switzerland, expressly aimed his alleged conduct at California.").

Strand Consult and Layton's use of content delivery networks in California is not enough to establish a connection with the forum. Additionally, Strand Consult and Layton's administration of a passive website without "something more" is not enough to hale them into court in this forum.

### iii.    Foreseeable Harm

The third part of the purposeful direction test is whether Strand Consult and Layton knew that their intentional actions would cause harm in the forum. *Ziegler*, 64 F.3d at 474. For jurisdictional purposes, a corporation incurs economic loss in the forum of its principal place of business. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079 (9th Cir. 2011). Here, Plaintiffs' allegations are that Defendants knowingly "made demonstrably false and misleading statements of fact in their commercial advertising and promotion" that "were intended to exploit xenophobic anxieties and prejudice against YMTC." FAC ¶ 64. Considering that YMTC is based in China, it is not foreseeable that YMTC's harm would be felt in the United

1  States.  While, by the same logic, it would be foreseeable that YMT – USA's losses would be felt

2  in the United States, Plaintiffs have not alleged facts showing harm specifically to YMT – USA.

3          Although Plaintiffs satisfied the first prong ("intentional act") of the purposeful availment

4  test, Plaintiffs did not satisfy the second and third prongs: "aimed at the forum state"; and "causing

5  harm that the defendant should have anticipated would be suffered in the forum state." *Ziegler*, 64

6  F.3d at 474.

7                          **2.    *Arising Out of United States Related Activities***

8          "The second requirement of the specific jurisdiction test is that the claims arise out of the

9  defendants' forum-related activities." *Ziegler*, 64 F.3d at 474.  Specific jurisdiction requires a

10  relationship between the forum and the claim.  *Holland Am. Line Inc.*, 485 F.3d at 460-61.  Here,

11  that relationship is missing.  Plaintiffs' claims concern allegations of a "widespread and

12  coordinated campaign of false and misleading commercial advertising and promotion specifically

13  targeting YMTC and its 3D NAND flash memory products." FAC ¶ 62.  Plaintiffs specifically

14  allege harms incurred by YMTC, which is based in China, but do not connect the harms to YMT

15  – USA or to the forum.  *Walden*, 571 U.S. at 285 (the connection to the forum state must be

16  analyzed with regard "to the defendant's contacts with the forum State itself, not the defendant's

17  contacts with persons who reside there.").  The Court finds that Plaintiffs' claims do not arise out

18  of Defendants' forum-related activities.

19                          **3.    *Reasonableness of Exercising Jurisdiction***

20          As with the analysis of personal jurisdiction over DCI, because Plaintiffs have not satisfied

21  the first two prongs, the Court need not analyze whether, with the burden shifted to the

22  Defendants, there is a "'compelling case' that the exercise of jurisdiction would not be

23  reasonable." *Schwarzenegger*, 374 F.3d at 802.[3]

24  _____

25  [3] Even if the Court were to analyze the reasonableness of exercising jurisdiction over Strand
   Consult and Layton, the Court would find it to be unreasonable because, inter alia, Defendants had
26  limited personal interjections into the forum; the substantial burden on the Denmark domiciled
   Defendants to litigate in this forum; and the fact that an alternate forum is available in Denmark.
27  *Ayla*, 11 F.4th at 983 (Courts use seven factors to evaluate whether jurisdiction would be
   reasonable: (i) the extent of the [defendant's] purposeful interjection into the forum state; (ii) the
28  burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty

United States District Court
Northern District of California

1    Because this Court concludes that Plaintiffs have not adequately alleged purposeful

2    direction or that the claims against Strand Consult and Layton arise out of or relate to their

3    contacts with the United States, this Court holds that Plaintiffs have not adequately alleged

4    specific jurisdiction over Strand Consult and Layton based on their nationwide contacts.  The

5    Court dismisses Plaintiffs' claims against Strand Consult and Layton with leave to amend to allege

6    facts sufficient to establish the Court's personal jurisdiction over Strand Consult and Layton.

7        **C.    Discovery**

8        While a district court is vested with broad discretion to permit or deny jurisdictional

9    discovery, courts generally require a plaintiff to make out a "colorable basis" for jurisdiction to

10    warrant discovery.  *See Crouch v. Ruby Corp.*, 639 F. Supp. 3d 1065, 1083 (S.D. Cal. 2022)

11    (requiring fuller showing of jurisdictional facts before jurisdictional discovery); *see also Teras*

12    *Cargo Transp. (Am.) LLC v. Cal Dive Int'l (Austl.) Pty Ltd.*, 2015 WL 6089276, at *8 (N.D. Cal.

13    Oct. 16, 2015) (citing cases).  Courts may properly deny jurisdictional discovery where "there is

14    insufficient evidence to give rise to more than a 'hunch'" that discovery will make out a case for

15    exercising personal jurisdiction over a defendant.  *See id.* (denying jurisdictional discovery and

16    observing that "speculation 'cannot rise above the "mere hunch" bar that the Ninth Circuit requires

17    cleared to obtain jurisdictional discovery'") (quoting *Corcera Sols., LLC v. Razor, Inc.*, 2014 WL

18    587869, at *3 (N.D. Cal. Feb. 14, 2014)).  That approach applies here: Plaintiffs' claims are based

19    on their own presence in California, which is an insufficient basis for finding specific jurisdiction.

20    The claims do not arise out of or are related to Defendants' forum-related activity.  *Walden*, 571

21    U.S. at 286.  Although Plaintiffs are granted leave to amend as to personal jurisdiction over Strand

22    Consult and Layton, the Court finds that jurisdictional discovery is not warranted.

23        **D.    Request for Judicial Notice**

24        In support of its motion to dismiss, Defendants request that the Court take judicial notice

25

26    of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most
     efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's

27    interest in convenient and effective relief; and (vii) the existence of an alternative forum.)  Most of
     the factors indicate that exercising jurisdiction over the Denmark-based Defendants would be

28    unreasonable in this instance.

of three public webpages.  Mot. at 25.  The Court declines to rule on Defendants' requests for judicial notice, as the Court did not rely on any of those sources in resolving the present motion.

## IV.    CONCLUSION

The Court GRANTS Defendants' motion to dismiss based on lack of personal jurisdiction over DCI without leave to amend, and with leave to amend as to personal jurisdiction over Strand Consult and Layton.

Plaintiffs are permitted to file a second amended complaint by June 10, 2025, to allege specific facts that establish that Strand Consult and Layton purposefully availed themselves of the forum and that Plaintiffs' claims arise out of Strand Consult and Layton's forum-related activities.

**IT IS SO ORDERED.**

Dated: May 20, 2025

Noël Wise
United States District Judge