1 | QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2 | David Eiseman (Bar No. 114758)
davideiseman@quinnemanuel.com
3 | 50 California Street, 22nd Floor
San Francisco, California 94111-4788
4 | Telephone:    (415) 875-6600

5 | Robert Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
6 | Aaron Perahia (Bar No. 304554)
aaronperahia@quinnemanuel.com
7 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
8 | Telephone:    (213) 443-3000

9 | Evan Pearson (*pro hac vice*)
evanpearson@quinnemanuel.com
10 | 300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
11 | Telephone:    (737) 667-6100

12 | Hayden Little (*pro hac vice*)
haydenlittle@quinnemanuel.com
13 | 700 Louisiana Street, Suite 3900
Houston, Texas 77002-2841
14 | Telephone:    (713) 221-7000

15 | *Attorneys for Plaintiffs Yangtze Memory
Technologies Company, Ltd. and Yangtze
16 | Memory Technologies, Inc.*

17 | **UNITED STATES DISTRICT COURT**

18 | **NORTHERN DISTRICT OF CALIFORNIA**

19 | **SAN JOSE DIVISION**

20 | YANGTZE MEMORY TECHNOLOGIES
COMPANY, LTD. and YANGTZE
21 | MEMORY TECHNOLOGIES, INC.,

22 |                   Plaintiffs,

23 |          vs.

24 | STRAND CONSULT and ROSLYN
LAYTON,
25 |
                  Defendants.
26 |
27 |
28 |

Case No. 5:24-cv-03454-NW

Hon. Noël Wise

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FOR *FORUM NON CONVENIENS***

Hearing Date:    September 3, 2025
Hearing Time:    9:00 a.m.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ............................................................................................... 1

II.  BACKGROUND FACTS ................................................................................... 1

III.  THE COURT SHOULD DENY DEFENDANTS' MOTION .............................. 3

    A.  The Court should decide the motions for reconsideration and transfer of venue first, or let the D.C. court do so, and not reach *forum non conveniens*. .......... 3

    B.  *Forum non conveniens* does not favor dismissal. ........................................................ 4

        1.  Denmark is not an adequate alternative forum. ............................................... 4

        2.  Plaintiffs' choice of forum should be given the full deference owed to a domestic plaintiff's choice. ...................................................................... 6

        3.  The private and public interest factors weight against dismissal. .................. 8

IV.  CONCLUSION ................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abitron Austria GMBH v. Hetronic Int'l, Inc.*,
    600 U.S. 412 (2023) ...........................................................................................6

*Azima v. RAK Inv. Auth.*,
    305 F. Supp. 3d 149 (D.D.C. 2018) ...................................................................5

*Bos. Telecomms. Grp., Inc. v. Wood*,
    588 F.3d 1201 (9th Cir. 2009) ......................................................................7, 11

*Carijano v. Occidental Petrol. Corp.*,
    643 F.3d 1216 (9th Cir. 2011) ............................................................... 3, 4, 7, 8

*Chang v. Baxter Healthcare Corp.*,
    599 F.3d 728 (7th Cir. 2010) ..............................................................................6

*Conte v. Cnty. of Nassau*,
    2017 WL 9478355 (E.D.N.Y. May 4, 2017) ....................................................12

*Dada v. NSO Grp. Techs. Ltd.*,
    2025 WL 1879527 (9th Cir. July 8, 2025)......................................................6, 7

*Dale v. Banque SCS Alliance S.A.*,
    2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) ...................................................4

*DIRTT Enviro. Sols., Inc. v. Falkbuilt Ltd.*,
    65 F.4th 547 (10th Cir. 2023) .............................................................................3

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
    246 F. Supp. 3d 52 (D.D.C. 2017) .....................................................................5

*Flaherty v. Filardi*,
    2004 WL 1488213 (S.D.N.Y. July 1, 2004) ....................................................12

*Gutierrez v. Advanced Med. Optics, Inc.*,
    640 F.3d 1025 (9th Cir. 2011) ............................................................................4

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C.)...............................................................................5

*Lans v. Adduci Mastriani & Schaumberg LLP*,
    786 F. Supp. 2d 240 (2011) ..............................................................................12

*Leetsch v. Freedman*,
    260 F.3d 1100 (9th Cir. 2001) ............................................................................4

*Life Bliss Found. v. Sun TV Network Ltd.*,
    2013 WL 12132068 (C.D. Cal. Dec. 13, 2013) ........................................................ 12

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991) ......................................................................................... 4

*Logan Int'l Inc. v. 1556311 Alberta Ltd.*,
    No. 12-cv-1139 (S.D. Tex. 2012), ECF 15 ................................................................... 4

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001) .................................................................................. 9, 11

*Novoselac v. ISM Vuzem d.o.o.*,
    2025 WL 345922 (N.D. Cal. Jan. 29, 2025) ................................................................. 5

*Peach v. Shopshire*,
    2006 WL 456772 (W.D. Wash. Feb. 23, 2006) ............................................................ 4

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ................................................................................................... 5, 6

*Rudisill v. Sheraton Copenhagen Corp.*,
    817 F. Supp. 443 (D. Del. 1993) .................................................................................. 6

*Ryanair DAC v. Expedia Inc.*,
    2018 WL 3727599 (W.D. Wash. Aug. 6, 2018) ........................................................... 4

*Ticketmaster-Indiana v. Cavaliers Operating Co.*,
    2008 WL 11383269 (C.D. Cal. Jan. 11, 2008) ............................................................ 3

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ......................................................................... 5, 8, 9, 11

*Universe Sales Co. v. Silver Castle, Ltd.*,
    182 F.3d 1036 (9th Cir. 1999) ...................................................................................... 5

*Vivendi S.A. v. T-Mobile USA, Inc.*,
    2008 WL 2345283 (W.D. Wash. June 5, 2008) ........................................................... 4

*Vivendi SA v. T-Mobile USA Inc.*,
    586 F.3d 689 (9th Cir. 2009) .................................................................................... 7, 8

**<u>Statutes</u>**

28 U.S.C. § 1782 .............................................................................................................. 12

Lanham Act, 15 U.S.C. §§ 1051–1141n (2024) ..................................................... 3, 6, 13

**<u>Other Authorities</u>**

Fed. R. Evid. 604 ............................................................................................................... 5

## I.    INTRODUCTION

The proper forum for this case is in the United States, not Denmark.  Before reaching Defendants' *forum non conveniens* motion, however, the Court should resolve Plaintiffs' pending motion to transfer this action to the District of Columbia, where related claims against co-defendants DCI Group AZ LLC ("DCI") and Micron Technology, Inc. ("Micron") are already proceeding.  That court—with all parties and claims before it—can best determine jurisdictional and forum issues.  Alternatively, this Court should first reconsider whether it has nationwide personal jurisdiction over Defendants.  Either path avoids the inefficient result Defendants seek: forcing Plaintiffs to pursue parallel litigation across two continents.

The *forum non conveniens* analysis decidedly favors the United States.  Denmark fails as an adequate alternative forum.  Defendants offer no expert testimony on Danish law, no evidence that Danish courts would accept jurisdiction over these parties, and no assurance that claims would be timely under Danish limitations periods.  Their bare citation to untranslated statutory provisions cannot satisfy their burden.

Plaintiff YMT Inc. is a California corporation whose forum choice merits full deference—deference that the Ninth Circuit requires even with a foreign co-plaintiff.  The private and public interest factors reinforce this conclusion.  Defendants Layton and Strand committed the wrongful acts alleged in the complaint by working hand-in-glove with DCI and Micron, who are based in the United States.  And on their own, they regularly conduct business in the United States.  The alleged conspiracy targeted U.S. markets, harmed a California company, and disrupted California business relationships.  Courts in the United States have a compelling interest in adjudicating these claims.

Dismissing this case would fragment litigation already consolidated in principle, multiply costs for all parties, and risk inconsistent judgments.  The Court should deny Defendants' motion.

## II.    BACKGROUND FACTS

Plaintiffs, a California-based entity and its Chinese parent company, brought this suit against Defendants Roslyn Layton, whom Plaintiffs contended was subject to personal jurisdiction given her substantial business and professional ties to the United States; and Strand Consult, a

1   Danish company doing business in the United States as China Tech Threat, which Plaintiffs

2   contended was subject to personal jurisdiction given its publishing content aimed at California and

3   California-based companies.  Dkt. 1 ¶¶ 13-17.  Plaintiffs amended the Complaint in November

4   2024 to include claims against DCI, an American company incorporated in Arizona with a

5   principal place of business in Washington, D.C.  Dkt. 50 ¶ 24.

6        Soon after, on December 17, 2024, the three Defendants filed a joint Motion to Dismiss on

7   various grounds.  Dkt. 65.  Notably absent from the Motion to Dismiss were two arguments:

8   (1) lack of personal jurisdiction as to Defendants Layton and Strand,[1] and (2) any mention of

9   *forum non conveniens*.  Despite the absence of the personal jurisdiction argument, the Court held

10  in its May 20, 2025 Order (the "Order") that there was no personal jurisdiction over Defendants

11  Layton and Strand, without them having raised or challenged the issue, or over DCI.  Dkt. 81 at

12  16.

13       After issuing the Order, the Court granted Plaintiffs leave to move for reconsideration of

14  the issue of personal jurisdiction as to Defendants Strand and Layton.  Plaintiffs filed that motion

15  on June 20, 2025.  Dkt. 87-88.  Plaintiffs argued that by not challenging personal jurisdiction in

16  their first responsive pleading (i.e., the joint Motion to Dismiss with DCI), Defendants waived

17  personal jurisdiction, and the claims should not have been dismissed against Plaintiffs.  Dkt. 88.

18  That motion will be heard on September 3.

19       Meanwhile, Plaintiffs refiled suit against DCI in the U.S. District for the District of

20  Columbia, where DCI has its principal place of business.  Plaintiffs also added claims against

21  another alleged co-conspirator, Micron Technology, Inc.  In the interest of judicial efficiency and

22  economy, Plaintiffs then moved this Court to transfer this action to Washington, D.C.  Dkt.  91

23  at 2.  That motion will also be heard on September 3.

24       Defendants' first assertion of *forum non conveniens* came only in their opposition to the

25  motion for reconsideration.  Dkt. 89 at 4-6.  Then, nine days after Plaintiffs filed their motion to

26

27  ───────────────

[1] Only DCI challenged personal jurisdiction in the joint Motion to Dismiss.  *See* Dkt. 81 at 5-9;

28  Dkt. 65 at 15-18 ("*D.  The Court Lacks Personal Jurisdiction Over DCI Group*").

1  transfer, Defendants filed this motion to dismiss for *forum non conveniens*.  Defendants now seek

2  (Mot. at 4) to preempt the Court's decisions on transfer of venue to Washington D.C., and

3  reconsideration of the question of personal jurisdiction, asking that those issues be deferred in

4  favor of this far more "drastic exercise of the court's 'inherent power.'"  *Carijano v. Occidental*

5  *Petrol. Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).  In doing so, Defendants attempt to downplay

6  all of Layton and Strand's business and professional connections to the United States, which

7  include speaking engagements and visitations and the operation of the China Tech Threat website

8  that is aimed at swaying the opinions of American consumers.

9  **III.    THE COURT SHOULD DENY DEFENDANTS' MOTION**

10       **A.    The Court should decide the motions for reconsideration and transfer of venue**

11            **first, or let the D.C. court do so, and not reach *forum non conveniens*.**

12       Defendants recognize that courts have discretion in how they sequence resolution of *forum*

13  *non conveniens* and other non-merits issues.  Dkt. 89 at 3-4.  Moreover, *forum non conveniens* is a

14  discretionary doctrine.  *Id.* at 5.  The District of Columbia court will be able to "best direct the

15  course of this litigation from this point forward."  *Ticketmaster-Indiana v. Cavaliers Operating*

16  *Co.*, 2008 WL 11383269, at *8 (C.D. Cal. Jan. 11, 2008) (declining to rule on the defendants'

17  motion to dismiss the Lanham Act claim and leaving the substantive issue to be addressed by the

18  transferee court).  And if the Court were to grant Defendants' motion, because they are the only

19  two remaining defendants in this action, Plaintiffs would have the right to appeal the ruling to the

20  Ninth Circuit.  The delay inherent in such an appeal would all but ensure that the parties and

21  counsel will be litigating this case in multiple United States fora.

22       Dismissing this action before giving the District of Columbia court the chance to weigh in

23  would undermine the purposes of *forum non conveniens*, which "is a doctrine fundamentally

24  concerned with convenience."  *DIRTT Enviro. Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 554-55

25  (10th Cir. 2023).  "Splitting cases … fundamentally contradicts the 'central purpose' of *forum non*

26  *conveniens* because it only increases the possibility of overlapping, piecemeal litigation that is

27  inherently inconvenient for both the parties and the courts."  *Id.* at 555.  Consistent with those

28

1    basic principles of *forum non conveniens*, the District of Columbia court should decide whether

2    this case should be dismissed in favor of a Danish forum.

3          **B.**    ***Forum non conveniens* does not favor dismissal.**

4              **1.**    **Denmark is not an adequate alternative forum.**

5          An alternative forum is deemed adequate only if: (1) the defendant is amenable to process

6    there; (2) it offers a satisfactory remedy; and (3) it allows the entire case and all parties to come

7    within its jurisdiction. *Carijano*, 643 F.3d at 1225; *Gutierrez v. Advanced Med. Optics, Inc.*, 640

8    F.3d 1025, 1029 (9th Cir. 2011). Defendants, as the parties moving for dismissal, bear the burden

9    of proof. *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001).

10         Defendants' showing falls well short. Their argument spans barely a page (Mot. at 5-6),

11   cites no Danish authority on jurisdiction, and offers no expert testimony on Danish law. Instead,

12   they attach only an unofficial English "translation" of the Danish Marketing Practices Act

13   ("DMPA")—which itself warns that the original Danish text controls (Dkt. 92-2)—and assert,

14   without support, that a DMPA action "can be brought in the Maritime and Commercial Court in

15   Copenhagen" (Mot. at 2). Courts routinely reject adequacy of forum arguments on such a record.

16   *See, e.g.*, *Dale v. Banque SCS Alliance S.A.*, 2005 WL 2347853, at *4 (S.D.N.Y. Sept. 22, 2005)

17   (no adequacy where there was "no information" on foreign jurisdictional law or its application);

18   *Ryanair DAC v. Expedia Inc.*, 2018 WL 3727599, at *4-5 (W.D. Wash. Aug. 6, 2018) (rejecting

19   adequacy where movant failed to discuss actual remedies under foreign law).

20         For a moving party to meet its burden, it must provide reliable expert testimony to

21   establish the content and application of foreign law in the *forum non conveniens* context. *See, e.g.*,

22   *Gutierrez*, 640 F.3d at 1029 (expert on Mexican law); *Vivendi S.A. v. T-Mobile USA, Inc.*, 2008

23   WL 2345283, at *10 (W.D. Wash. June 5, 2008) (expert on Polish law); *Peach v. Shopshire*, 2006

24   WL 456772, at *10 (W.D. Wash. Feb. 23, 2006) (expert on Canadian law).[2] As the Ninth Circuit

25   _____

26   [2] Indeed, every case Defendants cite that concluded a foreign court was adequate involved expert testimony. *See Carijano*, 643 F.3d at 1225 (noting the parties "offered conflicting expert affidavits" on "Peruvian law itself, both substantive and procedural"); *Lockman Found. v.*

27   *Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) ("The district court considered both

28   sets of opinions and found that those of [defendant's] experts were more persuasive."); *Logan Int'l*

1   has recognized, "expert testimony accompanied by extracts from foreign legal materials has been

2   and will likely continue to be the basic mode of proving foreign law."  *Universe Sales Co. v. Silver*

3   *Castle, Ltd.*, 182 F.3d 1036, 1038 (9th Cir. 1999).  And "it is important to note that the onus is not

4   on the district court to research the proposed alternative forum in order to make the necessary

5   assessment of its adequacy."  *Azima v. RAK Inv. Auth.*, 305 F. Supp. 3d 149, 173 (D.D.C. 2018).

6        Defendants did not provide any expert testimony supporting their assertions regarding

7   Danish law.  By not providing an expert opinion that Danish law would allow Plaintiffs to bring

8   these claims in Denmark, the Court cannot be confident that this is so.  Defendants' bareboned

9   invocation of Danish law leaves far more questions than answers.

10       *First*, Defendants object to the court considering the English translation of the DMPA,

11  which Defendants admit is not an "official English translation."  Mot., Freeman Decl. ¶ 4.  And

12  "foreign language documents are admissible only if translated by a certified interpreter."

13  *Novoselac v. ISM Vuzem d.o.o.*, 2025 WL 345922, at *4 (N.D. Cal. Jan. 29, 2025); *see* Fed. R.

14  Evid. 604.

15       *Second*, Defendants have not shown that these claims would not be barred by the statute of

16  limitations nor what the applicable statute of limitations even is.  *See EIG Energy Fund XIV, L.P.*

17  *v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 74-75 (D.D.C. 2017) ("It is the party seeking

18  dismissal on *forum non conveniens* grounds that bears the heavy burden of showing that the statute

19  of limitations in the alternative forum would *not* bar the asserted claims").  Moreover, Defendants

20  have not indicated that they would be willing to waive any limitations defenses they might have.

21  Unless the defendant (i) waives any statute of limitations (or analogous) defense, and (ii)

22

23  ─────────────────────
    *Inc. v. 1556311 Alberta Ltd.*, No. 12-cv-1139 (S.D. Tex. 2012), ECF 15, Ex. 6 (affidavit of

24  Canadian Barrister and Solicitor); Appellants' Opening Brief, *Lueck v. Sundstrand Corp.*, 2000
    WL 34012628 (9th Cir. Mar. 29, 2000) (recounting opinion of "plaintiffs' and defendants' experts,

25  both of whom are New Zealand barristers"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 240 n.3
    (1981) (citing to affidavit of expert in Scottish law); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433

26  F.3d 1163, 1178 (9th Cir. 2006) ("To meet its burden, [defendant] offered an extensive affidavit
    by a former Justice of the Philippine Court of Appeals"); *cf. IMAPizza, LLC v. At Pizza Ltd.*, 334

27  F. Supp. 3d 95, 128 (D.D.C.) (holding defendants had not met their burden to show an adequate

28  alternative forum because they had "an obligation to introduce affidavits or other evidence").

1   demonstrates that the foreign court will accept the waiver, the court must deny the motion to

2   dismiss for *forum non conveniens*.  *See Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th

3   Cir. 2010) (collecting cases).

4          *Third*, the DMPA allows "anyone with a legal interest therein" to "bring a case" (Mot., Ex.

5   A § 32.-(1)), but that introduces the question of who has a legal interest compensable by this law?

6   Does a Chinese company?  Does an American subsidiary?  These are questions Defendants needed

7   to answer and have not.  Similarly, what are the "general rules of Danish law" that allow for

8   damages, and what do they say about who can seek those damages?  *See Rudisill v. Sheraton*

9   *Copenhagen Corp.*, 817 F. Supp. 443, 446 (D. Del. 1993) (expert affidavit supported that U.S.

10  citizen natural persons would not be barred from bringing slip-and-fall suit in Denmark).

11         *Fourth*, it is unclear at best whether Strand Consult and Layton would be considered

12  "traders" under the DMPA.  It is also unclear whether American consumers would count as the

13  "consumers" who are "likely to be deceived" under the DMPA.  Indeed, the Supreme Court

14  recently limited application of the Lanham Act to commerce occurring within the United States.

15  *See Abitron Austria GMBH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 423 (2023) (holding that the

16  phrase "use in commerce" provides the "dividing line" between permissible domestic applications

17  of the Lanham Act and impermissible extraterritorial applications).

18                    **2.    Plaintiffs' choice of forum should be given the full deference owed to a**

19                    **domestic plaintiff's choice.**

20         Defendants assert that, although YMT Inc. is a U.S. person and resides in this District,

21  because YMTC is a foreign person, Plaintiffs' choice of forum in this District (and in the U.S. at

22  large) "deserves less deference."  Mot. at 6 (citing *Piper Aircraft*, 454 U.S. at 256).  Not so.  The

23  Ninth Circuit has spoken clearly on this issue: "When co-plaintiffs are both domestic and foreign,

24  *we apply the domestic plaintiff standard*, and the presence of foreign co-plaintiffs does not

25  'somehow lessen' the 'strong presumption in favor of a domestic plaintiff's choice of forum.'"

26  *Dada v. NSO Grp. Techs. Ltd.*, 2025 WL 1879527, at *1 (9th Cir. July 8, 2025) (emphasis added)

27

28

1    (quoting *Carijano*, 643 F.3d at 1228).[3]  Despite relying on *Piper Aircraft* for their argument that a

2    foreign plaintiff's choice of forum is owed less deference, Defendants fail to address the Ninth

3    Circuit's holding that "*Piper* does not in any way stand for the proposition that when both

4    domestic and foreign plaintiffs are present, the strong presumption in favor of the domestic

5    plaintiff's choice of forum is somehow lessened." *Carijano*, 643 F.3d at 1228.

6            Indeed, the domestic plaintiff standard applies even where the plaintiffs are related entities.

7    In *Salebuild, Inc. v. Flexisales, Inc.*, the Ninth Circuit reversed the district court's decision finding

8    that India was a more convenient forum for the action where the district court failed to grant

9    proper deference to plaintiffs' choice of forum because it concluded that the plaintiffs' companies

10   were foreign.  633 F. App'x 641, 642-43 (9th Cir. 2015).  While one plaintiff (Salebuild India)

11   was incorporated in India, the other plaintiff (Salebuild) was a Delaware corporation, and "the

12   presence of a foreign co-plaintiff does not lessen the deference owed a domestic plaintiff." *Id.* at

13   642 (citing *Carijano*, 643 F.3d at 1229).  The same is true here: while YMTC is a Chinese entity,

14   YMT Inc. is a California-based company and both a resident of the state and of the United States.

15   YMTC's status as a Chinese-registered entity does not change that, and certainly does not

16   somehow "lessen" the deference owed to Plaintiffs' forum choice.

17          Alternatively, Defendants argue that the domestic plaintiff standard should be lessened

18   where "it appears that the plaintiff's choice of a U.S. forum [is] motivated by forum-shopping

19   reasons," or where the domestic plaintiff's interest in the case is "incidental."  Mot. at 5-6 (citing

20   *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694-95 (9th Cir. 2009).  However, *Vivendi*'s

21   forum shopping and incidental connection standards are distinguishable.  There, the litigation was

22   between two European companies and the only connection to the U.S. was the use of "U.S. wires"

23   in communications between the parties; the European Vivendi entity admitted that it had sued in

24   the United States because it offered "proper discovery and favorable law"; and the American co-

25

26   ─────────────────────
     [3] Nor does Plaintiffs' action in D.D.C. eliminate this deference: "when a domestic plaintiff sues in
27   a forum where they do not reside, they are entitled to more deference than a 'truly foreign
     plaintiff' … but 'less deference than if they were a forum resident.'"  *Dada*, 2025 WL 1879527, at
28   *1 (citing *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009)).

plaintiff Vivendi entity was only added *after* the filing of the motion to dismiss for *forum non conveniens*. *Vivendi*, 586 F.3d at 694-95; *see also Carijano*, 643 F.3d at 1228-29 (distinguishing *Vivendi* and holding that the lower court abused its discretion by recognizing a domestic plaintiff but affording its chosen forum reduced discretion).

Those conditions do not exist here: The United States is the common nexus that links all Plaintiffs and Defendants. It is where the tortious actions were directed and where the harm was felt. YMTC was directly harmed by the damage done to its business reputation by CTT, and YMTC felt the harm through its wholly-owned subsidiary. The parties are suing in the United States because the actions and harm was felt here, not merely because of discovery procedures or "favorable" law. The United States is where most of the evidence will be found and witnesses will be located, particularly here in California and in Washington, D.C. YMT Inc. was not a last-minute addition to this case. In fact, this suit was instituted in N.D. Cal. precisely *because* it is where YMT Inc. resides. In this respect, Defendants' claim that deference is somehow reduced based on the Court's jurisdictional analysis of the Complaint (Mot. at 7) does not hold. *Tuazon*, 433 F.3d at 1182 (affirming the district court's finding that for purposes of *forum non conveniens*, "the case is related to [the forum] because [plaintiff] resides there").

Thus, Defendants' assertions that "the deference that would ordinarily be due to a domestic plaintiff's choice of forum is reduced" and "even less deference is due to [YMTC's] choice of forum" (Mot. at 7) miss the mark. Plaintiffs' choice of a domestic forum should be afforded the full weight of a domestic plaintiff's forum choice.

### 3. The private and public interest factors weight against dismissal.

In determining whether a foreign forum would be more suited to resolve a dispute, courts consider a variety of "private interest" factors, which here weigh heavily in favor of keeping the case within the United States. These factors include: (1) the residence of the parties and witnesses, (2) the forum's convenience to the litigants, (3) access to physical evidence and other sources of proof, (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to trial, (6) the enforceability of the judgment, and (7) any practical problems or other factors that contribute to an efficient resolution. *Tuazon,* 433 F.3d at 1180. Even when an

adequate alternative forum exists, a court will not disturb the plaintiff's original choice of forum "unless the 'private interest' and the 'public interest' factors strongly favor" dismissal.  *Id.* (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001)).  Indeed, a plaintiff need not select the "optimal forum" for his claim, but only a forum that is not so oppressive and vexatious to the defendant "as to be out of proportion to plaintiff's convenience."  *Id.*

Plaintiff YMT Inc. resides in the United States.  Because the claims at issue here pertain to a much larger scheme, there will also be several necessary witnesses from DCI and Micron in the United States.  And while Defendants lay out the geographic particulars—such as time zones and distances—that may make this case somewhat convenient for them to litigate in Denmark, they ignore Ms. Layton's and John Strand's various connections and frequent travel to the United States.  Dr. Layton is a frequent visitor to the United States, as made clear by her own website.[4] As a salient example, her most recent visit was for a panel on May 19, 2025, only three weeks after an April 28, 2025 visit; and *the day before* this Court issued its Order.  This is to say nothing of the at least four conference or panel appearances she made in 2024, one of which is listed as "Chips and the China Threat"; or the seven appearance she made in 2023:

| Date | Place | Event |
|---|---|---|
| 2/2/2023 | Washington, DC | The Chamber of Commerce "From Data to Digitized" |
| 4/20/2023 | Chicago, IL | 2023 Antitrust and Competition Conference - Beyond the Consumer Welfare Standard? |
| 7/16/2023-7/19/2023 | Miami, FL | CANTO's 38th Annual Conference & Trade Exhibition |
| 9/16/2023 | New York, NY | 2023 Annual Fall Meeting of the Broadband Commission |
| 9/22/2023-9/23/2023 | Washington, DC | The Research Conference on Communications, Information and Internet Policy, TPRC |

---

[4] *See All Events*, Roslyn Layton, PhD, https://roslynlayton.com/all-events/.  Layton was also a Visiting Fellow at the American Enterprise Institute from 2013-2020 and is currently serving as an advisor to other U.S. institutions such as the Foundation for American Innovation and the Krach Institute for Tech Diplomacy at Purdue University.

| Date | Place | Event |
|------|-------|-------|
| 10/17/2023 | U.S. House of Representatives, Washington, DC | Cash Over Country |
| 11/16/2023-11/18/2023 | Orlando, FL | National Foundation for Women's Legislators conference |
| 4/11/2024 | Hudson Institute, Washington, DC | Chips and the China Threat |
| 5/23/2024 | Hudson Institute, Washington, DC | The Senate Perspective on the US-China Rivalry with Bill Hagerty |
| 7/7/2024-7/10/2024 | Miami, FL | CANTO's 39th Annual Conference & Trade Exhibition |
| 9/19/2024-9/21/2024 | Washington College of Law, American University, Washington, DC | Telecom Policy Research Conference 52 |
| 4/28/2025 | Washington, DC | A Deeper Dive on USF Reform Options. NTCA Legislative and Policy Conference |
| 5/19/2025 | Abundance Institute, USA | Building the Digital Backbone Panel |

John Strand similarly maintains close business ties to the United States, notably through the very subject of this litigation, China Tech Threat. Mr. Strand's biographical page on the Strand Consult website, as well as the "About Us" page on China Tech Threat, note that "Strand co-founded [with Dr. Layton] the think tank China Tech Threat to study and describe the security and privacy risks of using Chinese government technology in networks"; the goal of China Tech Threat of course being to "offer policy solutions to protect the American people … and seek to defend Americans from the Chinese Communist Party." *John Strand*, Strand Consult, https://strandconsult.dk/team/john-strand/); *About Us*, China Tech Threat, https://chinatechthreat.com/about-us/). Much like Dr. Layton, Mr. Strand's biography holds out his prowess as a frequent traveler, in that his experience "has made him a valued speaker in the press and at conferences around the world." *John Strand*, Strand Consult, https://strandconsult.dk/team/john-strand/. Strand and Layton cannot retain the benefit from their

steady professional travel to the United States and their international professional relationships, while claiming to this Court that it would be too "inconvenient" to hold them to account here for one of those relationships that harmed parties here in the United States. *See, e.g.*, *Tuazon*, 433 F.3d at 1180 ("It is neither unimaginable nor unreasonable that [defendant], having operated in the state for a half-century, should defend a lawsuit there."); *Bos. Telecomms.*, 588 F.3d at 1208 (affirming the convenience factor as neutral where similar logistical considerations would apply in either forum for a European defendant litigating in California). Both the first and second private interest factors thus weigh heavily in favor of a U.S. forum.

The third, fourth, and fifth private interest factors deal with the availability of evidence to the proceedings, and also weigh in favor of continuing the proceedings in the United States. "The crucial focus is not on 'the number of witnesses or quantity of evidence in each locale,' but rather 'the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determin[ing] their accessibility and convenience to the forum.'" *Tuazon*, 433 F.3d at 1181 (quoting *Lueck*, 236 F.3d at 1146). As alleged in the First Amended Complaint, Layton and Strand are not the only potential custodians of evidence relevant to this case. They were affiliated with and likely funded by DCI and Micron—two American companies that do not operate anywhere near Denmark, and for whom crucial evidence and witnesses will be located in the United States. FAC ¶ 7. That Layton and Strand may have prepared CTT blog posts from Denmark is irrelevant to these factors. The United States is the nexus between Defendants' and other parties' conduct. It is where the blog posts were directed, in coordination with American entities, to affect the American populace and business community, and where Plaintiffs felt the resulting economic harm.

To the extent evidence is needed from the physical devices on which Defendant prepared articles, it is accessible through the Hague Convention. *Bos. Telecomms.*, 588 F.3d at 1208 ("if this case proceeds in California, [defendant] may seek these documents through procedures for international third-party discovery, such as those under the Hague Convention"). Indeed, "'any court … will necessarily face some difficulty in securing evidence from abroad,' but these complications do not necessarily justify dismissal." *Id.* (quoting *Tuazon*, 433 F.3d at 1181).

Defendants' invitation for Plaintiffs to file an application under 28 U.S.C. § 1782 for litigation in Denmark (Mot. at 9-10) ignores that such an application is a far more "cumbersome" process because it is frequently adversarial, as opposed to a Hague Convention application. *See Tuazon* ("On balance, the economics of bringing a few witnesses from the Philippines to Washington will be less costly than moving the trial apparatus, including both parties and witnesses, from all over the United States to the Philippines"). Moreover, "in this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise number of witnesses present in either locale," particularly with travelers as experienced as Defendants. *Salebuild*, 633 F. App'x at 643.

Courts also consider as a private factor the enforceability of a judgment in the foreign jurisdiction. Defendants argue that a United States judgment would likely be unenforceable against Defendants in Denmark. Absent from Defendants' motion is any assertion that neither Defendant has assets outside of Denmark. Ms. Layton still owns a house in Florida, where she registered to vote. FAC ¶ 23. Regardless, the "life of a judgment" is "extensive," and where plaintiffs are willing to take the chance that defendants "may acquire assets in a foreign country willing to recognize and enforce a United States judgment," this factor weighs against dismissal. *Lans v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp. 2d 240, 287 (2011).

Finally, given that Defendants share counsel with DCI Group, Plaintiffs have reason to believe that DCI Group or Micron may have an obligation to indemnify any judgment against Defendants. *See Flaherty v. Filardi*, 2004 WL 1488213, at *3 (S.D.N.Y. July 1, 2004) ("It is not uncommon for an indemnitor and indemnitee to be represented by joint counsel."). And in some jurisdictions, "courts may enter a judgment directly against an indemnitor of a judgment debtor." *Conte v. Cnty. of Nassau*, 2017 WL 9478355, at *2 (E.D.N.Y. May 4, 2017). This Court should allow Plaintiffs to conduct limited discovery into any indemnification agreement and the law governing them. *See Life Bliss Found. v. Sun TV Network Ltd.*, 2013 WL 12132068, at *7 (C.D. Cal. Dec. 13, 2013) (granting leave to conduct discovery into *forum non conveniens*).

Regarding the *public interest factors*, California has a strong public interest in resolving Plaintiffs' claims. YMTC maintains its ties to Silicon Valley through its wholly-owned subsidiary

1  YMT Inc., which is also a Plaintiff in this matter.  FAC ¶ 34.  YMT Inc. is a California

2  corporation with its principal place of business in this District.  *Id.* ¶ 21.  The FAC alleges U.S.

3  harm, including "lost customers and sales" in the United States and disrupted business

4  relationships in the United States.  *Id.* ¶¶ 56-60.  The United States has a strong interest in

5  deciding claims of a U.S. company that lost U.S. customers based on activities directed at the U.S.

6  The Court also has ample experience addressing claims under federal law, including the Lanham

7  Act.  The cost for Plaintiffs, located in California and China, to try resolve this dispute in

8  Denmark, away from the related action and defendants in D.C., would be prohibitively expensive,

9  in comparison to Layton and Strand visiting the United States on limited occasions, particularly

10 given their already frequent professional travel to the United States.  *Supra* at 9-10.  Defendants

11 otherwise do not argue any other public interest factors, such as the burden on the local court or

12 juries or any need for the Court to apply foreign law, favor a *forum non* dismissal.  Accordingly,

13 the public interest factors favor Plaintiffs.

14 **IV.    CONCLUSION**

15         For the foregoing reasons, the Court should decline to address the question of *forum non*

16 *conveniens* pending the resolution of (1) Plaintiffs' motion for reconsideration, and (2) Plaintiffs'

17 motion to transfer venue; or in the alternative, the Court should not dismiss this case on the

18 grounds of *forum non conveniens*.

19

20 DATED:  August 13, 2025                    Respectfully submitted,

21                                            QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
22

23

24                                           By   */s/ Robert M. Schwartz*
                                                  _____
25                                                   Robert M. Schwartz
                                                   *Attorneys for Plaintiffs*
26

27

28